**FILED**

August 21, 2023

CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS

BY: _____ pg

DEPUTY

# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
### AUSTIN DIVISION

| | | |
|---|---|---|
| FREE SPEECH COALITION, INC, et. al., | § | |
| *Plaintiffs*, | § | |
| | § | |
| v. | § | Civil Action No. 1:23-cv-00917-DAE |
| | § | |
| ANGELA COLMENERO, in her official capacity as Interim Attorney General for the State of Texas, | § | |
| *Defendant*. | § | |

---

## DEFENDANT'S RESPONSE TO PLAINTIFFS'
## MOTION FOR EXPEDITED PRELIMINARY INJUNCTION

---

ANGELA COLMENERO
Provisional Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

GRANT DORFMAN
Deputy First Assistant Attorney General

JAMES LLOYD
Interim Deputy Attorney General for Civil Litigation

KIMBERLY GDULA
Deputy Chief, General Litigation Division

RYAN G. KERCHER
Deputy Chief, General Litigation Division

JOHN RAMSEY
Texas Bar No. 24051227

KELSEY L. WARRREN
Texas Bar No. 24095736

Assistant Attorneys General
General Litigation Division
Office of the Attorney General
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
(512) 463-2120 Phone
(512) 320-0667 Facsimile
john.ramsey@oag.texas.gov
kelsey.warren@oag.texas.gov

**COUNSEL FOR DEFENDANT**

# TABLE OF CONTENTS

TABLE OF CONTENTS ..................................................................................................................ii

INDEX OF AUTHORITIES .............................................................................................................iii

INTRODUCTION ...........................................................................................................................1

LEGAL STANDARD .......................................................................................................................4

PLAINTIFFS .................................................................................................................................5

ARGUMENT .................................................................................................................................5

    I.  No Plaintiff Can Meet Their Heavy Burden to Clearly Show Likelihood of Success on The Merits. ...............................................................................................................................5

        A.  The Material on Plaintiffs' Websites Is Obscene. ..................................................5

        B.  Foreign Websites Have No Valid Constitutional Claims. ......................................6

        C.  Doe Has Not Pleaded Any Constitutional Injury. .................................................7

        D.  HB 1181 Is Constitutional. ................................................................................8

            1.  HB 1181's age-verification requirement is narrowly tailored. .............................9

            2.  HB 1181's notice requirement is constitutional. .............................................13

               a.  HB 1181's notice requirement does not pose a substantial obstacle to the exercise of constitutional rights. ..............................................................................13

               b.  At most, HB 1181's notice requirement impacts commercial speech. .....................16

               c.  HB 1181's notice requirement passes strict scrutiny. ....................................16

        E.  HB 1181 Is Not Vague or Overbroad. .................................................................17

        F.  HB 1181 Does Not Violate the Communications Decency Act (CDA) ...............18

        G.  Plaintiffs Are Equally Unlikely to Prevail on Their 8th and 14th Amendment Claims........20

    II.  No Plaintiff Can Clearly Show Irreparable Harm..................................................20

    III.  No Plaintiff Can Satisfy The First Two Prerequisites for a Preliminary Injunction...................22

    IV.  The State's Interest in Protecting Kids from The Harms of Online Porn Outweighs Any Alleged Cost to Plaintiffs..................................................................................................23

CONCLUSION .............................................................................................................................24

CERTIFICATE OF SERVICE .........................................................................................................25

INDEX OF AUTHORITIES

## Cases

*511 Detroit St., Inc. v. Kelley,*
  807 F.2d 1293 (6th Cir. 1986) ...................................................................................18

*ACLU v. Reno,*
  31 F. Supp. 2d 473 (E.D. Pa. 1999) ...........................................................................10

*Agency for Int'l Dev. v. All. for Open Soc'y Int'l, Inc.,*
  140 S. Ct. 2082 (2020) ............................................................................................ 7, 18

*Ark. Project v. Shaw,*
  775 F.3d 641 (5th Cir. 2014) .....................................................................................21

*Ashcroft v. ACLU,*
  542 U.S. 656 (2004) ..........................................................................................8, 9, 10

*Bd. of Trustees of State Univ. of New York v. Fox,*
  492 U.S. 469 (1989) ...................................................................................................16

*Bethel Sch. Dist. No. 403 v. Fraser,*
  478 675 (1986) .............................................................................................................8

*Bluefield Water Ass'n v. City of Starkville,*
  577 F.3d 250 (5th Cir. 2009) .....................................................................................20

*Boumediene v. Bush,*
  553 U.S. 723 (2008) .....................................................................................................7

*Canal Auth. Of the State of Fla. v. Callaway,*
  489 F.2d 567 (5th Cir. 1974) .......................................................................................4

*Central Hudson Gas & Electric Corp. v. Public Service Comm'n of New York,*
  447 U.S. 557 (1980) ...................................................................................................16

*City of Renton v. Playtime Theatres, Inc.,*
  475 U.S. 41 (1986) .......................................................................................................6

*Clapper v. Amnesty Intern. USA,*
  568 U.S. 398 (2013) .....................................................................................................7

*Doctor John's, Inc. v. City of Roy,*
  465 F.3d 1150, 1157 (10th Cir. 2006) .......................................................................18

*Doe I v. Landry,*
  909 F.3d 99 (5th Cir. 2018) .......................................................................................18

*Doe v. Myspace,*
  528 F.3d 413 (5th Cir. 2008) .....................................................................................19

*Doe v. WebGroup Czech Republic,*
  *as,* No. 221CV02428VAPSKX, 2022 WL 982248 (C.D. Cal. Jan. 13, 2022) ..............7

*Drakes Bay Oyster Co. v. Jewell,*
  747 F.3d 1073 (9th Cir. 2014) ...................................................................................23

*Eccles v. Peoples Bank,*
  333 U.S. 426 (1948) ................................................................................................ 4, 24

*Enterprise Int'l, Inc. v. Corporacion Estatal Petrolera Ecuatoriana,*
  762 F.2d 464 (5th Cir. 1985) .......................................................................................5

*Fair Hous. Council of San Fernando Valley v. Roommates.Com, LLC,*
    521 F.3d 1157 (9th Cir. 2008) ................................................................20

*Gibson v. Leblanc,*
    No. 16-354, 2016 WL 5796897 (M.D. La. Sept. 30, 2016) ....................23

*Ginsberg v. New York,*
    390 U.S. 629 (1968) ..................................................................................8

*Google, Inc. v. Hood,*
    822 F.3d 212 (5th Cir. 2016) ..................................................................21

*Griffin v. Box,*
    910 F.2d 255 (5th Cir. 1990) ....................................................................4

*Humana, Inc. v. Jackson,*
    804 F.2d 1390 (5th Cir. 1986) ................................................................21

*Ill. One News, Inc. v. City of Marshall,*
    477 F.3d 461 (7th Cir. 2007) ..................................................................18

*ILQ Invs., Inc. v. City of Rochester,*
    25 F.3d 1413 (8th Cir. 1994) ..................................................................18

*Jacobellis v. State of Ohio,*
    378 U.S. 184 (1964) ..................................................................................5

*Lujan v. Defs. of Wildlife,*
    504 U.S. 555 (1992) ..................................................................................8

*Machete Prods., L.L.C. v. Page,*
    809 F.3d 281 (5th Cir. 2015) ............................................................ 4, 23

*Maryland v. King,*
    567 U.S. 1301 (2012) ..............................................................................23

*McMahon v. Fenves,*
    946 F.3d 266 (5th Cir. 2020) ..................................................................21

*Miller v. California,*
    413 U.S. 15 (1973) ............................................................................ 6, 17

*Miss. Power & Light Co. v. United Gas Pipeline Co.,*
    760 F.2d 618 (5th Cir. 1985) ............................................................ 4, 23

*Montient Corp. v. Dondero,*
    529 F.3d 532 (5th Cir. 2008) ..................................................................20

*Morrow v. Harwell,*
    768 F.2d 619 (5th Cir. 1985) ....................................................................4

*NAACP v. City of Kyle,*
    626 F.3d 233 (5th Cir. 2010) ....................................................................5

