**FILED**
August 21, 2023
CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY: _____pg_____
DEPUTY

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| FREE SPEECH COALITION, INC., et al.,<br><br>Plaintiffs,<br><br>v.<br><br>ANGELA COLMENERO, In Her Official Capacity As Interim Attorney General For The State Of Texas<br><br>Defendant. | CASE NO. 1:23-cv-00917-DAE |

**PLAINTIFFS' REPLY TO DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION FOR EXPEDITED PRELIMINARY INJUNCTION**

**TABLE OF CONTENTS**

Page

PRELIMINARY STATEMENT ................................................................................................1

ARGUMENT .....................................................................................................................................1

I.    THE STATE MISSTATES THE APPLICABLE LEGAL STANDARD ...........................1

II.   THE STATE'S ARGUMENTS AGAINST STANDING ARE MISPLACED ..................2

III.  THE STATE FAILS TO REBUT PLAINTIFFS' LIKELIHOOD OF SUCCESS .............3

    A.    Strict Scrutiny Applies ................................................................................................3

    B.    The State Fails To Show The Act Survives Strict Scrutiny .....................................5

        1.    Neither the "age verification" provision nor the "health warning" provision pursues a compelling interest in protecting minors. ....................5

        2.    Neither the "age verification" nor the "health warning" provision is narrowly tailored. ..............................................................................................7

            (a)   *The "age verification" provision flies in the face of Ashcroft and the evidentiary record.* ...............................................7

            (b)   *The State effectively concedes that the "health warnings" provision is not narrowly tailored.* ..............................................10

    C.    The State Fails To Rebut That The Act Is Impermissibly Vague ..........................10

    D.    Section 230 Is Violated ..............................................................................................11

IV.  THE STATE FAILS TO REBUT PLAINTIFFS' SHOWING OF IRREPARABLE, ONE-SIDED HARM ................................................................................12

CONCLUSION ..............................................................................................................................12

# TABLE OF AUTHORITIES

Page(s)

### Cases

*303 Creative LLC v. Elenis*,
  600 U.S. __ (2023)..................................................................................................................3

*Agency for Int'l Dev. v. All. for Open Soc'y Int'l, Inc.*,
  140 S. Ct. 2082 (2020)............................................................................................................2

*Am. Booksellers Found. for Free Expression v. Sullivan*,
  799 F. Supp. 2d 1078 (D. Alaska 2011) .................................................................................5

*Am. C.L. Union v. Ashcroft*,
  322 F.3d 240 (3d Cir. 2003)..................................................................................................11

*Ashcroft v. Am. C.L. Union*,
  535 U.S. 564 (2002)................................................................................................................2

*Ashcroft v. Am. C.L. Union*,
  542 U.S. 656 (2004).............................................................................................2, 5, 7, 9, 10

*Ass'n of Club Executives of Dallas, Inc. v. City of Dallas, Texas*,
  604 F. Supp. 3d 414 (N.D. Tex. 2022) ................................................................................8, 9

*Backpage.com, LLC v. Hoffman*,
  2013 WL 4502097 (D.N.J. Aug. 20, 2013) ..........................................................................11

*Baker v. City of Fort Worth*,
  506 F. Supp. 3d 413 (N.D. Tex. 2020) ...................................................................................6

*Bethel Sch. Dist. No. 403 v. Fraser*,
  478 U.S. 675 (1986)................................................................................................................3

*Bolger v. Youngs Drug Prod. Corp.*,
  463 U.S. 60 (1983)..................................................................................................................4

*Brewer v. City of Albuquerque*,
  18 F.4th 1205 (10th Cir. 2021) ...............................................................................................8

*Brown v. Ent. Merchants Ass'n*,
  564 U.S. 786 (2011)................................................................................................................6

*Bruni v. City of Pittsburgh*,
  824 F.3d 353 (3d Cir. 2016)....................................................................................................8

*City of Los Angeles v. Alameda Books, Inc.*,
  535 U.S. 425 (2002)................................................................................................................5

*David v. Kazal*,
    142 S. Ct. 1674 (2022) ............................................................................................................2

*Doe v. MySpace*,
    528 F.3d 413 (5th Cir. 2008) ................................................................................................11

*FF Cosms. FL, Inc. v. City of Miami Beach*,
    866 F.3d 1290 (11th Cir. 2017) ..............................................................................................8

*Force v. Facebook, Inc.*,
    934 F.3d 53 (2d Cir. 2019) ....................................................................................................11

*Friends of Georges, Inc. v. Mulroy*,
    2023 WL 3790583 (W.D. Tenn. June 2, 2023) ......................................................................5

*Fund Texas Choice v. Paxton*,
    2023 WL 2558143 (W.D. Tex. Feb. 24, 2023) .....................................................................12

*Garden Dist. Book Shop, Inc. v. Stewart*,
    184 F. Supp. 3d 331 (M.D. La. 2016) ....................................................................................9

