UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| FREE SPEECH COALITION, INC, *et. al.*,  Plaintiffs, § § § § | |
| v. § | Civil Action No. 1:23-cv-00917-DAE |
| § | |
| ANGELA COLMENERO, in her official capacity as Interim Attorney General for the State of Texas, Defendant. § § § § § | |

## DEFENDANT'S OPPOSED MOTION FOR STAY PENDING APPEAL AND REQUEST FOR EXPEDITED CONSIDERATION

Pursuant to Federal Rule of Appellate Procedure 8(a)(1)(A), and for the reasons outlined below, Defendant, Angela Colmenero, in her official capacity as Provisional Attorney General for the State of Texas, moves this Court to stay all granted injunctive relief in this case pending AG Colmenero's appeal to the United States Court of Appeals for the Fifth Circuit.

## I.
## INTRODUCTION

On August 31, 2023, this Court entered a preliminary injunction order construing H.B. 1181 and enjoined AG Colmenero from enforcing H.B. 1181. The Court's opinion addresses legal issues that are a matter of first impression within the Fifth Circuit, and in some instances, the nation. H.B. 1181 imposes a duty on pornography websites to employ age verification technology to ensure minors do not access the explicit—and often obscene—content on websites such as Plaintiffs' pornhub.com and xnxx.com. The District Court granted Plaintiffs' motion as to their First Amendment claims and granted the motion in part as to their Section 230 claims.

AG Colmenero has raised substantial arguments on the merits of numerous serious legal questions implicated by this Court's Preliminary Injunction, and a stay pending appeal is warranted to permit the Fifth Circuit to assess the merits of this Court's rulings. A stay is also supported by the widely recognized principle that enjoining a state law inflicts irreparable harm on the State, and that the public's interest is aligned with the State's interest and harm. Plaintiffs, in contrast, will not be irreparably harmed if a stay is granted, given that most Plaintiffs currently employ age verification technology in other jurisdictions and countries. With a flip of a switch, Plaintiffs could implement this technology today to prevent minors from viewing pornography. For all these reasons, and as further set forth below, a temporary stay while the Fifth Circuit considers the merits of this Court's Preliminary Injunction is warranted.

## II.
## LEGAL STANDARD

A party must ordinarily file a motion for stay in the district court seeking a stay of a judgment or order pending appeal or seeking an order suspending an injunction while an appeal is pending before seeking relief from the Fifth Circuit. Fed. R. App. P. 8(a)(1). "The Supreme Court has repeatedly stated that a four-factor test governs a court's consideration of a motion for stay pending appeal: '(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.'" *E.T. v. Paxton*, 19 F.4th 760, 764 (5th Cir. 2021) (quoting *Nken v. Holder*, 556 U.S. 418, 426 (2009)). The Fifth Circuit "has refused to apply these factors in a rigid, mechanical fashion," and has "held that the movant 'need only present a substantial case on the merits when a serious legal question is involved and show that the balance of equities weighs heavily in favor of granting the stay,'" as opposed to demonstrating a likelihood of success on the

merits. *United States v. Baylor Univ. Med. Ctr.*, 711 F.2d 38, 39 (5th Cir. 1983) (per curiam) (quoting *Ruiz v. Estelle*, 650 F.2d 555, 565 (5th Cir.1981)). A stay is especially warranted when existing case law does not provide clarity or guidance in resolving the serious legal questions involved. *Texas v. Ysleta Del Sur Pueblo*, 2019 WL 5589051 (W.D. Tex. Mar. 28, 2019) (district court granting stay given serious legal question raised and lack of clarity or guidance from existing caselaw). A stay pending appeal "simply suspend[s] judicial alteration of the status quo," so as to allow appellate courts to bring "considered judgment" to the matter before them and "responsibly fulfill their role in the judicial process." *Nken*, 556 U.S. at 429.

