UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| FREE SPEECH COALITION, INC., et al., <br><br> Plaintiffs, <br><br> v. <br><br> ANGELA COLMENERO, In Her Official Capacity As Interim Attorney General For The State Of Texas, <br><br> Defendant. | CASE NO. 1:23-cv-00917-DAE |

# PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION FOR STAY PENDING APPEAL

**ARGUMENT**

Plaintiffs respectfully request that this Court deny the State's stay motion (Dkt. # 40). A stay of any duration would upend the status quo, subject Plaintiffs to irreparable harm (particularly through unrecoverable losses of First Amendment rights), and depart from settled law as handed down by the U.S. Supreme Court. In granting preliminary relief (Dkt. # 36 ("Order")), this Court provided an 81-page analysis of why Plaintiffs are likely to succeed on multiple grounds, and why Plaintiffs are entitled to preliminary relief against H.B. 1181 ("Act") to protect against multiple forms of irreparable harm. That same analysis warrants denying Defendant's requested stay, which flies in the face of the merits, the equities, and the otherwise looming irreparable harm—currently obviated only by this Court's preliminary injunction—to longstanding modes of expression over the internet, one of our most important media of communication. Even so, the grounds for the State's stay request are, by their own terms, exceptionally weak.

Although the State leads its Motion with the factual assertions that "most Plaintiffs currently employ age verification technology in other jurisdictions" and could "[w]ith a flip of a switch . . . prevent minors from viewing pornography" (Mot. at 2), those assertions spring from thin air; they are not only unsupported, but contradicted by the factual record. The State's operative premise also appears to be that it should *always* have carte blanche to enforce *any* popularly-enacted law on an interim basis, simply because the law was popularly enacted. The First and Fourteenth Amendments to the U.S. Constitution refute that premise, as do the numerous precedents enforcing preliminary injunctions, including the Supreme Court's on-point affirmances in *Reno v. ACLU* and *Ashcroft v. ACLU*, both of which involved *unstayed* preliminary injunctions. This Court should continue to preserve the status quo and deny the requested stay while the State appeals, and this litigation proceeds in parallel towards a prompt entry of final judgment on the merits, whether by way of summary judgment or trial.[1]

---

[1] To the extent the State maintains that the facts, once fully developed, should alter this Court's assessment of the merits, Plaintiffs stand ready and eager to proceed with discovery and to set up final judgment according to any expedited case schedule the State may desire.

1

### I.     A STAY WOULD UPEND THE STATUS QUO

Contrary to the State's suggestion, entry of a stay would *upend* the status quo, which this Court has properly *maintained* by enjoining unprecedented enforcement of the novel Act before it takes effect. In appropriate cases, stays serve to preserve the status quo. *See Ruiz v. Estelle*, 650 F.2d 555, 565 (5th Cir. 1981) (A stay "seeks to maintain the status quo pending a final determination on the merits of the suit."). But, here, because this Court's "injunction merely maintains the status quo," a stay would upend the status quo, not preserve it. *Texas v. United States*, 787 F.3d 733, 768 (5th Cir. 2015); *see also, e.g.*, *Nat'l Urb. League v. Ross*, 977 F.3d 698, 703 (9th Cir. 2020) ("Because the status quo would be upended, rather than preserved, if an administrative stay is issued, the government's request for an immediate administrative stay set forth in Docket Entry No. 4 is denied.").

For the avoidance of any doubt, the Supreme Court has endorsed unstayed preliminary injunctions in closely analogous circumstances. The State makes no attempt to reconcile its position here with the Supreme Court's decisions in *Reno v. American Civil Liberties Union*, 521 U.S. 844 (1997) and *Ashcroft v. American Civil Liberties Union*, 542 U.S. 656 (2004). Not only did the Court uphold the grant of a preliminary injunction in both cases, but the Court specifically noted in *Ashcroft* the "important practical reasons to let the injunction stand pending a full trial on the merits." *Id.* at 670. As the Court explained, "[t]here is a potential for extraordinary harm and a serious chill upon protected speech. The harm done from letting the injunction stand pending a trial on the merits, in contrast, will not be extensive. No prosecutions have yet been undertaken under the law, so none will be disrupted if the injunction stands." *Id.* at 671 (cleaned up). As this Court recognized (Order at 20-22, 78), the same holds here. The State lacks any sound basis to alter the status quo, as it would by enforcing the Act against Plaintiffs. *See* Mot. at 16. If anything, the State's Motion only confirms that the Court's preliminary injunction must remain in force to protect the constitutional rights and interests the Court has found to be at stake.