*NetChoice, L.L.C. v. Paxton,*
    49 F.4th 439 (5th Cir. 2022) ..................................................................18

*New Motor Vehicle Bd. of Cal. v. Orrin W. Fox Co.,*
    434 U.S. 1345 (1977) ..............................................................................23

*Nken v. Holder,*
    556 U.S. 418 (2009) ................................................................................23

*Parrott v. Livingston,*
　NO. 15-866, 2016 WL 4487918 (E.D. Tex. June 29, 2016) ...................................................4
*Planned Parenthood Ass'n of Hidalgo Cnty., Tex., Inc. v. Suehs,*
　692 F.3d 343 (5th Cir. 2012) ...................................................................................................4
*Planned Parenthood Minnesota, et al. v. Round,*
　653 F.3d 662 (8th Cir. 2011) .................................................................................................15
*Planned Parenthood Minnesota, et al. v. Rounds,*
　686 F.3d 889 (8th Cir. 2012) ...........................................................................................14, 15
*Planned Parenthood of Greater Tex. Surgical Health Servs. v. Abbott,*
　734 F.3d 406 (5th Cir. 2013) .................................................................................................23
*Planned Parenthood of Hous. & Se. Tex. v. Sanchez,*
　403 F.3d 324 (5th Cir. 2005) ...................................................................................................4
*Reno v. ACLU,*
　521 U.S. 844 (1997) ...............................................................................................................10
*Sable Commc'ns of California, Inc. v. F.C.C.,*
　492 U.S. 115 (1989) ...........................................................................................................9, 17
*Spokeo, Inc. v. Robins,*
　136 S. Ct. 1540 (2016) .............................................................................................................7
*Texas Med. Providers Performing Abortion Servs. v. Lakey,*
　667 F.3d 570 (5th Cir. 2012) ...........................................................................................13, 15
*Texas v. Seatrain Int'l, S.A.,*
　518 F.2d 175 (5ᵗʰ Cir. 1975) ..................................................................................................4
*Virginia Pharmacy Board v. Virginia Citizens Consumer Council, Inc.,*
　425 U.S. 748 (1976) ...............................................................................................................16
*Waskul v. Washtenaw County Community Mental Health,*
　900 F.3d 250 (6th Cir. 2018) ...................................................................................................5
*Williams-Yulee v. Fla. Bar,*
　575 U.S. 433 (2015) ...........................................................................................................9, 12
*Winter v. Natural Res. Def. Council, Inc.,*
　555 U.S. 7 (2008) ...................................................................................................................23
*Zauderer v. Off. of Disciplinary Couns. of Supreme Ct. of Ohio,*
　471 U.S. 626 (1985) ...............................................................................................................16

**Statutes**

TEX. BUS. & COMM. CODE § 17.47(c)(1) ...................................................................................20
TEX. HUM. RES. CODE § 36.052()(3)(B) ....................................................................................20

**Other Authorities**

11A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure
　§ 2948.1 (3d ed. 2013) ...........................................................................................................20
Byrin Romney, "Screens, Teens, and Porn Scenes, Legislative Approaches to Protecting Youth from
　Exposure to Pornography," 45 *Vermont L. Rev.* 43, 50 (2020) ...............................................2
Gassó, A. M., & Brunch-Granados, A., *Psychological and Forensic Challenges Regarding Youth Consumption*
　*of Pornography: A Narrative Review,* 1 Adolescents 108, at 120 (2021) ...................................2

H.J. of Tex., 88th Leg., R.S. 3441 (2023).........................................................................3

Hilton, D. L. & Watts, C., *Pornography addiction: A neuroscience perspective*, 2 Surgical Neurology Int'l 19 (2011) .........................................................................................................................13

Kühn, S., & Gallinat, J., B*rain Structure and Functional Connectivity Associated With Pornography Consumption: The Brain on Porn*, 71 JAMA Psychiatry, 827 (2014) ...........................................1

Love, et al., *Neuroscience of Internet Pornography Addiction: A review and Update*, 5 Behavioral Sci. 388, at 389 (2015) ...................................................................................................................13

Maas, M. K., & Dewey, S., *Internet Pornography Use Among Collegiate Women: Gender Attitudes, Body Monitoring, and Sexual Behavior*, 8 SAGE, at 10 (2018) ...........................................................14

Monto, M., *Focusing on the clients of street prostitutes: a creative approach to reducing violence against women*, Final report for the Nat'l Inst. of Justice (1999) ...........................................................14

Owens, E.W., et al., *The Impact of Internet Pornography on Adolescents: A Review of the Research* 19 Sexual Addiction and Compulsivity 99, at 111 (2012) .........................................................................1

Paslakis, G., Chiclana Actis, C., & Mestre-Bach, G., *Associations between pornography exposure, body image, and sexual body image: A systematic review*, Journal of Health Psychology, 27(3) (2020); Tylka, T. L., *No Harm in Looking, Right? Men's Pornography Consumption, Body Image, and Well-Being*, 16 Psychology of Men & Masculinity 97–107 (2015) .............................................................................................14

Principi, N. et al., *Chnonsumption of Sexually Explicit Internet Material and Its Effects on Minors' Health: Latest Evidence from the Literature*, Minerva Pediatrics at 12 (2022) .........................................1

Robb, M.B. &and Supreet Mann, *Teens and Pornography*, Common Sense, (2022) ..................................3

Sabina, C., Wolak, J, & Finkelhor, D, *The Nature and Dynamics of Internet Pornography Exposure for Youth*, 11 CyberPsychology & Behavior 691 (2008) ...............................................................................3

Seigfried-Spellar, K. C., & Rogers, M. K., *Does Deviant Pornography Use Follow a Guttman-Like Progression?*" 29 Comp.'s in Human Behavior 5 (2013) ..........................................................................2

Tex. H.B. 1181, 88th Leg., R.S. (2023) .................................................................16, 17, 19

Watkins, K., *Impact of Pornography on Youth*, 57 J. Am. Acad. Child & Adolescent Psychiatry 89 (2018) ..............................................................................................................................3

Wen-Hsu Lin et al., *Exposure to Sexually Explicit Media in Early Adolescence is Related to Risky Sexual Behavior in Emerging Adulthood*, 15 PLOS ONE, at 19 (2020) .......................................................2

Angela Colmenero, in her official capacity as Provisional Attorney General for the State of Texas, ("Colmenero") files this response to Plaintiffs' Motion for Expedited Preliminary Injunction.

## INTRODUCTION

Porn is absolutely terrible for our kids.[1] They are "particularly susceptible" to porn because their brains are underdeveloped.[2] Our kids may be more likely to emulate what they see in porn, even if it involves violence or coercion.[3] Researchers have found a significant negative association between reported hours of pornography viewed per week and gray matter volume and brain function in certain areas of the adolescent brain.[4] Even our kids "who indicated *infrequent* use of pornography were *twice as likely* to have conduct issues as those who did not consume pornography at all."[5] Our kids who are exposed to porn are at higher risk of cyberstalking their partners and may also "have lower degrees of social integration . . . and decreased emotional bonding with caregivers."[6]

All of this can seem far-off and academic without a clear understanding of what mainstream porn looks like in the year 2023. It is not simply the full-frontal nudity in Playboy Magazine. It is "gangbangs" of a tied-up young woman, who, over the course of a 36-minute video is bound with rope and electrical tape, strangled, gagged, slapped, and then penetrated by the penises of five men—at points, three at a time—all of whom eventually ejaculate on her face while her mouth is forced open.[7] And lest Defendant be accused of cherry-picking the content of Plaintiffs' websites for

---

[1] Exh. 1, Dines Decl., at ¶¶ 17–32; *see also* Principi, N. et al., *Chnonsumption of Sexually Explicit Internet Material and Its Effects on Minors' Health: Latest Evidence from the Literature*, Minerva Pediatrics at 12 (2022), attached as Exh. 2.

[2] Exh. 1, Dines Decl., at ¶ 27.

[3] *Id.* at ¶ 37.