*Gibson v. Leblanc*,
    2016 WL 5796897 (M.D. La. Sept. 30, 2016) .......................................................................1

*Machete Prods., L.L.C. v. Page*,
    809 F.3d 281 (5th Cir. 2015) ..................................................................................................1

*McAllen Grace Brethren Church v. Salazar*,
    764 F.3d 465 (5th Cir. 2014) ..................................................................................................2

*Nat'l Inst. of Fam. & Life Advocs. v. Becerra*,
    138 S. Ct. 2361 (2018) ..................................................................................................3, 6, 10

*Parrott v. Livingston*,
    2016 WL 4487918 (E.D. Tex. June 29, 2016) .......................................................................1

*Planned Parenthood Minnesota, N. Dakota, S. Dakota v. Rounds*,
    686 F.3d 889 (8th Cir. 2012) ..................................................................................................4

*Planned Parenthood of Southeastern Pennsylvania v. Casey*,
    505 U.S. 833 (1992) ................................................................................................................4

*Reed v. Town of Gilbert, Ariz.*,
    576 U.S. 155 (2015) ................................................................................................................3

*Reno v. Am. C.L. Union*,
    521 U.S. 844 (1997) ...........................................................................................................5, 11

*Rosenberger v. Rector & Visitors of Univ. of Virginia*,
    515 U.S. 819 (1995) ................................................................................................................6

*Sable Commc'ns of California, Inc. v. F.C.C.*,
 492 U.S. 115 (1989) ...................................................................................................... 5

*Se. Booksellers Ass'n v. McMaster*,
 282 F. Supp. 2d 389 (D.S.C. 2003) ............................................................................... 5

*Serafine v. Branaman*,
 810 F.3d 354 (5th Cir. 2016) ......................................................................................... 4

*Smith v. Daily Mail Publishing Co.*,
 443 U.S. 97 (1979) ......................................................................................................... 5

*Sorrell v. IMS Health Inc.*,
 564 U.S. 552 (2011) ....................................................................................................... 3

*St. Joseph Abbey v. Castille*,
 712 F.3d 215 (5th Cir. 2013) ......................................................................................... 8

*Texas Ent. Ass'n, Inc. v. Hegar*,
 10 F.4th 495 (5th Cir. 2021) .......................................................................................... 5

*Texas Med. Providers Performing Abortion Servs. v. Lakey*,
 667 F.3d 570 (5th Cir. 2012) ......................................................................................... 4

*Thunder Studios, Inc. v. Kazal*,
 13 F.4th 736 (9th Cir. 2021) .......................................................................................... 2

*Turner Broad. Sys., Inc. v. F.C.C.*,
 512 U.S. 622 (1994) ....................................................................................................... 8

*Turner Broad. Sys., Inc. v. F.C.C.*,
 520 U.S. 180 (1997) ....................................................................................................... 8

*United States v. Playboy Ent. Grp., Inc.*,
 529 U.S. 803 (2000) ....................................................................................................... 5

*Virginia v. Am. Booksellers Ass'n*, Inc.,
  484 U.S. 383 (1988) ...................................................................................................... 3

*Williams-Yulee v. Fla. Bar*,
 575 U.S. 433 (2015) ....................................................................................................... 5

## Statutes

Tex. Civ. Prac. & Rem. Code § 129B *et seq*. ................................................................. 3, 9, 10

**PRELIMINARY STATEMENT**

   The State's opposition confirms Plaintiffs' challenge is likely to succeed under established law.  It ignores constitutional defects, such as compelled statements about inapposite "hotlines," which go altogether undefended.  And it concedes dispositive points, such as the absence of any satisfactory justification for discouraging consumption of *adult* content by *adults*, which the State neither denies is a statutory purpose nor defends.  To justify preliminary relief based on *likelihood* of success, it suffices to note that the State's defense—pitched in part as a bid to change Supreme Court precedent—is not *likely* to succeed when measured against the law as it exists today and the current record.  The likely result here is the same one that the Supreme Court and lower courts have repeatedly and consistently reached when invalidating laws, such as the Act, that limit adults' access to adult content under the guise of protecting minors, without accounting for less restrictive alternatives.  Delving further into the facts, the State fails to address Plaintiffs' expert declarations while ignoring *its* burden to justify content-based restrictions and compulsions of speech that trigger strict scrutiny.  A preliminary injunction should issue.