Similarly, Federal Rule of Civil Procedure 62(d) provides that "[w]hile an appeal is pending from an interlocutory order or final judgment that grants, continues, modifies, refuses, dissolves, or refuses to dissolve or modify an injunction, the court may suspend, modify, restore, or grant an injunction." FED. R. CIV. P. 62(d). The same four factors delineated above are considered when determining whether to suspend an injunction while an appeal is pending from the final judgment granting the injunction. *Planned Parenthood of Greater Tex. Surgical Health Servs. v. Abbott*, 734 F.3d 406, 410 (5th Cir. 2013).

### III.
### THE COURT'S INJUNCTION ORDER

This Court granted Plaintiffs' motion as to their First Amendment claims and granted the motion in part as to Plaintiffs' Section 230 claims, and AG Colmenero is preliminarily enjoined from enforcing H.B. 1181. ECF No. 36 at 80-81. In so ruling, the Court held that Plaintiffs individually have standing to sue to enjoin H.B. 1181—including the wholly foreign entities. The Court further held that H.B. 1181 is not narrowly tailored, that the statute chills Plaintiffs' speech, and that content filtering is a narrower alternative than age verification. Finally, the Court held that

Plaintiffs MG Freesites LTD, WebGroup Czech Republic, NKL Associates, s.r.o., and MediaMe SRL are entitled to an injunction under Section 230.

## IV.
## ARGUMENT AND AUTHORITIES

**A.      Standing.**

As in every case, standing is crucial. Here, respectfully, the Court's finding that Plaintiffs have standing is highly questionable. Plaintiffs do not satisfy any of the elements necessary to have standing to assert their claims: an injury in fact fairly traceable to the actions of the Attorney General and redressable by an Order enjoining her conduct. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). The Attorney General has raised substantial, meritorious arguments that Plaintiffs did not meet their burden of proving standing, warranting a stay of the Preliminary Injunction pending appeal.

The Plaintiffs lack standing to bring their claims before the Court. Plaintiffs are: (1) foreign-based companies that purvey free and open access to pornography ("Foreign Websites"); (2) U.S.-based companies that require a subscription to view pornography ("Subscription Websites"); (3) an individual plaintiff who creates pornographic content ("Doe"); and (4) FSC, presuming the ability to sue on behalf of its members and visitors to its members' websites. ECF No. 1 ¶¶ 11-23.

First, the U.S. Supreme Court has made clear that foreign entities do not possess First Amendment rights, stating that "it is long settled as a matter of American constitutional law that foreign citizens outside U.S. territory do not possess rights under the U.S. Constitution." *Agency for Int'l Dev. v. All. for Open Soc'y Int'l, Inc.*, 140 S. Ct. 2082, 2086 (2020) (citing *Boumediene v. Bush*, 553 U.S. 723, 770-71 (2008)). "[F]oreign organizations operating abroad . . . possess no

rights under the First Amendment." *Id.* Eight of the Plaintiffs in this case are foreign entities operating outside of the United States. ECF No. 27 at 12-13.

Plaintiffs cite *Thunder Studios, Inc. v. Kazal*, for the proposition that foreign corporations, operating entirely outside the United States, enjoy First Amendment protections and rights simply by publishing content on the internet. 13 F.4th 736, 743 (9th Cir. 2021). First, Plaintiffs' reliance on *Thunder Studios* is misplaced. The speech at issue in *Thunder Studios* was in the context of a defamation case where the defendants purposely directed their speech to California citizens in an effort to inspire California citizens to engage in a harassment campaign against the plaintiffs in California. *Id.* at 741-44 (First Amendment protection applied to defendants' speech and speech-related conduct including hiring protestors, organizing leafleting, hiring vans with signage emblazoned with their message to drive around Los Angeles and publishing emails directed at and received by California residents). Here, Plaintiffs did not single out and solely target Texas, or even American citizens. Plaintiffs' content is published on the internet for the entire world to see. In fact, Plaintiffs have filed, and won, motions to dismiss cases filed in United States federal courts against them by arguing that they do not publish content in America. *See Doe v. WebGroup Czech Republic*, No. 221CV02428VAPSKX, 2022 WL 982248 (C.D. Cal. Jan. 13, 2022) (dismissing civil case for violations of sex trafficking and child pornography laws against WebGroup and NKL for lack of personal jurisdiction). As such, the Foreign Websites lack First Amendment rights under the Constitution, which precludes expedited preliminary injunctive relief based on their constitutional claims as a matter of law.