## II. A STAY WOULD IMMEDIATELY EXPOSE PLAINTIFFS TO IRREPARABLE HARM

Given the Act's effective date of September 1, 2023, a stay of any duration would immediately cause Plaintiffs irreparable harm, for all the reasons discussed by this Court. *See* Order at 74-77.  The State claims irreparable harm because it cannot enforce the Act, but an unconstitutional law such as this should never be enforced.  *Id.* at 78.  Notably, the State lacks any evidence that enforcing the Act will advance its claimed interests, let alone that interim enforcement is especially imperative.  The interests deserving of weight are all on the other side of the scale: Plaintiffs face irreparable harm in multiple forms, from loss of First Amendment freedoms, to loss of goodwill, to unrecoverable compliance and litigation costs, all as found by this Court.  *Id.* at 75, 77.  Without meaningfully responding, the State ignores this Court's explanation for why the costs of compliance and litigation constitute irreparable harm (*id.* at 74-77); ignores that Section 230 creates an immunity from suit that makes exposure to litigation an irreparable harm (*id.* at 77); and ignores this Court's detailed analysis of the Act's chilling effect on adults (*id.* at 39-43).[2]  Instead, the State repeats the same erroneous arguments, including that Plaintiffs supposedly are already complying with the same requirements in Europe. Mot. at 13. But the record refutes that account.  The State relies on a paragraph from Mr. Allen's declaration that says nothing about any Plaintiff other than Pornhub, and refers only to Pornhub's policy for verifying the ages of *performers*. (Mot. at 13 (citing Allen Decl. at ¶ 11 & at n.2)).

The State also makes the counterfactual assertion that the Act will somehow *increase* goodwill among Plaintiffs' customers.  Mot. at 12.  But the State conflates the goodwill of

---

[2]  It is misconceived for the State to argue (Mot. at 12) that the subscription websites' collection of payment information "confound[s]" this chilling effect.  First, visitors to the subscription websites are free to browse examples of the available content without needing to submit payment information, as they may later do if and only if they choose to access the full site.  By comparison, the Act requires age verification the moment one enters a website, thereby blocking potential customers from perusing free samples anonymously.  Second, as the State's expert Mr. Allen testified and this Court found (Order at 40, 44-45), the clearest and surest path to compliance with the vagaries of the Act—requiring visitors to submit *government*-issued identification—is far more intrusive than the voluntary submission of credit card information.

3

Plaintiffs' *customers* with alleged public support for age verification by adult websites, based on a single, flawed poll.  *Id.*  Contrary to the State's arguments, surveys show that the majority of Americans would refuse to submit to age verification themselves.[3]  Moreover, the poll the State relies on is flawed on its own terms.  It was conducted in six "Senate battleground states" (Arizona, Georgia, Nevada, New Hampshire, Pennsylvania, and Wisconsin) and presented questions in biased form.[4]  The questionnaire failed to alert respondents to any alternatives to website-based age verification and assumed that pornography is "proven to be addictive."[5]  Notably, the State also fails to consider that the "health warnings" would separately cause "incalculable damages to [Plaintiffs'] reputation and goodwill."  Order at 76.

In passing (Mot. at 10), the State suggests that any First Amendment injury is not imminent. But this flies in the face of the State's insistence that the Act should be maximally enforced for the sake of protecting minors, as this Court noted (Order at 77-78).  If anything, the State's exigent pursuit of a stay indicates that it will be going after Plaintiffs the moment the injunction is lifted—precisely the threat that necessitated Plaintiffs' pre-enforcement challenge and continues to justify a preliminary injunction.

## III.   THE BALANCE OF EQUITIES HEAVILY FAVORS PLAINTIFFS

This Court must also consider "whether issuance of a stay will substantially injure other interested parties" and "where the public interest lies."  *Texas v. United States*, 40 F.4th 205, 215 (5th Cir. 2022) (cleaned up).  "In considering whether issuance of a stay pending appeal will substantially injure the other party, the maintenance of the status quo is an important consideration in granting a stay."  *E.T. v. Paxton*, 19 F.4th 760, 770 (5th Cir. 2021) (cleaned up).  As discussed

---

[3] *See* https://www.thecgo.org/research/tech-poll/ (finding that "60% of Americans would not feel comfortable sharing a government identification document, like a driver's license, with social media companies to verify their age"); https://www.thecgo.org/benchmark/poll-americans-dont-want-to-share-their-photo-id-to-tweet/ (discussing that "2 out of 3 Americans are not comfortable sharing their biometric information with platforms").
[4] *See* https://americanprinciplesproject.org/media/new-app-poll-swing-state-voters-strongly-oppose-transgender-agenda/.
[5] *See* https://americanprinciplesproject.org/wp-content/uploads/2022/05/APP-Battleground-Survey-5-22-Full.pdf.

above (*see supra* at 2), this Court's preliminary injunction maintains the status quo by barring enforcement of the Act prior to the Act's effective date.  Moreover, given the numerous irreparable harms presented here, the State "would need to present powerful evidence of harm to its interests to prevent [Plaintiffs] from showing that the threatened injury outweighs any harm [the State] would suffer[.]"  *Opulent Life Church v. City of Holly Springs, Miss.*, 697 F.3d 279, 297 (5th Cir. 2012).  The State presents no such evidence apart from its stated desire to enforce the Act.  Because "injunctions protecting First Amendment freedoms are always in the public interest," it is Plaintiffs, and only Plaintiffs, whom the equities favor.  *Opulent Life*, 697 F.3d at 298.