[4] Kühn, S., & Gallinat, J., B*rain Structure and Functional Connectivity Associated With Pornography Consumption: The Brain on Porn*, 71 JAMA Psychiatry, 827 (2014) https://doi.org/10.1001/jamapsychiatry.2014.93.

[5] Owens, E.W., et al., *The Impact of Internet Pornography on Adolescents: A Review of the Research* 19 Sexual Addiction and Compulsivity 99, at 111 (2012) https://www.researchgate.net/publication/239798839_The_Impact_of_Internet_Pornography_on_Adolescents_A_Review_of_the_Research.

[6] *Id.*

[7] Exh. 3, Cabrera Decl., at ¶ 12.

dramatic effect, Plaintiff website xnxx.com boasts 304,523 free videos tagged with the description "teen bondage gangbang," and another 18,346 such videos if a visitor is willing to pay.[8]

This content—millions and millions of hours of it—can be readily and freely summoned, on purpose or by accident, by an 11-year-old boy on a school bus.[9] It is no wonder that porn can lead kids to experience depression.[10] Or that if our kids are exposed to porn repeatedly, they are more likely to engage in risky sexual behavior.[11] Or that early exposure to porn is "linked to . . . the exacerbation of paraphilia[[12]], and the increase in online and offline sexual aggression perpetration and victimization."[13] Or that our kids who view porn may be at a higher risk of engaging in child sexual abuse or seeking out child sexual exploitation material in later years as an adult.[14]

And there is so much porn. In 2018, Plaintiff Pornhub alone transferred 4,403 petabytes of data, which is more than the *entire internet* consumed just sixteen years earlier in 2002.[15] One petabyte is 1,000,000,000,000,000 (1 quadrillion) bytes (1,000 terabytes, or 1 million gigabytes). This constitutes the same amount of data required to store 13.3 years-worth of HD-TV video. Or 20 million four-

---

[8] *Id.* at ¶ 11.

[9] See Exh. 3, Cabrera Decl., at ¶ 16.

[10] Exh. 1, Dines Decl., at ¶ 28.

[11] Seigfried-Spellar, K. C., & Rogers, M. K., *Does Deviant Pornography Use Follow a Guttman-Like Progression?* 29 Comp.'s in Human Behavior 5 (2013) https://www.sciencedirect.com/science/article/abs/pii/S0747563213001210?via%3Dihub; Wen-Hsu Lin et al., *Exposure to Sexually Explicit Media in Early Adolescence is Related to Risky Sexual Behavior in Emerging Adulthood*, 15 PLOS ONE, at 19 (2020) https://www.researchgate.net/publication/239798839_The_Impact_of_Internet_Pornography_on_Adolescents_A_Review_of_the_Research.

[12] A mental disorder characterized by a preference for or obsession with unusual sexual practices, as pedophilia, sadomasochism, or exhibitionism. https://www.dictionary.com/browse/paraphilia (last visited 8/17/2023).

[13] Gassó, A. M., & Brunch-Granados, A., *Psychological and Forensic Challenges Regarding Youth Consumption of Pornography: A Narrative Review*, 1 Adolescents 108, at 120 (2021) https://www.mdpi.com/2673-7051/1/2/9.

[14] Exh. 1, Dines Decl., at ¶ 21.

[15] *Id. See also* Byrin Romney, "Screens, Teens, and Porn Scenes, Legislative Approaches to Protecting Youth from Exposure to Pornography," 45 *Vermont L. Rev.* 43, 50 (2020).

drawer filing cabinets-worth of text. *Or the entire capacity of the human brain.*[16]   In 2019, Pornhub transferred 6,597 petabytes of data, a near 50% increase from 2018.[17]   As Pornhub bragged on its website that year, "If you started watching 2019's new videos in 1850, you'd still be watching today."[18]

And porn is unbelievably accessible. The top three pornography websites in the United States each reportedly had more than 2.4 billion visits worldwide *for the month of May 2023 alone*, with over 500 million visits originating in the United States. Visits to these porn sites outnumber visits to Internet giants such as Amazon and TikTok.[19] A large majority of both boys and girls report having watched pornography online during adolescence.[20] The average age of first exposure to pornographic material is eleven years old.[21] A 2022 study of more than 1300 teens aged 13 to 17 reported that nearly 75 percent of them had viewed pornography.[22] Of those exposed, 54 percent first saw online pornography at age 13 or younger, and 15 percent were exposed at the age of 10 or younger.[23]

This is a problem. And in the face of this enormous threat to our kids, the Texas Legislature passed HB 1181 with overwhelming bipartisan support.[24] But in consideration of the First Amendment, HB 1181 does not require pornographers to make less porn. It does not require pornographers to publish less porn in fewer places. It does not require pornographers to make or

---

[16] https://www.dailymail.co.uk/sciencetech/article-3409210/Why-good-remembering-human-brain-store-10-TIMES-memories-previously-thought-says-study.html (last visited 8/17/2023).
[17] Romney, *supra.*
[18] Exh. 3, Cabrera, Decl., at ¶16.
[19] Similar Web, "Top Websites Ranking," June 7, 2023, https://www.similarweb.com/top-websites/ (accessed June 7, 2023).
[20] Sabina, C., Wolak, J, & Finkelhor, D, *The Nature and Dynamics of Internet Pornography Exposure for Youth*, 11 CyberPsychology & Behavior 691 (2008) http://unh.edu/ccrc/pdf/CV169.pdf.
[21] Watkins, K., *Impact of Pornography on Youth*, 57 J. Am. Acad. Child & Adolescent Psychiatry 89 (2018).
[22] Robb, M.B. &and Supreet Mann, *Teens and Pornography*, Common Sense, (2022) https://www.commonsensemedia.org/research/teens-and-pornography.
[23] *Id.*
[24] H.J. of Tex., 88th Leg., R.S. 3441 (2023).
 Several other states have passed nearly identical age verification laws, and FSC has filed lawsuits in Louisiana and Utah as well. This response benefits from the states' pleadings in those suits.

publish less offensive porn. It asks pornographers to warn people of porn's well-known dangers. And it asks pornographers not to show their porn to our kids. According to Plaintiffs, Texas asks too much.

## LEGAL STANDARD

A party seeking a preliminary injunction must show: "(1) a substantial likelihood of success on the merits; (2) a substantial threat that plaintiffs will suffer irreparable injury if the injunction is not granted; (3) that the threatened injury outweighs any damage that the injunction might cause the defendant; and (4) that the injunction will not disserve the public interest." *Planned Parenthood of Hous. & Se. Tex. v. Sanchez*, 403 F.3d 324, 329 (5th Cir. 2005).

An injunction should not be granted unless the movant "has clearly carried the burden of persuasion on all four requirements." *Planned Parenthood Ass'n of Hidalgo Cnty., Tex., Inc. v. Suehs*, 692 F.3d 343, 348 (5th Cir. 2012). "A preliminary injunction is an extraordinary remedy." *Miss. Power & Light Co. v. United Gas Pipeline Co.*, 760 F.2d 618, 621 (5th Cir. 1985). This is particularly true when a party seeks an order directing state officials to discontinue certain conduct. *Morrow v. Harwell*, 768 F.2d 619, 627 (5th Cir. 1985). The decision to grant a preliminary injunction is to be treated as "the exception rather than the rule."[25] *Texas v. Seatrain Int'l, S.A.*, 518 F.2d 175, 179 (5th Cir. 1975); *Canal Auth. Of the State of Fla. v. Callaway*, 489 F.2d 567, 576 (5th Cir. 1974).

Considerations of federalism weigh heavily against interference by federal courts through the issuance of preliminary injunctions against state agencies. *Parrott v. Livingston*, NO. 15-866, 2016 WL 4487918, at *1 (E.D. Tex. June 29, 2016); *accord Gibson v. Leblanc*, No. 16-354, 2016 WL 5796897, at *2 (M.D. La. Sept. 30, 2016). "[E]specially where governmental action is involved, courts should not intervene unless the need for equitable relief is clear, not remote or speculative.'" *Machete Prods., L.L.C. v. Page*, 809 F.3d 281, 288 (5th Cir. 2015) (quoting *Eccles v. Peoples Bank*, 333 U.S. 426, 431 (1948)).