**ARGUMENT**

**I.      THE STATE MISSTATES THE APPLICABLE LEGAL STANDARD**

   The State incorrectly suggests (Opp. at pp. 4, 23-24) that this Court should place a thumb on the scales to uphold the Act.  But the unpublished cases the State cites concern deference to state prisons, not legislative encroachment on protected speech.  *See Parrott v. Livingston*, 2016 WL 4487918, at *1 (E.D. Tex. June 29, 2016); *Gibson v. Leblanc*, 2016 WL 5796897, at *2 (M.D. La. Sept. 30, 2016).  The State's citation to *Machete Prods., L.L.C. v. Page*, 809 F.3d 281, 288 (5th Cir. 2015), is equally inapposite.  *Machete* found lack of standing based on the absence of "real and imminent plans" to violate the law.  *Id*.  Here, standing is straightforward and, as to certain Plaintiffs, uncontested.  And because "the Government bears the burden of proof on the ultimate question of [the Act's] constitutionality," Plaintiffs "must be deemed likely to prevail

1

unless the Government has shown that [the] proposed less restrictive alternatives are less effective[.]" *Ashcroft v. Am. C.L. Union*, 542 U.S. 656, 666 (2004).

## II.  THE STATE'S ARGUMENTS AGAINST STANDING ARE MISPLACED

The State skirmishes in vain over certain Plaintiffs' standing.  "[O]nce we determine that at least one plaintiff has standing, we need not consider whether the remaining plaintiffs have standing[.]" *McAllen Grace Brethren Church v. Salazar*, 764 F.3d 465, 471 (5th Cir. 2014).  Here, Plaintiffs Paper Street Media, LCC and Neptune Media, LLC incontestably have standing to assert a First Amendment challenge to both the "age verification" and "health warning" provisions of the Act.  Both are based in the US; both create legal adult content; and both operate the websites to which they upload that content.  Declaration of Sadiq Muhammed at ¶¶ 2-3, 9-10.  That establishes standing and necessitates resolution of the merits.  *Salazar*, 764 F.3d at 471.

The State cannot avoid merits review by arguing (Opp. at p. 6) that all Plaintiffs' content is obscene.  While Plaintiffs dispute that any of their content is, a substantial portion plainly is not. Rebuttal Declaration of Robert Seifert at ¶ 2; Rebuttal Declaration of Andreas Alkiviades Andreou at ¶ 2;  Rebuttal Declaration of Sadiq Muhamed ("Muhamed Re. Decl.") at ¶ 5; Declaration of Philippe Craveiro-Romão at ¶¶ 4, 11-12.  Moreover, the Act's "health warning" provision compels a government message that speaks in non-obscene terms.  Nor can the State rely on Mr. Cabrera's perusal of Plaintiffs' websites.  Declaration of Erik Cabrera ("Cabrera Decl.") at ¶¶ 7-13.  Mr. Cabrera fails to apply the *Miller* test and the State omits any argument as to how Plaintiffs' content is "patently offensive" under contemporary community standards.  *See Ashcroft v. Am. C.L. Union*, 535 U.S. 564, 576 n.7 (2002).

Finally, the State asserts that foreign Plaintiffs lack standing, ignoring that the speech at issue is speech in Texas.  *See Thunder Studios, Inc. v. Kazal*, 13 F.4th 736, 743 (9th Cir. 2021), *cert. denied sub nom. David v. Kazal*, 142 S. Ct. 1674 (2022) (distinguishing *Agency for Int'l Dev. v. All. for Open Soc'y Int'l, Inc.*, 140 S. Ct. 2082, 2087 (2020), because even though the plaintiffs "were outside the United States at all relevant times," "the recipients of their speech and speech-related conduct were in California.").  The State also sidesteps the overbreadth doctrine, under

which "[l]itigants ... are permitted to challenge a statute not because their own rights of free expression are violated, but because of a judicial prediction or assumption that the statute's very existence may cause others not before the court to refrain from constitutionally protected speech or expression." *Virginia v. Am. Booksellers Ass'n*, Inc., 484 U.S. 383, 386, 392–93 (1988) (cleaned up). Accordingly, Plaintiffs may assert the rights of adults to view content on their websites, notwithstanding their status as foreign entities.[1] Standing should be beyond doubt.

## III. THE STATE FAILS TO REBUT PLAINTIFFS' LIKELIHOOD OF SUCCESS

### A. Strict Scrutiny Applies

This is a straightforward case for applying strict scrutiny, because the Act restricts speech that is *not* obscene as to adults, doing so based on content, viewpoint, and speaker. By its terms, the Act requires any website containing more than one-third "sexual material harmful to minors" to implement age verification, while exempting specified speakers without restriction. §§ 129B.002, 005. In specifying the disfavored content that necessitates age verification, the Act not only restricts speech that is protected for adults, it also restricts *all* speech that accompanies such triggering speech on the same website. Because the Act thus quarantines vast amounts of speech that is protected for adults—on the basis of content (adult content) and speaker identity (adult websites)—strict scrutiny applies to the "age verification" provision. *See Reed v. Town of Gilbert, Ariz.*, 576 U.S. 155, 165, 169 (2015); *Sorrell v. IMS Health Inc.*, 564 U.S. 552, 564 (2011).