The Court cites numerous lower-court opinions for the proposition that foreign organizations have the benefit of First Amendment protections when their speech is made available to a U.S. audience. See ECF No. 36. However, the cases cited by the Court concern First

Amendment freedom of press protections afforded to foreign journalists covering stories in America. *See Times Newspapers Ltd. v. McDonnell Douglas Corp.*, 387 F. Supp. 189, 192 (C.D. Cal. 1974); *Goldfarb v. Channel One Russia*, 18 CIV. 8128 (JPC), 2023 WL 2586142 (S.D.N.Y. Mar. 21, 2023); *Nygård, Inc. v. Uusi-Kerttula*, 159 Cal. App. 4th 1027, 1042 (2008); *United States v. James*, 663 F. Supp. 2d 1018, 1020 (W.D. Wash. 2009). None of the cited cases involve foreign plaintiffs – much less pornographic websites – suing the State to assert their constitutional rights. And none of these decisions are controlling in the Fifth Circuit.

Further, Plaintiff "Jane Doe" lacks standing because they cannot prove that they or their business will be irreparably harmed—or affected at all—by the enactment of H.B. 1181. Plaintiff Doe makes pornographic videos, which they publish on various pornographic websites, including their fellow Plaintiffs' websites. ECF No. 5-6. Doe "opposes the restrictions the Act would place on their ability to reach their audience, as well as the government-mandated speech that the Act would force adult websites to place on their websites." ECF No. 1 ¶ 21. Doe's "business consists of producing legal content—featuring only consenting adults—*for an adult audience*," ECF No. 5-6. Doe operates no website, and thus neither incurs additional cost nor bears any burden to verify the age of their content viewers. HB 1181 requires no change in Doe's behavior. Thus, Doe's injuries are not actual or imminent, and Doe lacks standing to bring a constitutional claim.

Meanwhile, no Plaintiff has or can validly bring a claim on behalf of consumers. The Supreme Court has recognized that an association may have standing to assert the claims of *its members* even where the association itself has suffered no injury from the challenged activity. *Hunt v. Wash. Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977). "[A]n association has standing to bring suit on behalf of its members when: (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose;

6

and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Id.*; *see also*, *Ass'n of Am. Physicians & Surgeons v. Tex. Med. Bd.*, 627 F.3d 547, 550 (5th Cir. 2010) (noting that the first two components of associational standing are constitutional requirements, while the third is solely prudential).

FSC—and only FSC—purports to bring this suit on behalf of consumers of pornography. ECF No. 1 ¶ 11. But its membership comprises only producers of pornography. ECF No. 1 ¶ 12-23. FSC cannot claim associational standing based on the interest of parties outside their membership. Perhaps FSC means to assert putative rights of third parties. But they have not done so and, in any event, none of the exceptions that allow such claims is present here. *See Warth v. Seldin*, 422 U.S. 490, 514 (1975).

**B.       Likelihood of Success on the Merits.**

Only the Subscription Sites and FSC (assuming the latter could otherwise establish standing) can potentially assert a First Amendment claim. But, even so, they are likely to lose on the merits of their First Amendment challenge because HB 1181 is constitutional.

H.B. 1181 survives every level of scrutiny. A State may "regulate the content of constitutionally protected speech in order to promote a compelling interest if it chooses the least restrictive means to further the articulated interest." *Sable Commc'ns of Cal., Inc. v. F.C.C.*, 492 U.S. 115, 126 (1989). "[I]t is the rare case in which a State demonstrates that a speech restriction is narrowly tailored to serve a compelling interest." *Williams-Yulee v. Fla. Bar*, 575 U.S. 433, 444 (2015) (quotation omitted). "But those cases do arise." *Id.*

Here, Plaintiffs do not dispute that Texas has a compelling interest in protecting children from pornography. ECF No. 5 ¶ 49; ECF No. 36 at 25 ("Plaintiffs concede for the purposes of this motion that Defendant's stated interest here is compelling."). The harm caused to children by

exposure to porn is grave and well-established, and fully set forth in AG Colmenero's Response to Plaintiffs' Motion for Preliminary Injunction.