## IV.    THE STATE IS HIGHLY LIKELY TO LOSE ITS APPEAL

The State's prospects of obtaining reversal are low.  This Court's Order will be reviewed under an abuse of discretion standard; governing law calls for the application of strict scrutiny; and the legislative record fails to account for less restrictive alternatives that the Supreme Court has expressly commended.  *See, e.g., Ashcroft*, 542 U.S. at 664, 666.  But even on *de novo* review, the State's arguments fail under controlling precedent and provide no support for a stay.  *See Holcim (US), Inc. v. Dir., Off. of Worker's Comp. Programs, U.S. Dep't of Lab.*, 194 F. App'x 206 (5th Cir. 2006) (denying a stay because "[r]ealizing that under the current caselaw, it cannot prevail, Holcim asks this court . . . to overturn our precedent[.]").  While the State first argued for a change in Supreme Court precedent (*see* Order at 22-25), the State now backs off that position and suggests (Mot. at 3) that "existing case law does not provide clarity or guidance."  In fact, the opposite is true.  This Court correctly determined that the State's arguments defy decades of Supreme Court precedent.  *See* Order at 22, 53.

### A.    The State Continues To Misdirect Its Arguments About Standing

The standing issue is settled by the State's concession that at least one Plaintiff has standing.  *See* Mot. at 7; *see also Massachusetts v. E.P.A.*, 549 U.S. 497, 517–26 (2007) (explaining that where one petitioner has standing, all do); *McAllen Grace Brethren Church v. Salazar*, 764 F.3d 465, 471 (5th Cir. 2014) (standing inquiry ends if at least one plaintiff has standing).  Regardless, the State's arguments present no basis for a stay on their own terms.

The State contests (Mot. at 6) Jane Doe's standing, but ignores the Act' chilling effect on adults (Order at 39-43), the resulting reduction in Doe's audience, and the concomitant injury to Doe's First Amendment rights. *Id.* at 9.  The State also repeats its argument (Mot. at 4-6) that foreign Plaintiffs lack First Amendment rights, but ignores that communications to US citizens are protected (Order at 16) and takes contradictory positions in arguing foreign Plaintiffs are not bound by the Act because they do not "target" Texas.  This detour into the merits of a hypothesized personal-jurisdiction defense has nothing to do with whether foreign Plaintiffs can assert First Amendment rights.  "[I]t is the threat of enforcement, not the existence of personal jurisdiction, that would lead to First Amendment chill."  Order at 16 n.2.  "To hold otherwise would drastically expand the government's ability to restrict ideas based on their content or viewpoint.  States could ban, for example, the Guardian or the Daily Mail based on their viewpoint, because those newspapers are based in the United Kingdom." *Id.* at 17.  In each of these respects, the State does not grapple with the compelled-speech aspect of the Act and how that would, by itself, confer irrefutable basis for Plaintiffs to challenge the Act.

The State's argument regarding the overbreadth standing doctrine (Mot. at 6-7) is likewise incorrect.  While the State contends that the FSC lacks associational standing to represent Texas adults who are not among its members, it suffices that its members all face injury-in-fact from the First Amendment burdens under challenge.  Furthermore, even assuming *arguendo* that some Plaintiffs did not have standing to assert their own First Amendment rights, they nevertheless have overbreadth standing to assert the First Amendment rights of Texas adults.  Order at 12; *see also United States v. Hicks*, 980 F.2d 963, 969 (5th Cir. 1992) ("[T]he rationale of the overbreadth doctrine is to protect the expressive rights of *third parties* who are not before the court." (emphasis in original)).

Finally, the State makes the new argument (already waived) that any Section 230 claim is not ripe. Mot. at 11. According to the State, if Section 230 bars claims against Plaintiffs hosting solely third-party content, then "there is no reason to suppose that the Attorney General would bring a futile enforcement action doomed to be dismissed on Section 230 grounds." *Id.*  To the

6

contrary, because the State *contests* the merits of Plaintiffs' Section 230 claims, there is no reason to suppose the State would *not* attempt enforcement, and the State nowhere undertakes that it will not enforce the Act.  To the contrary, the entire premise of its Motion here is that it should be entitled to enforce the Act during the pendency of this action.  Regardless, the ripeness of a pre-enforcement challenge does not depend on the State's hypothetical, pre-discovery assessment of Plaintiffs' affirmative defenses.