---

[25] Legal determinations made at the preliminary injunction stage are subject to plenary review on appeal. *Griffin v. Box*, 910 F.2d 255, 259 (5th Cir. 1990).

**PLAINTIFFS**

Free Speech Coalition (FSC) wrongly claims that "[a]s a representative of its members, [it] has associational standing." Dkt. 5, p. 6. But associational standing requires an association to identify at least one member who would have individual standing to bring the claim. *NAACP v. City of Kyle*, 626 F.3d 233, 237 (5th Cir. 2010); *see also Waskul v. Washtenaw County Community Mental Health*, 900 F.3d 250 (6th Cir. 2018) (finding no associational standing precluded preliminary injunction when none of the named members had standing). FSC did not specifically identify any member with standing in the Motion for Preliminary Injunction. *See generally* Dkt. 5; 5-5. So, it does not have standing.

Plaintiffs in this case are disparate. They are (1) foreign-based companies that purvey free and open access to porn ("Foreign Websites"); (2) U.S.-based companies that require a subscription to view porn ("Subscription Websites"); (3) an individual plaintiff who creates porn ("Doe"); and (4) FSC, presuming the ability to sue on behalf of its members. Dkt. 1, pp. 3-8. Each Plaintiff has moved for a preliminary injunction, and each must individually meet it burden on all four perquisites to a preliminary injunction. *See Enterprise Int'l, Inc. v. Corporacion Estatal Petrolera Ecuatoriana*, 762 F.2d 464, 472 (5th Cir. 1985) ("if the movant does not succeed in carrying its burden on any one of the four prerequisites, a preliminary injunction may not issue and, if issued, will be vacated on appeal.").

**ARGUMENT**

**I.    No Plaintiff Can Meet Their Heavy Burden to Clearly Show Likelihood of Success on The Merits.**

**A.  The Material on Plaintiffs' Websites Is Obscene.**

Were Justice Potter Stewart to take a peek at Plaintiffs' websites, he would not say of pornography, "I know it when I see it."[26] He would ask instead, "What did I just watch?"

---

[26] *Jacobellis v. State of Ohio*, 378 U.S. 184, 197 (1964).

5

Many times, this response brief mentions the important ways the world has changed in the last 25 years. Indeed, the rapid march of technological advancement should factor significantly in the outcome of this case. In general, AG Colmenero asks this Court to focus on the way forward. But now is also a good time to revisit *Miller v. California*, 413 U.S. 15 (1973). As the video described above illustrates, the content of porn websites today—most of which appear to be operated by foreign entities—is obscene.

AG Colmenero invites this Court, with caution, to confront Plaintiffs' pornography—to actually see what our kids are seeing—and then determine, in accordance with *Miller*, that such material is undeserving of First Amendment protection. By our community standards here in Texas—and likely everywhere else, too—Plaintiffs' porn sites appeal wholly to the prurient interest and have no artistic or literary value, serious or otherwise. *See id.* at 24.

Alternatively, AG Colmenero asks this Court to recognize that the world-wide-web is a place. A place where we meet our spouses. A place where we shop. A place where our kids—who, as Plaintiffs point out, are "digital natives"—hang out. A place where our kids go to school. Accordingly, HB 1181's age verification requirement is a time, place, and manner restriction subject to intermediate scrutiny. *See City of Renton v. Playtime Theatres, Inc.*, 475 U.S. 41 (1986).

A law requiring porn sites to turn away children is no different than one that prohibits a strip club from operating next to an elementary school or allowing a 13-year-old to enter. Because, in the year 2023, the only significant difference between brick and mortar sexually oriented businesses and porn sites is that the content on porn sites is far more explicit.

### B.  Foreign Websites Have No Valid Constitutional Claims.

The U.S. Supreme Court has made clear that foreign entities do not possess First Amendment rights, stating that "it is long settled as a matter of American constitutional law that foreign citizens outside U.S. territory do not possess rights under the U.S. Constitution." *Agency for Int'l Dev. v. All. for*

*Open Soc'y Int'l, Inc.*, 140 S. Ct. 2082, 2086 (2020) (citing *Boumediene v. Bush*, 553 U.S. 723, 770–771, (2008)). Notably, at issue in *Agency for International Development* was the constitutionality of a law requiring aid groups to adopt policies opposing prostitution and sex trafficking as a condition of receiving federal funding. The law was unconstitutional as it pertained to U.S. organizations, but constitutional as applied to US companies' foreign affiliates because, "[a]s foreign organizations operating abroad, plaintiffs' foreign affiliates possess no rights under the First Amendment." *Id.*

Eight Plaintiffs in this case are foreign entities. It is no accident that the porn sites offering free, unfettered access to pornography have chosen not to operate in the U.S. where they hazard the jurisdiction of American justice. *See Doe v. WebGroup Czech Republic, as*, No. 221CV02428VAPSKX, 2022 WL 982248 (C.D. Cal. Jan. 13, 2022) (granting dismissal of civil case for violations of sex trafficking and child pornography laws against now-Plaintiffs WebGroup Czech Republic and NKL Associates, along with other foreign affiliates, for lack of personal jurisdiction in a United States court).

The Foreign Websites lack First Amendment rights under the U.S. Constitution, which precludes expedited preliminary injunctive relief based on their constitutional claims as a matter of law.

### C. Doe Has Not Pleaded Any Constitutional Injury.

Plaintiff Jane Doe makes pornographic videos. Dkt. 5-6. Doe then publishes that content on various porn websites. *Id.* Doe "opposes the restrictions the Act would place on their ability to reach their audience, as well as the government-mandated speech that the Act would force adult websites to place on their websites." Dkt. 1 ¶ 21.

Doe bears the burden of establishing the "irreducible constitutional minimum" of standing by demonstrating an injury in fact. *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016). The injury must be "actual or imminent." *Clapper v. Amnesty Intern. USA*, 568 U.S. 398, 408 (2013). "Although imminence is concededly a somewhat elastic concept, it cannot be stretched beyond its purpose, which is to ensure

that the alleged injury is not too speculative for Article III purposes—that the injury is *certainly* impending." *Id.* (emphasis in original) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 565 n.2 (1992)).

Doe's "business consists of producing legal content—featuring only consenting adults—*for an adult audience*," Dkt. 5-6. Doe operates no website, and thus neither incurs additional cost nor bears any burden to verify the age of their content viewers. HB 1181 requires no change in Doe's behavior.

HB 1181 may cause some porn sites to incur additional costs—albeit minimal—to implement compliance measures. But measures undertaken by the website operators would not inhibit or impede, but instead ensure, Doe's ability to reach their intended audience—which Doe alleges, one hopes truthfully, is exclusively adults. The Supreme Court's "First Amendment jurisprudence has acknowledged limitations on the otherwise absolute interest of the speaker in reaching an unlimited audience where the speech is sexually explicit and the audience may include children." *Bethel Sch. Dist. No. 403 v. Fraser*, 478 675, 684 (1986). Doe's injuries are not actual or imminent, and Doe lacks standing to bring a constitutional claim.

### D. HB 1181 Is Constitutional.

Only the Subscription Sites and FSC (assuming the latter could otherwise establish standing) have a colorable, though questionable, constitutional claim. But, even so, they are likely to lose on the merits of their First Amendment challenge because HB 1181 is constitutional.

In *Ashcroft v. ACLU*, 542 U.S. 656 (2004), the Supreme Court reviewed First Amendment challenges to the federal Child Online Protection Act (COPA)—which imposed a $50,000 fine and six months in prison for persons who knowingly provided harmful material to minors. COPA created an affirmative defense if the content provider showed it verified age via reasonable means.

Justice Scalia championed the view that a statute's regulations of "commercial pornography" did not warrant strict scrutiny. 542 U.S. at 676 (Scalia, J., dissenting); *see also Ginsberg v. New York*, 390 U.S. 629 (1968) (upholding, under rational basis review, a New York statute that prohibited the sale

of material harmful to children to those under the age of 17). Under that view, HB 1181 should also be subject to a lower standard of judicial scrutiny because it regulates only "commercial entit[ies']" publication and distribution of material harmful to minors.[27] Justice Scalia's dissent is not binding, but Defendant advances and preserves the argument here for purposes of appellate review.