Strict scrutiny also applies to the "health warning" provision, for it compels politically charged, controversial speech with which Plaintiffs vehemently disagree. *See 303 Creative LLC v. Elenis*, 600 U.S. __, __ (2023) (slip op., at 8); *Nat'l Inst. of Fam. & Life Advocs. v. Becerra*, 138 S. Ct. 2361, 2371 (2018). While the State argues (Opp. at pp. 13-16) that the "health warnings" required on website landing pages are permissible as compelled commercial disclosures, Plaintiffs

---

[1] The State's remaining arguments as to FSC and Jane Doe are similarly unpersuasive. *See* Rebuttal Declaration of Alison Boden at ¶¶ 2-3. Although the State suggests (Opp. at p. 8) that Jane Doe lacks First Amendment injury, Plaintiffs have demonstrated that adults will forgo websites complying with the Act, diminishing Doe's ability to reach their audience. The dicta the State cites from *Fraser* is irrelevant, concerning the constitutionality of high-school discipline, not standing. *Bethel Sch. Dist. No. 403 v. Fraser*, 478 U.S. 675, 684 (1986).

already debunked that (Mot. at pp. 14-16), and the State lacks contrary authority.  Instead, the State misplaces reliance on *Texas Med. Providers Performing Abortion Servs. v. Lakey*, 667 F.3d 570, 574 (5th Cir. 2012), which concerned informed consent law for abortions and relied principally on the now overturned *Planned Parenthood of Southeastern Pennsylvania v. Casey,* 505 U.S. 833 (1992).  Similarly, the State refers to *Planned Parenthood Minnesota, N. Dakota, S. Dakota v. Rounds*, 686 F.3d 889, 898 (8th Cir. 2012), which the State misreads as instructing that Plaintiffs must show that "[pornography] has been ruled out, to a degree of scientifically accepted certainty, as a statistically significant causal factor in [the identified harms]."  In fact, *Rounds* was addressing "risk" associated with abortions, as relevant to analyzing undue burdens in the context of physicians' provision of healthcare services and women's rights to the same.  *Rounds*, 686 F.3d at 900.  Neither of these abortion cases invokes broader caselaw surrounding compelled speech or suggests the government is free to conscript private speakers to disseminate disputed claims.

      The State also suggests (Opp. at p. 16) that the subscription websites must post "health warnings" because they have "landing page[s]" that are "nothing more than a place to click and then follow a prompt to enter your payment information."  This is incorrect factually (*see* Muhamed Re. Decl. at ¶; 4, Cabrera Decl. at ¶ 17) and off-base legally.  The State ignores the authority Plaintiffs cited to show that compelled disclosures are inappropriate where Plaintiffs "advertise[] an activity itself protected by the First Amendment."  *Bolger v. Youngs Drug Prod. Corp.*, 463 U.S. 60, 68 n.14 (1983).  Even if the landing pages include some commercial speech, "an overbreadth challenge still may be considered with respect to [the] non-commercial speech." *Serafine v. Branaman*, 810 F.3d 354, 365 (5th Cir. 2016).  The State finally argues (Opp. at p. 13-14) that its "health warnings" are true and therefore permitted under *Zauderer*.  Not only does the State whistle past aspects of the warnings that are not "true" in any sense—particularly the stray references to hotlines—it ignores the second requirement of *Zauderer* (*see* Mot. at p. 14-15) that the disclosures be uncontroversial, which they are not.  *See* Cole Decl. (Exh. 7 at p. 58); *see* Declaration of David Lay at ¶ 17.  Even apart from being false or baseless, they are controversial at best.  *See* Cole Re. Decl. (Exh. 7-20).

4

Finally, the State posits (Opp. at p. 6) that the Act warrants intermediate scrutiny on the theory that the internet is analogous to a town square and the Act seeks to control the "secondary effects" of adult businesses.  *See, e.g.*, *City of Los Angeles v. Alameda Books, Inc.*, 535 U.S. 425, 441 (2002) (scrutinizing a zoning ordinance meant to reduce crime and increase property values). Tellingly, the State relies on Justice Scalia's dissent in *Ashcroft*.  Of course, governing Supreme Court precedent goes the opposite way.  Laws restricting the distribution of adult content concern the primary effects on viewers and warrant strict scrutiny.  *See Ashcroft*, 542 U.S. at 676; *United States v. Playboy Ent. Grp., Inc.*, 529 U.S. 803, 815 (2000); *Reno v. Am. C.L. Union*, 521 U.S. 844, 868 (1997); *Sable Commc'ns of California, Inc. v. F.C.C.*, 492 U.S. 115, 126 (1989).  That the Act regulates primary effects is confirmed by its "health warnings," which concern the supposed primary effects of viewing adult content, *e.g.*, addiction and brain damage.  To term these "secondary effects" would distort the doctrine beyond recognition, opening the door for government to recharacterize *any* regulation of disfavored speech and its supposes effects on listeners as oriented towards "secondary effects" in order to water down the applicable scrutiny.