All parties and this Court agree that protecting the health, safety, and wellness of the next generation is a vital goal of an effective government, and achieving that goal hinges, in no small part, on protecting minors from the violent, hard-core pornography, which is instantaneously available to minors on Plaintiffs' websites. ECF No. 36 at 66. Indeed, the Supreme Court has recognized "a compelling interest in protecting the physical and psychological well-being of minors." *Sable*, 492 U.S. at 126; *see Ashcroft v. ACLU*, 542 U.S. 656, 675 (2004) (Stevens, J., concurring).

### 1. HB 1181 is narrowly tailored.

"The First Amendment requires that [a State's law] be narrowly tailored, not that it be perfectly tailored." *Williams-Yulee*, 575 U.S. at 454 (internal quotation marks omitted). Here, the Texas Legislature—faced with a serious and universally-acknowledged harm facing a large number of Texas children—passed legislation that reasonably and effectively limits children's access to porn without limiting adults' access to porn. If HB 1181's age-verification requirement is not perfectly tailored, it is certainly narrowly tailored.

Today's age-verification technology is designed specifically for convenience and privacy. ECF No. 27-4 ¶¶ 28-30. It is not burdensome for commercial websites to verify the age of their users—costing between zero and twelve cents per user with reuse of verification readily available across multiple internet platforms. *Id.* at ¶¶ 57-59. There are numerous ways to verify a person's age. ECF No. 27-4 ¶ 83. Consumers can choose the method of age verification that suits their needs and comfort thanks to a competitive market for age-verification services offered by reputable companies who follow data privacy laws. ECF No. 27-4 ¶¶ 80-83. Age verification works well for

various online commercial activities, such as gambling and the sale of alcohol, cigarettes, and guns. ECF No. 27-4 ¶¶ 11, 46. Importantly, *Plaintiffs and other porn sites already use age verification outside of Texas*. *Id*. ¶¶ 11, 70, 88.

Although, as the Court points out in its opinion, a law's underinclusivity may raise a "red flag," the First Amendment imposes no freestanding "under inclusiveness limitation." *R.A.V. v. St. Paul*, 505 U.S. 377, 387 (1992). A State need not address all aspects of a problem in one fell swoop; policymakers may focus on their most pressing concerns. The Supreme Court has upheld laws—even under strict scrutiny—that conceivably could have restricted even greater amounts of speech in service of their stated interests. *Burson v. Freeman*, 504 U.S. 191, 207 (1992); *Metromedia, Inc. v. San Diego*, 453 U.S. 490, 511-12(1981) (plurality opinion).

Meanwhile, blocking and filtering software is not as effective as the *Ashcroft* Court assumed, or hoped, it would be in 2004, and it is easily disabled or avoided by modern children who are "digital natives." *Id*. ¶¶ 73-76. Moreover, the ability of some parents to monitor and regulate their children's devices provides at best a partial solution that in no way obviates the need for age verification when a child reaches a porn site. *Id*. ¶¶ 76-77. Contrary to the Court's reasoned opinion, the State cannot force parents, legislatively, to install content filtering software on their children's devices. "[C]onstitutional interpretation has consistently recognized that the parents' claim to authority in their own household to direct the rearing of their children is basic in the structure of our society. 'It is cardinal with us that the custody, care and nurture of the child reside first in the parents, whose primary function and freedom include preparation for obligations the state can neither supply nor hinder.'" *Ginsberg v. State of N. Y.*, 390 U.S. 629, 639 (1968) (citing *Prince v. Massachusetts*, 321 U.S. 158, 166 (1944)). As such, Texas narrowly tailored its age-verification requirement.