**B.     The State Lacks Any Substantial Argument For Revisiting The Merits**

In arguing against preemption by Section 230 (Mot. at 10-11), the State repeats the same arguments that this Court rejected, without attempting to explain why or how this Court supposedly erred.  The State ignores, for example, that even if Section 230 requires a close connection to "individualized harm," the Act would still be preempted due to its provision of penalties for when a minor accesses adult content.  Order at 71 n.22.  That leaves no reason to believe the State will succeed on appeal.

In discussing the "health warnings," the State similarly repeats, virtually verbatim, its argument relying upon inapposite, abrogated, out-of-circuit authority and insists that the "health warnings" are truthful.  Mot. at 13-15.  By ignoring this Court's detailed rejection of such arguments as well as a robust body of record evidence (*see* Order at 54-69), the State's own Motion shows that the State is unlikely to succeed on appeal.

Finally, in addressing the "age verification" provision, the State argues it presents a close question on whether the Act satisfies strict scrutiny (Mot. at 7-9), while ignoring this Court's meticulous analysis of why any such defense of the Act necessarily fails—particularly given the absence of a legislative record showing any considered attempt at narrow tailoring.  Order at 26-52.  Instead, the State offers three misdirected points.  Mot. at 9.  First, the State claims (Mot. at 9) that "Plaintiffs and other porn sites already use age verification outside of Texas," which is inaccurate and unsupported.  *See supra* at 3.  Second, the State claims (Mot. at 9) that the only alternative to the Act is to "force" parents to install content-filtering software, which is false.  Order at 42, 51.  Third, the State claims (Mot. at 9) that the Act's underinclusivity is immaterial,

citing cases that addressed laws exempting speech categorically different from the speech of concern.  *See Burson v. Freeman*, 504 U.S. 191, 207 (1992); *Metromedia, Inc. v. San Diego*, 453 U.S. 490, 511–12 (1981).  Here, however, the Act exempts the same adult content, accessible by the same audience of concern (minors), based solely on its source; the upshot is a law that is impermissibly speaker-based and indefensibly underinclusive.  Order at 26-28.

In short, the State provides no reason to expect reversal.  The Fifth Circuit should be expected to ask whether this Court abused its discretion by crediting Plaintiffs' likelihood of success under strict scrutiny, and to resolve that question consistent with the Supreme Court's on-point instruction.  Viewed through this prism, the State cannot show it is likely to succeed on appeal.  *See Ashcroft*, 542 U.S. at 664; *see also Randell v. Johnson*, 227 F.3d 300, 301 (5th Cir. 2000) ("We obey this admonition" to "leave to the Court 'the prerogative of overruling its own decisions.'" (quoting *Agostini v. Felton*, 521 U.S. 203, 237 (1997))).

## CONCLUSION

For all of the foregoing reasons, Plaintiffs respectfully request that this Court deny the State's Motion for Stay Pending Appeal.

| | |
|---|---|
| DATED:  September 5, 2023 | QUINN EMANUEL URQUHART & SULLIVAN, LLP |
| | By           /s/     *Scott L. Cole* |
| | Scott L. Cole (Bar No. 00790481)<br>scottcole@quinnemanuel.com<br>QUINN EMANUEL URQUHART & SULLIVAN, LLP<br>300 West 6th Street<br>Suite 2010<br>Austin, TX 78701<br>Telephone: (737) 667 6100<br>Fax: (737) 667 6110 |

Michael T. Zeller (*pro hac vice*)
Derek L. Shaffer (*pro hac vice*)
Thomas Nolan (*pro hac vice*)
Arian Koochesfahani (*pro hac vice*)
michaelzeller@quinnemanuel.com
derekshaffer@quinnemanuel.com
thomasnolan@quinnemanuel.com
ariankoochesfahani@quinnemanuel.com
QUINN EMANUEL URQUHART & SULLIVAN, LLP
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017-2543
Telephone: (213) 443 3000
Fax: (213) 443 3100

Jeffrey Keith Sandman (*pro hac vice*)
jeff.sandman@webbdaniel.law
WEBB DANIEL FRIEDLANDER LLP
5208 Magazine St Ste 364
New Orleans, LA 70115
Phone: (978) 886 0639

## CERTIFICATE OF SERVICE

I hereby certify that on September 5, 2023, a true and correct copy of the foregoing document was served via the Court's CM/ECF system to all counsel of record.

DATED: September 5, 2023

QUINN EMANUEL URQUHART & SULLIVAN, LLP

By      /s/    *Scott L. Cole*

Scott L. Cole (Bar No. 00790481)
scottcole@quinnemanuel.com
QUINN EMANUEL URQUHART & SULLIVAN, LLP
300 West 6th Street
Suite 2010
Austin, TX 78701
Telephone: (737) 667 6100
Fax: (737) 667 6110