In any event, HB 1181 survives every level of scrutiny. A state may "regulate the content of constitutionally protected speech in order to promote a compelling interest if it chooses the least restrictive means to further the articulated interest." *Sable Commc'ns of California, Inc. v. F.C.C.*, 492 U.S. 115, 126 (1989). "[I]t is the rare case in which a State demonstrates that a speech restriction is narrowly tailored to serve a compelling interest." *Williams-Yulee v. Fla. Bar*, 575 U.S. 433, 444 (2015) (quotation omitted). "But those cases do arise." *Id.*

Here, Plaintiffs do not seem to dispute that Texas has a compelling interest in protecting kids from porn. Dkt. 1, p. 7. It would be pointless to try. The harm caused to children by exposure to porn is grave and well-established.[28] And protecting the health, safety, and wellness of the next generation is a vital goal of an effective government. Indeed, the Supreme Court has recognized "a compelling interest in protecting the physical and psychological well-being of minors." *Sable*, 492 U.S. at 126; *see Ashcroft*, 542 U.S. at 675 (Stevens, J., concurring). The question, then, is whether HB 1181 is appropriately tailored.

1.     HB 1181's age-verification requirement is narrowly tailored.

Texas narrowly tailored its age-verification requirement. In arguing otherwise, Plaintiffs misconstrue *Ashcroft*, and wholly ignore that decision's farsighted caution regarding the influence of advancing technology on its jurisprudence.

---

[27] https://capitol.texas.gov/tlodocs/88R/billtext/pdf/HB01181F.pdf
[28] Exh. 1, Dines Decl. ¶ 12.

In *Ashcroft*, the Court concluded that the district court did not abuse its discretion when enjoining COPA because there was "a serious gap in the evidence" regarding the effectiveness of a potentially less restrictive alternative means—blocking and filtering software. 542 U.S. at 671. The district court had found, based on the evidence in front of it, that blocking and filtering software was less restrictive than age verification in achieving the government's goal of protecting children.

*Ashcroft* reviewed a five-year-old factual record. *See id.* at 671–72. The district court made its finding *in 1999. Id.* With prescience, the Supreme Court recognized, "[T]echnology of the Internet evolves at a rapid pace . . . It is reasonable to assume that other technological developments important to the First Amendment analysis have also occurred [since the district court made its finding]." 542 U.S. at 671.

Certainly, *Ashcroft* did not hold that blocking and filtering software would *always* be a less restrictive means than age verification. *See id.* Rather, *Ashcroft* merely upheld—on abuse-of-discretion review—a district court's determination that a 1999 evidentiary record did not support the argument that age verification was less restrictive than blocking and filtering software. *Id. Ashcroft* expressly recognized that technology could change. *Id.* at 671–72.

Now, nearly a quarter-century later, technology has indeed changed—dramatically. In 1999, the district court could not even post its opinion online.[29] And, in any event, an interested reader would have needed to engage their AOL compact disc received via snail mail, power through the sound of dial up, search Yahoo!, and then wait a very long time. Perhaps nothing places *Ashcroft* on the technological timeline more than the Supreme Court's 1997 opinion in *Reno*, which had to explain what the internet is. *See Reno v. ACLU*, 521 U.S. 844, 849 (1997) ("The Internet is an international

---

[29] PACER became available on the world wide web in 2001. https://www.theguardian.com/technology/2009/nov/11/recap-us-courtrooms (last visited 8/17/2023)

network of interconnected computers."). In sum, the framework of *Ashcroft* holds but the world of *Ashcroft* is long gone.

Today's age verification technology is lightyears ahead of where it was in either 1999 or 2004. It is designed specifically for convenience and privacy.[30] It is not burdensome for commercial websites to verify the age of their users—costing between zero and twelve cents per user with reuse of verification readily available across multiple internet platforms.[31] And with any real interest from porn sites, the cost of verification would plummet further. There are numerous ways to verify a person's age.[32] Consumers can pick one that suits their needs and comfort thanks to a competitive market for age verification services offered by reputable companies who follow data privacy laws.[33] Age verification works well for various online commercial activities, such as gambling and the sale of alcohol, cigarettes, and guns.[34] Importantly, *Plaintiffs and other porn sites already use age verification outside of Texas.*[35]

Meanwhile, blocking and filtering software is not as effective as *Ashcroft* assumed, or hoped, it would be.[36] It is easily disabled or avoided.[37] Moreover, the ability of some parents to monitor and regulate their children's devices provides at best a partial solution that in no way obviates the need for age-verification when a child reaches a porn site.[38]

Plaintiffs also claim that HB 1181's age verification provision fails strict scrutiny because kids might use a VPN and thereby render porn sites unable to ascertain their geographic location. Dkt. 1, p. 5. But this argument suffers from at least four deficiencies. Plaintiff M.G. Freesites Ltd's own

---

[30] Exh. 4, Allen Decl. ¶¶ 28-30.
[31] *Id.* at ¶¶ 57-59.
[32] *Id* at ¶ 83.
[33] *Id.* ¶¶ 80-83.
[34] *Id.* ¶ 11, 46.
[35] *Id.* ¶ 11, 70, 88.
[36] *Id.* ¶ 76.
[37] *Id.* ¶ 73.
[38] *Id.* ¶¶ 76-77.

marketing material belies their VPN characterization. Their website Pornhub releases yearly site statistics that provide a very detailed review of visitor behavior. Notably, it ranks states by the average time their residents spent on Pornhub.com—down to the second.[39] And it identifies each state's most searched term for the year.[40] Second, some few tech-savvy children finding ways to avoid online age verification is the modern version of the age-old trick of using a fake ID. It does not negate the effectiveness of age-verification generally. Third, several other websites that have a vested interest in knowing the location of their visitors have found ways to identify and stop VPN usage.[41] And, finally, a decent VPN costs money that, for instance, an eleven-year-old is unlikely to have or spend.[42]

Finally, Plaintiffs' assertion that HB 1181 fails strict scrutiny because kids can still view porn through search engines is similarly deficient. According to their declarant, Richard L. Sonnier, a child could search Bing.com for "hot sex" and instantly gain access to porn that way. Dkt. 5-2. But the websites and videos that populate from that search are porn websites that would be subject to HB 1181. Notably, under current conditions, the vast majority—if not all—of the results are Plaintiffs' websites.[43]

"The First Amendment requires that [a State's law] be narrowly tailored, not that it be perfectly tailored." *Williams-Yulee*, 575 U.S. at 454 (internal quotation marks omitted). Here, the Texas Legislature—faced with a serious and universally-acknowledged harm facing a large number of Texas children—passed legislation that reasonably and effectively limits children's access to porn without limiting adults' access to porn. If HB 1181's age verification requirement is not perfectly tailored, it is certainly narrowly tailored.

---

[39] Exhibit C, Cabrera Decl., at ¶ 15.
[40] *Id.*
[41] Exh. 4, Allen Decl., at ¶¶ 45-46.
[42] *Id.* at ¶ 45.
[43] Exhibit C, Cabrera Decl., at ¶¶ 4-5.

2.      HB 1181's notice requirement is constitutional.

a.      *HB 1181's notice requirement does not pose a substantial obstacle to the exercise of constitutional rights.*

The required notice provisions of HB 1181 place no restrictions on Plaintiffs' ability to produce porn or provide it to an adult audience. In other words, the required notices do not pose a substantial burden on the Plaintiffs' asserted constitutional right. So, the notices are permissible if they include "truthful, nonmisleading, and relevant disclosures" in furtherance of the state's legitimate interest. *Texas Med. Providers Performing Abortion Servs. v. Lakey*, 667 F.3d 570, 577 (5th Cir. 2012). That is exactly what they do.

The first notice states:

> TEXAS HEALTH AND HUMAN SERVICES WARNING: Pornography is potentially biologically addictive, is proven to harm human brain development, desensitizes brain reward circuits, increases conditioned responses, and weakens brain function.