### B.     The State Fails To Show The Act Survives Strict Scrutiny

Because strict scrutiny applies to both provisions,[2] the Act is "presumptively unconstitutional." *Texas Ent. Ass'n, Inc. v. Hegar*, 10 F.4th 495, 509 (5th Cir. 2021).  Yet the State has not carried its burden to show the Act serves a compelling interest and is narrowly tailored, utilizing the least restrictive means to achieve its ends.  *Ashcroft*, 542 U.S. at 663.

### 1.     Neither the "age verification" provision nor the "health warning" provision pursues a compelling interest in protecting minors.

While the State submits (Opp. at p. 9) that "Plaintiffs do not seem to dispute that Texas has a compelling interest in protecting kids," it ignores whether the Act actually pursues that interest. *See Williams-Yulee v. Fla. Bar*, 575 U.S. 433, 449 (2015) (citing *Smith v. Daily Mail Publishing*

---

[2]  By all indications, no court has held that a law restricting access to adult content to protect minors draws intermediate scrutiny.  *See, e.g.*, *Ashcroft*; *Friends of Georges, Inc. v. Mulroy*, 2023 WL 3790583, at *26-28 (W.D. Tenn. June 2, 2023); *Am. Booksellers Found. for Free Expression v. Sullivan*, 799 F. Supp. 2d 1078, 1081 (D. Alaska 2011); *Se. Booksellers Ass'n v. McMaster*, 282 F. Supp. 2d 389, 395 (D.S.C. 2003).

*Co.*, 443 U.S. 97, 104–105 (1979)).  Plaintiffs explained at length (Mot. 11-13) that the Act is too underinclusive to accomplish anything other than viewpoint discrimination.

The "age verification" provision is wildly underinclusive, exempting search engines and (*de facto*) most social media sites despite the prevalence of adult content thereon.  Rebuttal Declaration of Richard Sonnier ("Sonnier Re. Decl.") at ¶ 11; Declaration of Scott Cole (Exh. 5 at p. 31).  Without denying these exemptions, the State incorrectly asserts (Opp. at p. 12) that implementing age verification would stop search engines from reproducing content extracted from Plaintiffs' websites.  Sonnier Re. Decl. at ¶ 6.  The "health warnings" provision is no less underinclusive, as it fails to mandate similar warnings for other sources of adult content, such as printed material, movies, and social media sites.  *See Brown v. Ent. Merchants Ass'n*, 564 U.S. 786, 802 (2011).  Both provisions paint a singular target on the back of adult websites, because the State reviles *them* as *speakers*, while exempting ubiquitous other means by which content travels to minors.  *See* Rebuttal Declaration of Scott Cole ("Cole Re. Decl.") (Exh. 1 (House Committee Report ("C.S.H.B. 1181 seeks to *hold* individuals and entities who publish sexual material harmful to minors on a website *accountable*" (emphasis added))).  Because the Act manifests speaker-based viewpoint discrimination, it is not a principled attempt to shield minors from adult content. *See Baker v. City of Fort Worth*, 506 F. Supp. 3d 413, 424 (N.D. Tex. 2020).  Instead, it fails strict scrutiny for the simple reason that "government regulation may not favor one speaker over another."  *Rosenberger v. Rector & Visitors of Univ. of Virginia*, 515 U.S. 819, 828  (1995).

The contentious nature of the "health warnings" confirms that "viewpoint discrimination is inherent in the design and structure of this Act."  *Nat'l Inst. of Fam. & Life Advocs. v. Becerra,* 138 S. Ct. 2361, 2379 (2018) (Kennedy, J., concurring, Alito, J., Gorsuch, J., and Roberts, CJ., joining).  Not only are the warnings false or baseless, but they tell a one-sided story scripted by the government, hiding from the public the ways in which adult content can positively impact both viewers and participants.  *See* Cole Re. Decl. (Exh. 10, 13-14); Declaration of Jane Doe at ¶ 4.  No scientific principle explains these "warnings," apart from the State's anti-porn polemic.  Tellingly, the State offers no response to Plaintiffs' observation that "it is nonsensical to provide 'health

warnings' to protect minors who, by virtue of the 'age verification' requirement, should never be on adult websites in the first place." Mot. at pp. 13-14.  Even under rational basis review, it would be irrational to deploy "health warnings" to protect minors who, by the State's hypothesis, are blocked from the websites displaying them.  All the State is really doing here is discouraging willing adults from consuming expression the State decries.  The State should be espousing its anti-porn views on its own—not forcing them upon speakers who disagree.