### C.     Irreparable Harm.

Plaintiffs have not "clearly carried the burden of persuasion" to show imminent irreparable harm as "is required for injunctive relief." *Bluefield Water Ass'n v. City of Starkville*, 577 F.3d 250, 253 (5th Cir. 2009); *Montient Corp. v. Dondero*, 529 F.3d 532, 538 (5th Cir. 2008); 11A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 2948.1 (3d ed. 2013) ("Perhaps the single most important prerequisite for the issuance of a preliminary injunction is a demonstration that if it is not granted the applicant is likely to suffer irreparable harm before a decision on the merits can be rendered."). To show irreparable harm here, Plaintiffs must demonstrate "a significant threat of injury from the impending action, that the injury is imminent, and that money damages would not fully repair the harm." *Humana, Inc. v. Jackson*, 804 F.2d 1390, 1394 (5th Cir. 1986). Plaintiffs cannot make that showing.

A First Amendment injury, like any other, must be imminent and non-speculative. *See Google, Inc. v. Hood*, 822 F.3d 212, 227-28 (5th Cir. 2016) ("[I]nvocation of the First Amendment cannot substitute for the presence of an imminent, non-speculative irreparable injury."); *Ark. Project v. Shaw*, 775 F.3d 641, 663-64 (5th Cir. 2014) ("Federal courts are not obligated to grant an injunction for every violation of law," and the "court's power to order injunctive relief depends" on "whether plaintiffs have established . . . a reasonably certain threat of imminent harm." (citation omitted)). Plaintiffs cannot satisfy these standards.

#### 1. Plaintiffs failed to assert a viable claim under the Communications Decency Act.

As discussed *supra*, most of the Plaintiffs are foreign entities and have no constitutional rights under the First Amendment. Further, the CDA does not apply to foreign websites. Although Congress may pass laws intended to protect the interest of persons in foreign countries, Plaintiffs have not shown the CDA to be such a law. *See Agency for Int'l Dev.*, 140 S. Ct. at 2087. The

general liability created by HB 1181 is not premised on the substance of user-generated content. Unlike the negligence claim brought by the plaintiff in *Doe v. Myspace*, a lawsuit brought pursuant to HB 1181 does not arise from individualized harm. *See* 528 F.3d 413, 416-17 (5th Cir. 2008). Liability results solely from a website's failure to comply with the age-verification requirements.[1] That is, liability is imposed without regard to whether a child visits the website at all. The alleged loss of supposed CDA immunity does not constitute irreparable harm. Indeed, even if the CDA protected certain Plaintiffs from suit, this Court's refusal to enjoin HB 1181 prevents no Plaintiff from asserting CDA immunity in any HB 1181 enforcement action. In other words, they suffer no loss at all in that regard.

Furthermore, no claim based on Section 230 is ripe. That is because Plaintiffs have offered no evidence that the Attorney General intends to enforce HB 1181 against websites that *solely* host third-party content. If, in a given case, Section 230's bar is as obvious as Plaintiffs contend, there is no reason to suppose that the Attorney General would bring a futile enforcement action doomed to be dismissed on Section 230 grounds. And, even if she did, this Court should presume that the state court would faithfully apply federal law, including Section 230. *See Iberia Credit Bureau, Inc. v. Cingular Wireless LLC*, 379 F.3d 159, 167 (5th Cir. 2004). Here, however, Plaintiffs have not demonstrated that they *solely* host third-party content.

Moreover, the Foreign Websites—the only Plaintiffs alleging CDA protection—will assert in any forthcoming lawsuit that U.S. courts lack personal jurisdiction over them. *See Doe*, 2022 WL 982248 at *7. Finally, whether or not Plaintiffs in this suit act as an interactive computer service, a content provider, or both is a fact-specific inquiry not properly decided at the pre-

---

[1] Tex. H.B. 1181, (assessing a penalty of "$10,000 per day that the entity operates an Internet Website in violation of the age verification requirements of this chapter").

enforcement stage. *See Fair Hous. Council of San Fernando Valley v. Roommates.Com, LLC*, 521 F.3d 1157, 1172 (9th Cir. 2008) (holding that CDA immunity did not apply to a website that generated a required questionnaire); *see also*, *NetChoice, L.L.C. v. Paxton*, 49 F.4th 439, 480 (5th Cir. 2022) (holding CDA inquiry is fact-specific).