Scientific studies make clear that "internet pornography addiction fits into the addiction framework and shares similar basic mechanisms with substance addiction."[44] And multiple studies have shown that pornography reduces brain function or academic performance.[45]

The second notice states:

> TEXAS HEALTH AND HUMAN SERVICES WARNING: Exposure to this content is associated with low self-esteem and body image, eating disorders, impaired brain development, and other emotional and mental illnesses.

---

[44] Exh. 5, Bouché Decl., at ¶ 8; Love, et al., *Neuroscience of Internet Pornography Addiction: A review and Update*, 5 Behavioral Sci. 388, at 389 (2015) https://www.mdpi.com/2076-328X/5/3/388; *see also* Hilton, D. L. & Watts, C., *Pornography addiction: A neuroscience perspective*, 2 Surgical Neurology Int'l 19 (2011) https://doi.org/10.4103/2152-7806.76977.
[45] *Id.* at ¶10; Exh. 6, Beyens, I., Vandenbosch, L., and Eggermont, S., *Early Adolescent Boys' Exposure to Internet Pornography: Relationships to Pubertal Timing, Sensation Seeking, and Academic Performance*, 35 The Journal of Early Adolescence 1045-1068 (2015).

Rigorous scientific research has established that porn viewing is associated with negative body image.[46] So is depression and anxiety.[47]

The third notice states:

> TEXAS HEALTH AND HUMAN SERVICES WARNING:
> Pornography increases the demand for prostitution, child exploitation, and child pornography.

Again, the science is clear: viewing pornography increases the likelihood a viewer will engage in deviant sexual behavior, especially if that viewer is a young child or adolescent.[48] And another study concluded that men who were arrested for solicitation of prostitution were twice as likely to report having watched pornographic movies over the preceding year than the national sample.[49]

The required notices contained in HB 1181 are truthful, nonmisleading, and relevant.

In *Planned Parenthood Minnesota, et al. v. Rounds*, the Eight Circuit, sitting *en banc*, assessed the constitutionality of a statute that required doctors to provide a written disclosure to women seeking abortions. *Planned Parenthood Minnesota, et al. v. Rounds*, 686 F.3d 889 (8th Cir. 2012) (en banc). Specifically, the disclosure had to include, *inter alia*, (1) information that "the abortion will terminate the life of a whole, separate, unique, living human being," and (2) a description of known medical risks of abortion such as depression, psychological distress, and "increased risk of suicide and suicide ideation." S.D.C.L. § 34-23A-10.1. In its first review of the matter, at the preliminary injunction stage,

---

[46] Exh. 5, Bouché Decl., at ¶ 9. Paslakis, G., Chiclana Actis, C., & Mestre-Bach, G., *Associations between pornography exposure, body image, and sexual body image: A systematic review*, Journal of Health Psychology, 27(3) (2020); Tylka, T. L., *No Harm in Looking, Right? Men's Pornography Consumption, Body Image, and Well-Being*, 16 Psychology of Men & Masculinity 97–107 (2015) https://doi.org/10.1037/a0035774; Maas, M. K., & Dewey, S., *Internet Pornography Use Among Collegiate Women: Gender Attitudes, Body Monitoring, and Sexual Behavior*, 8 SAGE, at 10 (2018) https://doi.org/10.1177/2158244018786640.

[47] Exh. 1, Dines Decl. at 6, 8.

[48] Seigfried-Spellar, *supra*.

[49] Monto, M., *Focusing on the clients of street prostitutes: a creative approach to reducing violence against women*, Final report for the Nat'l Inst. of Justice (1999) https://nij.ojp.gov/library/publications/focusing-clients-street-prostitutes-creative-approach-reducing-violence.

the Eighth Circuit found the statute constitutionally sound generally, but struck down the suicide advisory. 653 F.3d 662 (8th Cir. 2011). Later, upon reviewing an appeal from summary judgment, the Eight Circuit reversed course and upheld the constitutionality of the advisory. 686 F.3d 889.

In so doing, the *Rounds* Court acknowledged that studies provided and relied upon by both parties "have strengths as well as weaknesses" and "must make use of imperfect data that typically was collected for entirely different purposes…" *Id.* at 904. Nevertheless, the Court held, "We express no opinion as to whether some of the studies are more reliable than others; instead we hold only that the state legislature, rather than a federal court, is in the best position to weigh the divergent results and come to a conclusion about the best way to protect its populace." *Id.*

*Rounds*, cited heavily by the Fifth Circuit in *Lakey*, provides at least three relevant takeaways. First, an expedited preliminary injunction hearing is not the best mechanism for determining whether a required notice is truthful, nonmisleading, and relevant. Second, even after the Court receives all available evidence, it must still defer to the legislature's view of any conflicting science and literature. Third, "to render the [required notice] unconstitutionally misleading or irrelevant, [Plaintiffs] must show that [pornography] has been ruled out, to a degree of scientifically accepted certainty, as a statistically significant causal factor in [the identified harms]." 686 F.3d at 900. That is, Plaintiffs must show the notices are verifiably untruthful. *Id.* at 893.

Returning to the Fifth Circuit and *Lakey*, this Court's final inquiry is whether the required notices are relevant to a legitimate state interest. 667 F.3d at 576. This analysis does not trigger strict scrutiny. *Id.* "It inquires into neither compelling interests nor narrow tailoring." Texas has an undeniable interest in protecting its children from the perils of porn. Education about some of those perils—especially for those who have either ignored or somehow failed to identify them—is a rational way for Texas to pursue its interest.

        b.      *At most, HB 1181's notice requirement impacts commercial speech.*

Speech is commercial speech when it "propose[s] a commercial transaction," *Bd. of Trustees of State Univ. of New York v. Fox*, 492 U.S. 469, 473–74, (1989) (quoting *Virginia Pharmacy Board v. Virginia Citizens Consumer Council, Inc.,* 425 U.S. 748, 762 (1976)).

HB 1181 requires porn sites to place notices on all advertisements for their site.[50] This provision implicates only commercial speech. *Fox,* 492 U.S. at 473-74. But HB 1181 also requires that porn sites place notices on their landing page. As applied to the Subscription Websites—the only Plaintiff websites with a cognizable claim—this requirement likewise implicates only commercial speech. Because their landing page is nothing more than a place to click and then follow a prompt to enter your payment information, it does nothing more than "propose a commercial transaction."[51]

The state can restrict commercial speech if it does so in the service of a substantial governmental interest and through means that directly advance that interest. *Zauderer v. Off. of Disciplinary Couns. of Supreme Ct. of Ohio*, 471 U.S. 626, 638 (1985) (citing *Central Hudson Gas & Electric Corp. v. Public Service Comm'n of New York*, 447 U.S. 557 (1980)). As concluded immediately above, HB 1181 meets this standard.

        c.      *HB 1181's notice requirement passes strict scrutiny.*

Although it need not, HB 1181's notice requirement passes strict scrutiny. The government has a compelling interest in protecting children from porn. HB 1181's notice requirement is narrowly tailored to educate those Texans most likely to misunderstand the harm porn causes, and it does so without limiting anyone's access to pornography.

---

[50] Tex. H.B. 1181, 88th Leg., R.S. (2023) (requiring notices "on the landing page of the Internet website on which sexual material harmful to minors is published or distributed and on all advertisements for that Internet Website.").

[51] See Exh. 3, Cabrera Decl., at ¶ 17.

### E.  HB 1181 Is Not Vague or Overbroad.

Plaintiffs contend that HB 1181 is vague and overbroad. And Plaintiffs point to a number of phrases in the statutes that they claim confound them, such as "taken as a whole" and "material." Dkt. 1, pp. 23-24. Plaintiffs say they "can only guess" what these words mean. *Id.* Binding Supreme Court precedent puts an end to Plaintiffs' guesswork.

HB 1181 incorporates language from the Supreme Court in *Miller v. California*. There, the Supreme Court reaffirmed that obscene material does not receive First Amendment protection. And *Miller* announced three factors for determining whether material is obscene:

> (a) whether the average person, applying *contemporary community standards* would find that the work, *taken as a whole*, appeals to the prurient interest; (b) whether the work depicts or describes, in a patently offensive way, sexual conduct specifically defined by the applicable state law; and (c) whether the work, *taken as a whole*, lacks serious literary, artistic, political, or scientific value. 413 U.S. at 24 (internal quotation marks and citations omitted) (emphasis added).