> 2. Neither the "age verification" nor the "health warning" provision is narrowly tailored.
>> (a) *The "age verification" provision flies in the face of Ashcroft and the evidentiary record.*

The State also fails to carry its burden to show that age verification is the least restrictive means of achieving its claimed ends.  The Supreme Court made clear in *Ashcroft* that content filtering is a superior alternative.  *Ashcroft*, 542 U.S. at 666–68.  Against this backdrop, it falls to the State to show otherwise.  Not only did the State fail to consider this less restrictive alternative, it considered no alternatives at all.  The Legislature at one point considered *combining* age verification requirements with device-level filtering for a maximalist approach.  *See* Senate Committee Session from 1:44:00 to 2:27:00, https://tlcsenate.granicus.com/MediaPlayer.php?view_id=53&clip_id=17957.  But it never weighed device-level filtering as an alternative, instead doubling-down on age verification without identifying any evidentiary basis.  *See* Senate Session from 3:00:00 to 3:05:00, https://tlcsenate.granicus.com/MediaPlayer.php?view_id=53&clip_id=18068; *compare* Cole Re. Decl. (Exh. 3 (Senate Committee Report)), *with id.* (Exh. 4 (Senate Amendments)); *see also id.* (Exh. 1 (House Committee Report) & Exh. 2 (House Engrossed Report)).  Indeed, the Legislature leaned mostly on anecdotes and advocacy groups.  *See* Senate Committee Session from 1:44:00 to 2:27:00, , https://tlcsenate.granicus.com/MediaPlayer.php?view_id=53&clip_id=17957; *see also* Cole Re. Decl. (Exh. 3 (the legislature citing Morality in Media, now known as the National Center on Child Exploitation ("NCOSE")); *id.* (Exh. 5 (article explaining NCOSE's anti-porn political lobbying).

The Legislature's disregard of obvious alternatives is fatal. To satisfy heightened scrutiny, the State must present evidence supporting the Legislature's judgments. *See Turner Broad. Sys., Inc. v. F.C.C.*, 520 U.S. 180, 195–96 (1997). But the State cannot do so where, as here, the Legislature made no judgment at all. *See, e.g.*, *Ass'n of Club Executives of Dallas, Inc. v. City of Dallas, Texas*, 604 F. Supp. 3d 414, 426 (N.D. Tex. 2022) ("no evidence was presented *that the City considered* less restrictive means of achieving its stated interest" (emphasis added)). While the Legislature "is not obligated, when enacting its statutes, to make a record of the type that an administrative agency or court does to accommodate judicial review," it cannot fail to consider less-restrictive alternatives. *Turner Broad. Sys., Inc. v. F.C.C.*, 512 U.S. 622, 666 (1994); *see also Brewer v. City of Albuquerque*, 18 F.4th 1205, 1255 (10th Cir. 2021) ("[W]hile such a less-restrictive-means analysis need not entail the government affirmatively proving that it *tried* less-restrictive mean . . . it *does* entail the government giving *serious consideration* to such less-restrictive means before opting for a particular regulation."); *Bruni v. City of Pittsburgh*, 824 F.3d 353, 357 (3d Cir. 2016) (same); *FF Cosms. FL, Inc. v. City of Miami Beach*, 866 F.3d 1290, 1301 (11th Cir. 2017) (same). Here, the Legislature showed no regard for less-restrictive alternatives, because it was fixated on targeting adult websites. The State's lawyers cannot now, *post hoc*, construct a satisfactory legislative rationale from whole-cloth, as they try to do here, consistent with heightened scrutiny. *See St. Joseph Abbey v. Castille*, 712 F.3d 215, 223 (5th Cir. 2013).

Even if the Legislature had considered less restrictive alternatives, the record does not show that they would be less effective. The Act's exemptions for search engines and social media sites, together with the wide availability of proxy servers and VPNs, shred the Act's efficacy as to minors. Mot. at pp. 10-13. In fact, content filtering is necessarily superior for a key reason: the websites that will comply with the Act are *only a subset* of the websites containing adult content that filtering software blocks. Sonnier Re. Decl. at ¶¶ 3-5, 11-13. Not only does the State fail to address this, but it ignores the alternative of ISP pre-blocking that Plaintiffs also discussed.

The State presents scant, defective evidence to impugn content filtering. Apart from noting (Opp. at p. 11 n.37) that some parents do not use or need to be educated about content filtering—

8

which supports Plaintiffs' position[3]—the State's only purported evidence against content filtering (Opp. at p. 11 n.36) consists of a study that defines "failure" as allowing just one instance of nudity to slip past the filter over the span of an entire year. *See* Cole Re. Decl. (Exh. 6 (Przybylski & Nash, "Internet Filtering and Adolescent Exposure to Online Sexual Material," 21 CYBERPSYCH, BEHAV., AND SOC. NETWORKING 405, 407 (2018))). The State's evidence thus depends on a grossly unrealistic metric of success. *See Ass'n of Club Executives*, 604 F. Supp. 3d at 427 (rejecting the State's "shoddy reasoning"). In fact, while the tailoring analysis requires weighing practical alternatives, the State here faults one alternative for not being perfect, even though none is. *See Garden Dist. Book Shop, Inc. v. Stewart*, 184 F. Supp. 3d 331, 339 (M.D. La. 2016). Notably, the sole imperfection the State now attributes to content-filtering (a single instance of nudity) would not even offend the Act. *See* § 129B.001(6).