### 2. None of the Plaintiffs have presented any evidence of irreparable injury.

HB 1181 does not implicate Doe's constitutional rights, so she likewise cannot show harm. And even assuming, for the sake of argument, that HB 1181 may result in a cascade effect of less viewer-generated income for Doe, such monetary losses are not the type of irreparable harm contemplated for the extraordinary relief sought. While Doe may disagree with HB 1181, "[t]hat is a generalized psychological injury, not a particularized free-speech one." *McMahon v. Fenves*, 946 F.3d 266, 271 (5th Cir. 2020). Doe's "passion, however sincere, does not place them among the injured." *Id.* at 272.

Plaintiffs claim a "loss of goodwill" from customers who are required to verify their age through reliable, secure methods. This alleged future injury is conclusory and speculative, and Plaintiffs have not presented any evidence that Texas adults will be deterred from visiting the Plaintiffs' websites and/or viewing their content. Age verification enjoys overwhelming bi-partisan and public support.[2] Age verification likely creates, rather than reduces, goodwill. Additionally, Plaintiffs conflate loss of goodwill with loss of viewers—but child viewership is not goodwill. HB 1181 only reduces child viewership, and Plaintiffs fail to show otherwise.

Moreover, the Subscription Websites already collect information to establish paid subscription accounts, confounding their argument that collection of any identifying information

---

[2] https://www.politico.com/news/magazine/2023/08/08/age-law-online-porn-00110148 (last visited 8/17/23).

reduces adult viewership or goodwill. Even so, any alleged lost goodwill is compensable, thus this is not the type of harm required for the granting of the extraordinary relief of a preliminary injunction.

Finally, Plaintiffs provide insufficient evidence to show that any alleged monetary losses are significant—especially because Plaintiffs provide porn on a global scale. Importantly, many of the Plaintiff websites have already deployed age-verification software on their websites in France and Germany. ECF No. 27-4 ¶ 11. Plaintiffs have the data from the launch of age-verification software in these foreign jurisdictions. Tellingly, they presented none of that data to the Court in their filings or at the preliminary injunction hearing—likely because, aside from the anticipated decline in child viewership, their adult audience remained loyal despite the age-verification requirement. As AG Colmenero's expert testified, Plaintiffs could deploy this software with "the flip of a switch." ECF No. 27-4 ¶ 15, 29. They choose not to at the expense of Texas children.

In sum, the Foreign Websites have no constitutional claim as a matter of law. Jane Doe has no standing or constitutional harm. Even assuming—against all reason—that the Subscription Websites could clearly show likelihood of success on the merits, they are not irreparably harmed (neither are the Foreign Websites or Jane Doe). Meanwhile, FSC presents no evidence—or even a theory—of its own claims or irreparable harm. Nor has it identified an alleged association member theoretically entitled to preliminary injunction.

**3. HB 1181's required notices are truthful, nonmisleading, and relevant.**

In *Planned Parenthood Minnesota, et al. v. Rounds*, the Eight Circuit, sitting *en banc*, assessed the constitutionality of a statute that required doctors to provide a written disclosure to women seeking abortions. *Planned Parenthood Minn., et al. v. Rounds*, 686 F.3d 889 (8th Cir. 2012) (en banc). *Rounds*, cited heavily by the Fifth Circuit in *Lakey*, provides at least three relevant

takeaways. First, an expedited preliminary injunction hearing is not the best mechanism for determining whether a required notice is truthful, nonmisleading, and relevant. Second, even after the Court receives all available evidence, it must still defer to the legislature's view of any conflicting science and literature. Third, "to render the [required notices] unconstitutionally misleading or irrelevant, [Plaintiffs] must show that [pornography] has been ruled out, to a degree of scientifically accepted certainty, as a statistically significant causal factor in [the identified harms]." 686 F.3d at 900. That is, Plaintiffs must show the notices are verifiably untruthful. *Id.* at 893.