The Texas legislature adopted this standard as the definition of material that is subject to regulation.[52] The legislature then reasonably recognized that, even if some pornographic material has literary, artistic, political, or scientific value for adults, it is nevertheless inappropriate for children. *Id.* The Supreme Court expressly allows legislatures to make this distinction. *See Sable*, 492 U.S. at 126 (explaining that government may "shield[] minors from the influence of literature that is not obscene by adult standards"). Plaintiffs' assertion that HB 1181's reference to minors fundamentally changes the *Miller* standard is wrong. HB 1181 may describe a larger category of content, but it also does so with a clearer line. Plus, HB 1181 does not place any limits whatsoever on what porn adults can watch.

Plaintiffs also profess confusion about how to calculate whether their porn sites are one-third porn. Dkt. 1, p. 24. But this is not the first time a legislature has drawn such a line, and prior line-drawing has been upheld. In any event, "perfect clarity and precise guidance" are not required. *Doe I*

---

[52] Tex. H.B. 1181, 88th Leg., R.S. (2023).

*v. Landry*, 909 F.3d 99, 116–118 (5th Cir. 2018) (quotation omitted). An analogous problem arises in defining an "adult business" for purposes of zoning and business licensing, which typically depends on both the definition of sexual content and the application of a "substantial portion" provision. Numerous courts have considered and upheld laws with such distinctions.[53] This Court should do the same.

*Miller* aside, Plaintiffs have simply failed to carry their heavy burden to clearly establish overbreadth. Facial challenges invite "[i]nvalidate-the-law-now, discover-how-it-works-later judging" that "is particularly troublesome when reviewing state laws, as it deprives courts [of] the opportunity to construe a law to avoid constitutional infirmities." *NetChoice, L.L.C. v. Paxton*, 49 F.4th 439, 449 (5th Cir. 2022) (quotation omitted). "In accordance with the disfavor that attaches to pre-enforcement facial challenges, the legal standard for them is extraordinarily high." *Id.* Because Plaintiffs have not clearly carried their heavy burden to show that "a substantial number" of the applications of the challenged laws are unconstitutional "in relation to the [laws'] plainly legitimate sweep," the overbreadth challenge fails. *Id.* at 450 (quotation omitted).

### F.  HB 1181 Does Not Violate the Communications Decency Act (CDA)

As an initial matter, it is not clear that the CDA applies to foreign websites. Congress can pass laws intended to protect the interest of persons in foreign countries, but Plaintiffs have not shown the CDA to be such a law. *See Agency for Int'l Dev.*, 140 S. Ct. at 2087 (2020). Second, the general liability

---

[53] *See, e.g., Ill. One News, Inc. v. City of Marshall*, 477 F.3d 461, 465 (7th Cir. 2007) (finding that the definition of "adult bookstore" as "[a]n establishment having a substantial or significant portion of its stock in trade" in adult merchandise was not facially vague and noting that "[i]t is all but impossible to write a law or regulation without some qualitative words such as 'substantial'"); *Doctor John's, Inc. v. City of Roy*, 465 F.3d 1150, 1157, 1160 (10th Cir. 2006) (noting that to prevail on a facial vagueness challenge, a party "must show, at a minimum, that the challenged law would be vague in the vast majority of its applications" and that the phrase "'significant or substantial' portion of its wares devoted to adult material survives Dr. John's facial vagueness challenge"); *ILQ Invs., Inc. v. City of Rochester*, 25 F.3d 1413, 1419 (8th Cir. 1994); *511 Detroit St., Inc. v. Kelley*, 807 F.2d 1293, 1295–97 (6th Cir. 1986).

created by HB 1181 is not premised on the substance of user-generated content. Unlike the negligence claim brought by the plaintiff in *Doe v. Myspace*, a lawsuit brought pursuant to HB 1181 does not arise from individualized harm. *See* 528 F.3d 413, 416-17 (5th Cir. 2008). Liability results solely from a website's failure to comply with the age-verification requirements.[54] That is, liability is imposed without regard to whether a child visits the website at all.

Plaintiffs are left only with their complaint about the increased civil penalty allowed when a website fails to comply with HB 1181 and a minor accesses harmful content.[55] The CDA does not help Plaintiffs there, either. Plaintiffs are content providers, despite their perfunctory protestations to the contrary.

Plaintiff MG Premium Ltd alleges it is entitled to protection under the CDA because its website SpiceVids.com offers porn owned and controlled by third parties. Dkt. 1, p. 4. But MG Premium Ltd also asserts that it owns Brazzers.com. *Id.* And Brazzers creates content and posts it "to the websites of other Plaintiffs, including… SpiceVids." *Id.* So, according to their own complaint, MG Premium Ltd owns SpiceVids *and* creates content for the site. Pornhub.com, operated by Plaintiff MG Freesites (a name notably similar to MG Premium Ltd), has a channel for "Pornhub Originals" where it posts porn content it generates.[56] Pornhub also has a blog and other content generated by the site, itself.[57] The websites Porndoe.com (MediaME SRL) and xnxx.com (NKL Associates, s.r.o.) likewise have "exclusive content."[58] Moreover, as evidenced by the declarations of Adreas Andreou, Robert Seifert, and Sadiq Muhamed—filed in support of Plaintiffs' motion—it is not entirely clear where one Plaintiff ends and another begins, and therefore which Plaintiff—or Plaintiffs—owns or creates the

---

[54] Tex. H.B. 1181,8th Leg., R.S. (2023) (assessing a penalty of "$10,000 per day that the entity operates an Internet Website in violation of the age verification requirements of this chapter.")

[55] *Id.* ("If because of the entity's violation of the age verification requirements, one or more minors access sexual material harmful to minors, an additional amount of not more than $250,000.).

[56] See Exh. 3, Cabrera Decl., at ¶ 14.

[57] *Id.* at ¶ 16.

[58] *Id.* at ¶ 13.

content for each site. Dkt. 5-4, 5-8, 5-9. Certainly, the Plaintiffs cannot meet their burden to show that they are likely to prevail on an argument that the CDA offers them protection from suit as interactive computer services, instead of liability as content providers. *See Fair Hous. Council of San Fernando Valley v. Roommates.Com, LLC,* 521 F.3d 1157, 1172 (9th Cir. 2008) (holding that CDA immunity did not apply to a website that generated a required questionnaire).

### G. Plaintiffs Are Equally Unlikely to Prevail on Their 8th and 14th Amendment Claims

Plaintiffs do not move for preliminary injunction based on their 8th or 14th Amendment claims. Dkt. 5 at TOC. This speaks to the credibility of these claims—that is, Plaintiffs cannot prevail on those claims. For one thing, their only allegation supporting the 8th Amendment claim is that the fine is excessive. But Texas has similar discretionary enforcement authority (up to $10,000—just like HB 1181) under the Deceptive Trade Practice Act and the Texas Medicaid Fraud Prevention Act. *See* TEX. BUS. & COMM. CODE § 17.47(c)(1); TEX. HUM. RES. CODE § 36.052()(3)(B). The conclusory allegations offered in support of their 14th Amendment claims are likewise unavailing. This is a First Amendment case, and Plaintiffs cannot make it.

## II.   No Plaintiff Can Clearly Show Irreparable Harm

Plaintiffs have not "clearly carried the burden of persuasion" to show imminent irreparable harm as "is required for injunctive relief." *Bluefield Water Ass'n v. City of Starkville*, 577 F.3d 250, 253 (5th Cir. 2009); *Montient Corp. v. Dondero*, 529 F.3d 532, 538 (5th Cir. 2008); 11A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 2948.1 (3d ed. 2013) ("Perhaps the single most important prerequisite for the issuance of a preliminary injunction is a demonstration that if it is not granted the applicant is likely to suffer irreparable harm before a decision on the merits can be rendered.").