The State fails to rebut Plaintiffs' evidence. It first suggests (Opp. at p. 12) that Pornhub's state-by-state metrics show that VPNs do not work, but this is backwards: because VPNs mask IP addresses, the data is a best-guess of users' locations. Declaration of Richard Sonnier ("Sonnier Decl.") at ¶¶ 18-25. The State then argues that VPNs and proxy servers are the "the modern version" of a fake ID. But proxy servers and VPNs are legal and easily available to internet users. *Id.* at ¶ 25. The State next posits that minors may struggle to afford VPNs capable of circumventing the Act, gliding past the fact that minors can bounce between free trials. *Id*. The State also ignores the other circumvention methods Plaintiffs discussed, such as the free "Tor" browser. Finally, the State suggests (Opp. at p. 12) Plaintiffs should prevent VPN usage, but that is irrelevant to the Act, which does not require any such thing of Plaintiffs.

The State does not dispute that adults' rights to free expression will be substantially curtailed by the Act, because the Act requires adults to surrender their sensitive personal information in order to access constitutionally protected speech. As Plaintiffs explained (Mot. at p. 11), providing such information on the internet poses far greater risks than doing so in person,

---

[3] "Congress undoubtedly may act to encourage the use of filters. . . . It could also take steps to promote their development by industry, and their use by parents." *Ashcroft*, 542 U.S. at 669.

with the inevitable result that many adults will eschew websites that comply with the Act. The State discusses (Opp. at p. 11) particular services offered by the "Age Verification industry" (Declaration of Tony Allen at ¶ 64) to reduce risks to personal data. But the Act contains no such limitations or requirements. While embracing the use of *personally identifying* information, *see* § 129B.003, the Act provides no remedy to private individuals harmed by the loss of that information. In sum, the Act thus goes much farther than necessary in burdening speech.

> (b)   *The State effectively concedes that the "health warnings" provision is not narrowly tailored.*

Although the State insists that its "health warning" provision places no "restrictions" on speech (Opp. at p. 13), this misses the point. The warnings are expressly designed to deter consumption of the content at issue and constitute content-based, compelled speech on a controversial topic. Mot. at pp. 13-15. As such, they flagrantly violate the First Amendment in ways that the State hardly defends. *See* Opp. at p. 16 (devoting two sentences to the issue). The State does not dispute that it could instead employ "a public-information campaign," nor does the State defend the Act's requirement of displaying the inapposite US Substance Abuse Helpline. *Nat'l Inst. of Fam. & Life Advocs. v. Becerra*, 138 S. Ct. 2361, 2376 (2018) (cleaned up). Rather, the State claims simply that the "health warnings" serve "to educate" minors—a proposition that, as explained above (*see supra* at p. 7), fails on its face. Such a feeble defense cannot withstand scrutiny.

C.   **The State Fails To Rebut That The Act Is Impermissibly Vague**

Vagueness, too, infects the Act, which is especially problematic where First Amendment rights are at stake. *See* Mot. at p. 16. The State compares (Opp. at p. 18) the Act's "more than one-third" standard for material on the *internet* to a "substantial portion" standard for *physical items* but thereby highlights the vagueness problem: unlike physical items, for which the unit of counting is obvious, a standard for the internet must define the unit of counting in order to be comprehensible. As Plaintiffs noted (Mot. at p. 17), it is impossible to tell how to perform the Act's "more than one-third" calculation. One knows to count books in a bookstore, but cyberspace lacks any corresponding unit for counting. The State also ignores how the phrase "with respect to

minors," *see Am. C.L. Union v. Ashcroft*, 322 F.3d 240, 268 (3d Cir. 2003), and the Act's silence on the frequency of age verification further compound the Act's unintelligibility.[4] Nor does the State defend the incoherence of requiring 14-point font on webpages. *See* Mot. at p. 14 n.4.

### D. Section 230 Is Violated

The State suggests (Opp. at p. 19) that *Doe v. MySpace*, 528 F.3d 413 (5th Cir. 2008), is distinguishable because the plaintiff sought to recover in tort for harm caused by a third party, while the Act does not require an allegation of "individualized harm."[5] The State cites no authority for this distinction. *MySpace* makes clear that section 230 immunity depends on the substance of the claim. *See id.* at 419. If "recharacterizing the plaintiff's claims" shows that the theory of liability is based on "decisions relating to the monitoring, screening, and deletion of content," the claims are barred and preempted. *Id.* (cleaned up). It is irrelevant whether "individualized harm" (Opp. at p. 19) is alleged. *See, e.g.*, *Backpage.com, LLC v. Hoffman*, 2013 WL 4502097, at *6 (D.N.J. Aug. 20, 2013) (section 230 preempted a New Jersey law criminalizing the display of sexual advertisements depicting minors). Just so here, the Act forces upon Plaintiffs a decision "quintessentially related to a publisher's role"—to filter its audience in a particular manner. *Id.* (cleaned up). Even the Act's title focuses on "the publication" of adult content, and the House Committee Report reveals that the Legislature sought to hold websites "accountable." Cole Re. Decl. (Exh. 1). The Act thus triggers section 230's protection.