In *Rounds*, the Eighth Circuit acknowledged that studies provided and relied upon by both parties "have strengths as well as weaknesses" and "must make use of imperfect data that typically was collected for entirely different purposes." *Id.* at 904. Nevertheless, the court held, "We express no opinion as to whether some of the studies are more reliable than others; instead, we hold only that the state legislature, rather than a federal court, is in the best position to weigh the divergent results and come to a conclusion about the best way to protect its populace." *Id.*

The required notice provisions of HB 1181 place no restrictions on Plaintiffs' ability to produce porn or provide it to an adult audience. In other words, the required notices do not pose a substantial burden on the Plaintiffs' asserted constitutional right. So, the notices are permissible if they include "truthful, nonmisleading, and relevant disclosures" in furtherance of the State's legitimate interest. *Tex. Med. Providers Performing Abortion Servs. v. Lakey*, 667 F.3d 570, 577 (5th Cir. 2012). That is exactly what they do.

Scientific studies make clear that "internet pornography addiction fits into the addiction framework and shares similar basic mechanisms with substance addiction."[3] Multiple studies have shown that pornography reduces brain function or academic performance.[4] Rigorous scientific research has established that viewing pornography is associated with negative body image,[5] depression and anxiety.[6] Further, viewing pornography increases the likelihood a viewer will engage in deviant sexual behavior, especially if that viewer is a young child or adolescent.[7] As such, the required notices contained in HB 1181 are truthful, nonmisleading and relevant, and therefore constitutional.

### D. State Defendants will be Irreparably Injured Absent a Stay.

When the State seeks a stay pending appeal, "its interest and harm merge with that of the public." *Veasey v. Abbott*, 870 F.3d 387, 391 (5th Cir. 2017) (per curiam) (citation omitted). *See also*, *e.g.*, *Planned Parenthood of Greater Tex. Surgical Health Servs. v. Abbott*, 734 F.3d 406, 419 (5th Cir. 2013) (recognizing that, when a duly enacted law cannot be enforced, "the State necessarily suffers the irreparable harm of denying the public interest in the enforcement of its

---

[3] ECF No. 27-5 ¶ 8; Love, et al., *Neuroscience of Internet Pornography Addiction: A review and Update*, 5 Behavioral Sci. 388, at 389 (2015) https://www.mdpi.com/2076-328X/5/3/388; *see also* Hilton, D. L. & Watts, C., *Pornography addiction: A neuroscience perspective*, 2 Surgical Neurology Int'l 19 (2011) https://doi.org/10.4103/2152-7806.76977.
[4] ECF No. 27-5 ¶ 10; ECF No. 27-6.
[5] ECF No. 27-5 ¶ 9. Paslakis, G., Chiclana Actis, C., & Mestre-Bach, G., *Associations between pornography exposure, body image, and sexual body image: A systematic review*, Journal of Health Psychology, 27(3) (2020); Tylka, T. L., *No Harm in Looking, Right? Men's Pornography Consumption, Body Image, and Well-Being*, 16 Psychology of Men & Masculinity 97–107 (2015) https://doi.org/10.1037/a0035774; Maas, M. K., & Dewey, S., *Internet Pornography Use Among Collegiate Women: Gender Attitudes, Body Monitoring, and Sexual Behavior*, 8 SAGE, at 10 (2018) https://doi.org/10.1177/2158244018786640.
[6] ECF No 27-1 at 6, 8.
[7] Seigfried-Spellar, K. C., & Rogers, M. K., *Does Deviant Pornography Use Follow a Guttman-Like Progression?*" 29 Comp.'s in Human Behavior 5 (2013) https://www.sciencedirect.com/science/article/abs/pii/S074756321300a1210?via%3Dihub.

laws"). The "inability [for a State] to enforce its duly enacted [laws] clearly inflicts irreparable harm on the State." *Abbott v. Perez*, 138 S. Ct. 2305, 2324 n.17 (2018). *See also, e.g.*, *Moore v. Tangipahoa Parish Sch. Bd.*, 507 F. App'x 389, 399 (5th Cir. 2013) (per curiam) (A State suffers irreparable harm when an injunction "would frustrate the State's program" and "deprive . . . the State of the opportunity to implement its own legislature's decisions.).