To show irreparable harm here, Plaintiffs must demonstrate "a significant threat of injury from the impending action, that the injury is imminent, and that money damages would not fully repair the

harm." *Humana, Inc. v. Jackson*, 804 F.2d 1390, 1394 (5th Cir. 1986). Plaintiffs cannot make that showing.

A First Amendment injury, like any other, must be imminent and non-speculative. *See Google, Inc. v. Hood*, 822 F.3d 212, 227–28 (5th Cir. 2016) ("[I]nvocation of the First Amendment cannot substitute for the presence of an imminent, non-speculative irreparable injury."); *Ark. Project v. Shaw*, 775 F.3d 641, 663-64 (5th Cir. 2014) ("Federal courts are not obligated to grant an injunction for every violation of law," and the "court's power to order injunctive relief depends" on "whether plaintiffs have established . . . a reasonably certain threat of imminent harm." (citation omitted)). Plaintiffs cannot satisfy these standards.

Most of the Plaintiffs, as foreign entities, have no constitutional protections. Moreover, the alleged loss of supposed CDA immunity does not constitute irreparable harm. Indeed, even if the CDA protected certain Plaintiffs from suit, this Court's refusal to enjoin HB 1181 prevents no Plaintiff from asserting CDA immunity in any HB 1181 enforcement action. In other words, they suffer no loss at all in that regard. Moreover, the Foreign Websites—the only Plaintiffs alleging CDA protection—will assert in any forthcoming lawsuit that U.S. courts lack personal jurisdiction over them. *See Doe*, 2022 WL 982248 at *7.

HB 1181 does not implicate Doe's constitutional rights, so she likewise cannot show harm. And even assuming, unsafely, that HB 1181 may result in a cascade effect of less viewer-generated income for Doe, such monetary losses are not the type of irreparable harm contemplated for the extraordinary relief sought. While Doe may disagree with HB 1181, "[t]hat is a generalized psychological injury, not a particularized free-speech one." *McMahon v. Fenves*, 946 F.3d 266, 271 (5th Cir. 2020). Doe's "passion, however sincere, does not place them among the injured." *Id.* at 272.

The Subscription Websites fair no better. Plaintiffs claim a "loss of goodwill" from customers who are required to verify their age through reliable, secure methods. As an initial matter, this alleged

loss is conclusory and speculative. Age-verification enjoys overwhelming bi-partisan and public support.[59] Age-verification likely creates, rather than reduces, goodwill. Additionally, Plaintiffs conflate loss of goodwill with loss of viewers—but child viewership is not goodwill. HB 1181 only reduces child viewership, and Plaintiffs fail to show otherwise. The Subscription Websites already collect information to establish paid subscription accounts, confounding their argument that collection of any identifying information reduces adult viewership or goodwill. Even so, any alleged lost goodwill is compensable, not the irreparable harm required for the extraordinary relief requested. Finally, Plaintiffs provide insufficient evidence to show that any alleged monetary losses are significant— especially because Plaintiffs provide porn on a global scale.

Plaintiffs may point to their voluntary withdrawal from age-verifying states as evidence that they cannot survive age-verification laws.[60] *See* Dkt. 5-5, ¶ 7. It is obvious they could implement age verification if they wanted to because they have done so in other places.[61] But Plaintiffs know that if they demonstrate an ability to protect kids in one state, every state will want their kids protected. Apparently, if Plaintiffs cannot show porn to kids, they would rather not show it at all.

## III.   No Plaintiff Can Satisfy The First Two Prerequisites for a Preliminary Injunction.

The Foreign Websites have no constitutional claim as a matter of law. Jane Doe has no standing or constitutional harm. Even assuming—against all reason—that the Subscription Websites could clearly show likelihood of success on the merits, they are not irreparably harmed (neither are the Foreign Websites or Jane Doe). Meanwhile, FSC presents no evidence—or even a theory—of its own claims or irreparable harm. Nor has it identified an alleged association member theoretically entitled to preliminary injunction.

---

[59] https://www.politico.com/news/magazine/2023/08/08/age-law-online-porn-00110148 (last visited 8/17/23).
[60] https://www.npr.org/2023/05/07/1174631536/a-new-utah-law-led-pornhub-to-ban-access-to-its-site-for-everyone-in-the-state (last visited 8/18/23).
[61] Exh. 4, Allen Decl., at ¶ 11.

The Court could deny Plaintiffs' Motion for Preliminary Injunction without even analyzing the final two factors. Those factors overwhelmingly favor the State.

## IV.   The State's Interest in Protecting Kids from The Harms of Online Porn Outweighs Any Alleged Cost to Plaintiffs.

Generally, when a plaintiff seeks a preliminary injunction, the Court must conduct an analysis assessing the harm to the opposing party and weighing the public interest. But "[w]hen the government is a party, these last two factors merge." *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014) (citing *Nken v. Holder*, 556 U.S. 418, 435 (2009)). "The public interest standard is a hurdle which must be overcome before employing the drastic remedy of interim injunctive relief, not a clarion call for action before reaching final judgment." *Miss. Power & Light Co. v. United Gas Pipeline Co.*, 760 F.2d 618, 633 (5th Cir. 1985).

When the State is prevented from enforcing its laws, it suffers irreparable injury. *See Maryland v. King*, 567 U.S. 1301, 1303 (2012) ("any time a State is enjoined by a court from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury." (quoting *New Motor Vehicle Bd. of Cal. v. Orrin W. Fox Co.*, 434 U.S. 1345 (1977) (citations omitted)); *see also Planned Parenthood of Greater Tex. Surgical Health Servs. v. Abbott*, 734 F.3d 406, 419 (5th Cir. 2013) (recognizing that, if enforcement of duly enacted State law is enjoined, "the State necessarily suffers the irreparable harm of denying the public interest in the enforcement of its laws").

"In exercising their sound discretion, courts of equity should pay particular regard for the public consequences in employing the extraordinary remedy of injunction." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). Exercising caution is especially important where the defendant is itself a state actor because of the federalism concerns attendant to a federal court intervening to grant preliminary injunctive relief against a state agency. *See Gibson v. Leblanc*, No. 16-354, 2016 WL 5796897, at *2 (M.D. La. Sept. 30, 2016); *Parrott v. Livingston*, NO. 15-866, 2016 WL 4487918, at *1 (E.D. Tex. June 29, 2016); *see also Machete Prods., L.L.C. v. Page*, 809 F.3d 281, 288 (5th Cir. 2015) (quoting *Eccles*

*v. Peoples Bank*, 333 U.S. 426, 431 (1948)). That is particularly true here because the majority of Plaintiffs—and the apparent driving force behind this litigation—are foreign porn websites who claim they can sue, but not be sued, in U.S. courts. *See* 2022 WL 982248 at *7.

The public interest is monumental. There is no more compelling interest than safeguarding the emotional, mental, and physical health of our kids. Their exposure to mainstream, violent, hardcore porn must stop. Compare the *de minimus* cost of complying with HB 1181—a few cents per verification, *maybe*—to the immense, immediate, and irreparable harm to kids from porn. The balance of interest weighs heavily in favor of allowing the implementation of HB 1181 to proceed as soon as possible.

## CONCLUSION

For the foregoing reasons, the Court should deny Plaintiffs' Motion for Preliminary Injunction.

Respectfully submitted,

ANGELA COLMENERO
Provisional Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

GRANT DORFMAN
Deputy First Assistant Attorney General

JAMES LLOYD
Interim Deputy Attorney General for Civil Litigation

KIMBERLY GDULA
Deputy Chief, General Litigation Division

RYAN G. KERCHER
Deputy Chief, General Litigation Division

24

JOHN RAMSEY
Texas Bar No. 24051227

KELSEY L. WARRREN
Texas Bar No. 24095736

Assistant Attorneys General
General Litigation Division
Office of the Attorney General
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
(512) 463-2120/Fax (512) 320-0667
john.ramsey@oag.texas.gov
kelsey.warren@oag.texas.gov

**COUNSEL FOR DEFENDANT**

CERTIFICATE OF SERVICE

I hereby certify that on August 18, 2023, a true and correct copy of the foregoing document was served via the Court's electronic filing system to all counsel of record.

JOHN RAMSEY
Assistant Attorney General