The State finally asserts that the platform Plaintiffs create content of their own, but this is a red herring. Whatever content the platform Plaintiffs' produce is largely in the form of blogs, different from adult content. Moreover, to the extent the State would characterize (Opp. at p. 19) certain Plaintiffs as responsible for the creation of certain adult content, that would not prevent

---

[4] In mentioning facial overbreadth (Opp. at p. 18), the State stumbles. A "substantial number" of the Act's applications are unconstitutional in relation to its "legitimate sweep" because the State's interests do "not justify an unnecessarily broad suppression of speech addressed to adults," not because the Act is vague. *Reno v. Am. C.L. Union*, 521 U.S. 844, 874–75 (1997).

[5] The State incorrectly suggests (Opp. at p. 18) that section 230 does not apply to foreign actors. Congress extended protection to anyone in the U.S. courts, exactly where Plaintiffs will be again unless the Act is enjoined. *See Force v. Facebook, Inc.*, 934 F.3d 53, 74 (2d Cir. 2019).

application of section 230 to the Plaintiffs which do not and would not have anything to do with the Act, which holds all platform providers accountable as though they are all publishers of the content at issue.

## IV. THE STATE FAILS TO REBUT PLAINTIFFS' SHOWING OF IRREPARABLE, ONE-SIDED HARM

The State ignores (Opp. at p. 21) the First Amendment injuries presented here. It also baldly claims (Opp. at p. 21) that violations of section 230 do not give rise to irreparable harm, ignoring the authority Plaintiffs cited. Mot. at p. 19. The State speculates (Opp. at p. 22) about affirmative defenses in hypothetical future actions and mentions how some Plaintiffs have responded to other laws in different jurisdictions. None of that rebuts Plaintiffs' showing of multiple lines of irreparable harm, starting with what follows inexorably from the violation of Plaintiffs' First Amendment rights.

Finally, Plaintiffs agree that the "public interest" and "balance of harms" factors merge when the government is the defendant. But those factors favor Plaintiffs' here. The Act discriminates by content and viewpoint, restricting speech that is protected and compelling speech that is anathema. Under *Ashcroft* and other seminal precedents, such an invasion of the First Amendment classically warrants a preliminary injunction. *See Fund Texas Choice v. Paxton*, 2023 WL 2558143, at *27 (W.D. Tex. Feb. 24, 2023) (enjoinment of an unconstitutional law is always in the public interest). The State has no cognizable interest in singling out disfavored viewpoints and speakers for condemnation, even as the same content continues to flow freely to minors through other channels (like search engines and social media). Plaintiffs satisfy the requirements for a preliminary injunction, and this Court should preserve the status quo pending further proceedings and ultimate adjudication of the merits.

## CONCLUSION

Plaintiffs respectfully request that this Court preliminarily enjoin enforcement of the Act.

DATED:  August 21, 2023              QUINN EMANUEL URQUHART &
                                     SULLIVAN, LLP

                                     By        /s/     Scott L. Cole


                                     Scott L. Cole (Bar No. 00790481)
                                     scottcole@quinnemanuel.com
                                     QUINN EMANUEL URQUHART &
                                     SULLIVAN, LLP
                                     300 West 6th Street
                                     Suite 2010
                                     Austin, TX 78701
                                     Telephone: (737) 667 6100
                                     Fax: (737) 667 6110

                                     Michael T. Zeller (*pro hac vice*)
                                     Derek L. Shaffer (*pro hac vice*)
                                     Thomas Nolan (*pro hac vice*)
                                     Arian Koochesfahani (*pro hac vice*)
                                     michaelzeller@quinnemanuel.com
                                     derekshaffer@quinnemanuel.com
                                     thomasnolan@quinnemanuel.com
                                     ariankoochesfahani@quinnemanuel.com
                                     QUINN EMANUEL URQUHART &
                                     SULLIVAN, LLP
                                     865 South Figueroa Street, 10th Floor
                                     Los Angeles, CA 90017-2543
                                     Telephone: (213) 443 3000
                                     Fax: (213) 443 3100

                                     Jeffrey Keith Sandman (*pro hac vice*)
                                     jeff.sandman@webbdaniel.law
                                     WEBB DANIEL FRIEDLANDER LLP
                                     5208 Magazine St Ste 364
                                     New Orleans, LA 70115
                                     Phone: (978) 886 0639