These factors exist here. The injunction inhibits the State from protecting its children and deprives Texas of the opportunity to implement its Legislature's decisions. Enjoining state officials from carrying out validly enacted laws—especially those with overwhelming bipartisan support—imposes irreparable harm. *Maryland v. King*, 133 S. Ct. 1, 3 (2012) (Roberts, C.J., in chambers); *New Motor Vehicle Bd. v. Orrin W. Fox Co.*, 434 U.S. 1345, 1351 (1977) (Rehnquist, J., in chambers) ("[A]ny time a State is enjoined by a Court from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury.").

"[T]he State . . . has a significant interest in enforcing its enacted laws." *True the Vote v. Hosemann*, 43 F. Supp. 3d 693, 742 (S.D. Miss. 2014); *Crawford v. Marion Cty. Elec. Bd.*, 553 U.S. 181, 197 (2008). *See also, e.g.*, *Rufo v. Inmates of Suffolk Cty. Jail*, 502 U.S. 367, 381 (1992) (noting that the "sound and efficient operation" of government programs is in the public interest); *Hamer v. Brown*, 831 F.2d 1398, 1402 (8th Cir. 1987) (recognizing that the proper implementation of state programs is a matter of public interest).

"In exercising their sound discretion, courts of equity should pay particular regard for the public consequences in employing the extraordinary remedy of injunction." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). Exercising caution is especially important where the defendant is itself a state actor because of the federalism concerns attendant to a federal court

16

intervening to grant preliminary injunctive relief against a state agency. *NetChoice*, 49 F.4th at 449.

The public interest is monumental. There is no more compelling interest than safeguarding the emotional, mental, and physical health of our kids. Their exposure to mainstream, violent, hardcore pornography must stop. Compare the *de minimus* cost of complying with HB 1181—a few cents per verification, *maybe*—to the immense, immediate, and irreparable harm to kids from porn. The balance of interest weighs heavily in favor of allowing the implementation of HB 1181 to proceed as soon as possible.

## V.
## CONCLUSION AND PRAYER

AG Colmenero requests that the stay its injunction issued on August 31, 2023. Such an injunction will do irreparable harm to the State of Texas and its children, and its stay would minimally impact the Plaintiffs in this case. This, coupled with AG Colmenero's showing of success on the merits, and a compelling public interest, clearly demonstrate that a stay is warranted and must be issued while this case is on appeal.

Respectfully submitted,

ANGELA COLMENERO
Provisional Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

JAMES LLOYD
Interim Deputy Attorney General for Civil Litigation

KIMBERLY GDULA
Deputy Chief, General Litigation Division

RYAN G. KERCHER
Deputy Chief, General Litigation Division

/s/ Kelsey L. Warren
KELSEY L. WARREN
Assistant Attorney General
Texas Bar No. 24095736
kelsey.warren@oag.texas.gov

JOHN RAMSEY
Assistant Attorney General
Texas Bar No. 24051227
john.ramsey@oag.texas.gov

General Litigation Division
Office of the Attorney General
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
(512) 463-2120 Phone
(512) 320-0667 Facsimile

**COUNSEL FOR DEFENDANT**

**CERTIFICATE OF CONFERENCE**

I hereby certify that on September 1, 2023, I, Kelsey L. Warren, in accordance with L.R. CV-7(i), conferred with counsel of record for Plaintiffs who indicated they are opposed to the foregoing motion.

/s/ Kelsey L. Warren
KELSEY L. WARREN
Texas Bar No. 24095736

**CERTIFICATE OF SERVICE**

I hereby certify that on September 1, 2023, a true and correct copy of the foregoing document was served via the Court's CM/ECF system to all counsel of record.

<i>/s/ Kelsey L. Warren</i><br>
KELSEY L. WARREN<br>
Assistant Attorney General