UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| FREE SPEECH COALITION, INC, et. al., | § § § | |
| *Plaintiffs*, | § § | |
| v. | § § | Civil Action No. 1:23-cv-00917-DAE |
| KEN PAXTON, in his official capacity as Attorney General for the State of Texas, | § § § § | |
| *Defendant*. | § | |

### DEFENDANT'S MOTION TO DISMISS

Ken Paxton, in his official capacity as Attorney General for the State of Texas, files this Motion to Dismiss.

### INTRODUCTION

For half a century, it has been a criminal offense in Texas—as in many, if not all, States—to distribute obscenity to minors. Tex. Penal Code § 43.24(b) (codifying Acts 1973, 63rd Leg., ch. 399, § 1, eff. Jan. 1, 1974). The Texas Legislature, however, received evidence this past Session that due to the growing ubiquity of such materials on the internet, "approximately one in five youth experience unwanted online exposure to sexually explicit material." Bill Analysis, C.S.H.B. 1181 (2023). Concerned about the impact such exposure has on the developing minds of Texas children and adolescents, the Legislature required commercial purveyors of online pornography to verify the age of individuals visiting their websites before displaying sexual material harmful to minors. *See* Act of June 12, 2023, Ch. 676, § 1. Known as H.B. 1181, the statute also required these websites to warn of the "potential[]" risks associated with viewing such material, including addiction and other mental-health disorders. *Id.*

Nothing in H.B. 1181 prohibits anyone from creating, producing, publishing, or accessing pornography.

## PLAINTIFFS

Plaintiffs in this case are disparate. They are: (1) foreign-based companies that purvey free and open access to pornography ("Foreign Websites"); (2) U.S.-based companies that require a subscription to view pornography; (3) an individual plaintiff who creates pornography ("Doe"); and (4) Free Speech Coalition (FSC), presuming the ability to sue on behalf of its members. ECF No. 1 ¶¶ 10-23.

## PLAINTIFFS' CLAIMS

All Plaintiffs assert a § 1983 claim alleging that H.B. 1181 violates their First Amendment right to free speech and their Fourteenth Amendment right to due process. Additionally, all Plaintiffs but Doe assert a § 1983 claim alleging that H.B. 1181 violates their Eighth Amendment right against Excessive Fines. Finally, FSC and certain Foreign Websites assert a preemptory challenge to H.B. 1181 based on the Communications Decency Act (CDA).

Defendant moves to dismiss (1) all claims asserted by the Foreign Websites; (2) all claims asserted by Doe; (3) all Eighth Amendment claims; and (4) for an additional reason, the CDA claim asserted by MG Premium Ltd.

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) governs motions to dismiss for failure to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6). To avoid dismissal under Rule 12(b)(6), a plaintiff must plead sufficient facts to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* While courts must

accept all factual allegations as true, they "do not accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions." *Plotkin v. IP Axess Inc.*, 407 F.3d 690, 696 (5th Cir. 2005).

Federal Rule of Civil Procedure 12(b)(1) governs motions to dismiss for lack of subject-matter jurisdiction. FED. R. CIV. P. 12(b)(1). When the court lacks the statutory or constitutional power to adjudicate a case, the case is properly dismissed for lack of subject-matter jurisdiction. *Hooks v. Landmark Indus., Inc.*, 797 F.3d 309, 312 (5th Cir. 2015). "The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). "Accordingly, the plaintiff constantly bears the burden of proof that jurisdiction does in fact exist." *Id.* "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." FED. R. CIV. P. 12(h)(3). The Eleventh Amendment bars suits in federal court against a state or one of its agencies, regardless of the relief requested, by anyone other than the federal government or another state. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984). Only when Congress validly abrogates a state's Eleventh Amendment immunity or the state consents to suit can a plaintiff sue the state. *Perez v. Region 20 Educ. Serv. Ctr.*, 307 F.3d 318, 326 (5th Cir. 2002).

## MOTION TO DISMISS

### I. Foreign Websites' § 1983 Claims Should Be Dismissed for Failure to State a Claim and Lack of Subject Matter Jurisdiction.

The Foreign Websites use § 1983 to bring claims under the First, Eighth, and Fourteenth Amendments, as well the Supremacy Clause (related to the Communications Decency Act). To bring a valid § 1983 claim, a plaintiff must show, *inter alia*, that they (1) are a "citizen of the United States or other person within the jurisdiction thereof," and (2) were deprived of rights secured by the United States Constitution or laws. 42 U.S.C. § 1983. But the Foreign Websites are not persons within the jurisdiction of the United States. Nor do they have rights secured by the U.S. Constitution.

A.  <u>The Foreign Websites are not persons within the jurisdiction of the United States.</u>

The Foreign Websites are incorporated in foreign nations, where they have their principal places of business. ECF, ¶¶ 12-18. The Foreign Websites plead no facts to suggest they have operations, offices, or employees within the United States. In fact, their pleadings are to the contrary. *Id.* The Foreign Websites must affirmatively plead each element of their claims. *See* 407 F.3d ta 696. Because the Foreign Websites have not sufficiently pleaded that they are parties protected by § 1983, the Court should dismiss each of their § 1983 claims.

B.  <u>The Foreign Websites Do Not Have Constitutional Rights</u>

In *Agency for Int'l Dev. v. All. for Open Soc'y Int'l, Inc. (AOSI II)*, the Supreme Court held "it is long settled as a matter of American constitutional law that foreign citizens outside U.S. territory do not possess rights under the U.S. Constitution." 140 S. Ct. 2082, 2086 (2020) (citing *Boumediene v. Bush*, 553 U.S. 723, 770–771 (2008)). The Supreme Court was adamant, restating its position at least 8 more times in an otherwise brief opinion.

> "But the Court has not allowed foreign citizens outside the United States…to assert rights under the U. S. Constitution." *Id.* "As foreign organizations operating abroad, plaintiffs' foreign affiliates possess no rights under the First Amendment." *Id.* at 2087. "In short, plaintiffs' foreign affiliates are foreign organizations, and foreign organizations operating abroad have no First Amendment rights." *Id.* at 2088. "[Domestic] plaintiffs cannot export their own First Amendment rights to shield foreign organizations from Congress's funding conditions." *Id.* at 2089. "Moreover, plaintiffs' proposed line-drawing among foreign organizations would blur a clear rule of American law: Foreign organizations operating abroad do not possess rights under the U. S. Constitution." *Id.* "[T]he Court did not purport to override the longstanding constitutional law principle that foreign organizations operating abroad do not possess constitutional rights." *Id.* "[B]ecause foreign organizations operating abroad do not possess constitutional rights, those foreign organizations do not have a First Amendment right…." *Id.* "In sum, plaintiffs'

4

foreign affiliates are foreign organizations, and foreign organizations operating abroad possess no rights under the U. S. Constitution." *Id.*

At issue in *AOSI II* was a law—known as the Policy Requirement—that prohibited the disbursement of government funds to aid organizations that did not adopt a policy explicitly opposing prostitution and sex trafficking. 140 S. Ct. 2082. In 2013, the Supreme Court struck down the Policy Requirement as it applied to domestic aid agencies. *Agency for Int'l Dev. v. Alliance for Open Society Int'l, Inc.*, 570 U.S. 205 (2013) ("AOSI I"). Seven years later, in *AOSI II*, the Supreme Court upheld the constitutionality of the Policy Requirement as it applied to the domestic agencies' foreign affiliates.

This Honorable Court's Ruling on Plaintiffs' Motion for Preliminary Injunction ("the Ruling") finds *AOSI II* distinguishable from this "litigation in two critical ways." ECF 36, p. 14. First, the Ruling asserts that "Plaintiffs do not seek to challenge rule or policy making with extraterritorial effect, as the foreign Plaintiffs did in *AOSI [II]*." *Id.* But the plaintiffs in *AOSI II* were not "foreign plaintiffs." And they were not concerned with an "extraterritorial effect." *AOSI II*, 140 S.Ct. at 2085. They were United States aid agencies asserting their own constitutional claims. *Id.*

The *AOSI II* plaintiffs and their foreign affiliates shared the same name, trademarks and logos, funding sources, operating structure, and mission. *Id.* at 2094 (J. Breyer, dissenting). The plaintiffs argued that a violation of their foreign affiliates' constitutional rights therefore amounted to a violation of the plaintiffs' constitutional rights. *Id.* The Supreme Court rejected this argument, reiterating that "plaintiffs' foreign affiliates are foreign organizations, and foreign organizations operating abroad have no First Amendment rights." *Id.* at 2088.

Second, the Ruling distinguishes this case from *AOSI II* because "[t]he foreign NGOs had no domestic operations and did not plan to convey their relevant speech into the United States." ECF 16, p. 14. The Ruling provides no citation for this factual distinction, and none can be found. *See AOSI*

5

*II* at 2094. This second distinction likewise relies on the false premise that the plaintiffs in *AOSI II* were foreign organizations without operations in the United States. *Id.* Furthermore, the Ruling's implicit assertion that the Foreign Websites have "domestic operations" because they host a website is untenable. Were this true, the foreign organizations in *AOSI II* could avail themselves of constitutional protections by posting the required policy statement on their website, thereby "convey[ing] their relevant speech into the United States."[1]

Finally, the Ruling suggests that the First Amendment rights of U.S. residents to *hear* speech provides global constitutional cover for any and all speakers. *See* ECF 36, p. 16. But the right to receive protected speech is not implicated here for four reasons.

First, Texas consumers of pornography are not plaintiffs in this suit. This alone renders inapposite the primary cases cited in the Ruling. In both *Stanley v. Georgia*, 394 U.S. 557, 564 (1969), and *Virginia State Board of Pharmacy v. Virginia Citizens Consumer Council, Inc.*, 425 U.S. 748, 756 (1976), plaintiffs were the affected recipients of restricted speech. Neither case dealt with foreign entities. Likewise, plaintiffs in *Kleindienst v. Mandel*, 408 U.S. 753 (1972), were the affected recipients of restricted speech. And the Supreme Court accepted that Mandel, the foreign speaker, served as a "symbolic" plaintiff without his own constitutional claim. 408 U.S. at 762.

Second, in contrast to the plaintiffs in *Stanley, Virginia Citizens*, and *Kleindienst*, no one in Texas has lost their access to any content. Nor do they face a fine or penalty for possessing it. *Cf.* 394 U.S. 557. H.B. 1181 does not prohibit any adult from producing, distributing, or accessing pornography.

Third, even assuming that this case implicates Texans' right to access pornography, such rights do not create a constitutional claim for the Foreign Websites. *AOSI II* asserts that U.S. entities "cannot

---

[1] Notably, the foreign organizations had websites accessible to U.S. residents and, in at least some instances, shared website addresses with their U.S.-based affiliates. *See Br. For Resp.*, *AOSI II*, 2020 WL 1154731 at *8 (U.S. Feb. 26, 2020).

export their own First Amendment rights to shield foreign organizations…." 140 S.Ct. at 2089. If a close affiliate relationship between the Foreign Websites and a U.S.-based website could not, in accord with *AOSI II,* bestow constitutional rights upon the Foreign Websites, then neither should a nebulous relationship between the Foreign Websites and anonymous viewers of pornography.

Fourth, defamation-by-foreigners cases—which make up the bulk of the Ruling's relevant citations on this topic—do not properly guide the constitutional inquiry. *See Manzari v. Associated Newspapers, Ltd.*, 830 F.3d 881 (9th Cir. 2016); *Mireskandari v. Daily Mail and Gen. Tr. PLC*, CV1202943MMMSSX, 2013 WL 12114762 (C.D. Cal. Oct. 8, 2013); *Goldfarb v. Channel One Russia*, 18 CIV. 8128 (JPC), 2023 WL 2586142 (S.D.N.Y. Mar. 21, 2023); *Nygård, Inc. v. Uusi-Kerttula*, 159 Cal. App. 4th 1027, 1042 (2008). As the Ruling points out, defamation claims are "significantly cabined by the First Amendment." ECF 16, p. 14. (quoting *Manzari,* 830 F.3d at 884). This means that defamation cases are necessarily decided with the concept of free speech in mind, not that every defendant in a defamation suit is thereby granted First Amendment rights.

*Thunder Studios, Inc. v. Kazal* illustrates why the defamation-by-foreigners cases are also factually inapt. 13 F.4th 736 (9th Cir. 2021). *Thunder Studios* involved speech specifically targeted to U.S. residents about particular U.S. residents. The implicated speech took place inside the United States—quite literally on the streets of California. *Id.* at 739-40. According to the Ninth Circuit, this fact distinguished *Thunder Studios* from *AOSI II. Id.* at 744.

It also distinguishes *Thunder Studios* here. Unlike the Foreign Websites, the defendants in *Thunder Studios* did not simply and solely post non-targeted content on the "decentralized, global medium of communication that links people, institutions, corporations, and governments around the world." ECF 1, ¶ 26 (Plaintiffs' definition of the internet). To apply *Thunder Studios* to this case would require ignoring Plaintiffs' own caution that "the operation of the physical world—that is, items or products

7

moving through time and space between producers and consumers—are fundamentally different from the movement of services or virtual products over the internet. *All too often parties apply physical world rules, regulations, and process to Internet commerce.*" ECF 5-2, ¶ 8 (emphasis added).[2]

Ultimately, the Ruling sidesteps *AOSI II* by assuming that the Foreign Websites operate within the U.S. But the Foreign Websites do not allege that they operate in the U.S. And, according to their own sworn statements, they do not.

> "The [foreign websites] do not have offices in the United States and are not registered to do business in [any] U.S. State." *Doe v. WebGroup Czech Republic, et al.*; Case No. 2:21-cv-024828-VAP-SK, U.S. (C.D. California 2020), ECF No. 134-5 (Dec. of Robert Seifert in support of Def. Mot. to Dismiss), ¶ 3. They employ "no U.S. employees, own no U.S. property, rent no U.S. property, and pay no U.S. state or federal taxes." *Id.* The foreign websites "do not hold any U.S. bank accounts, have no U.S. mailing address or phone numbers, and do not have any designated agents residing in, domiciled in, or doing business from…the United States." *Id.* at ¶ 4. They do not have servers in the United States. *Id.* at ¶¶ 20-22. They "do not solicit videos from any particular country." *Id.* at ¶¶ 13, 19. Nor do they "aim [their pornographic websites] at any particular country. *Id.* at ¶¶ 12, 18. "[R]ather [their pornographic websites] are available to the entire world of internet users." [3] *Id.*

In sum—and in their own words issued under penalty of perjury—the Foreign Websites "*have no U.S.-based operations.*" *Id.* at ¶ 3. "[F]oreign organizations operating abroad possess no rights under the U. S. Constitution" *AOSI II* at 2089. So, the Foreign Websites have no constitutional rights, and their constitutional claims should therefore be dismissed.

---

[2] If, however, Plaintiffs do wish to have their distribution of pornography analogized to the distribution of such content in the physical word, Defendant welcomes that position.

[3] In *Doe v. Webgroup Czech Republic*, a victim of child sex trafficking sued several pornographic websites for broadcasting her victimization. *Doe v. WebGroup Czech Republic, as*, No. 221CV02428VAPSKX, 2022 WL 982248 (C.D. Cal. Jan. 13, 2022). Two of the defendants in *Doe* are Plaintiffs NKL Associates and WebGroup Czech Republic, a.s. By arguing that they had no operations in the U.S., the defendants—again, Plaintiffs here—successfully argued the district court lacked personal jurisdiction. Notably, the declarant quoted above, Robert Seifert, also provided a declaration in this case on behalf of the same two parties, plus Plaintiffs Sonesta Media, s.r.o. and Sonesta Technologies, s.r.o. ECF 5-2.

      C. <u>The Foreign Websites cannot show a valid waiver of immunity.</u>

The Foreign Websites anchor their right to sue Defendant on the *Ex Parte Young* doctrine and the exception it provides to Defendant's immunity to suit under § 1983. ECF No. 36, p. 18. Without a § 1983 claim, the Foreign Websites have no valid claim against which to assert the limited waiver of immunity provided by *Ex Parte Young*. Accordingly, their claims should be dismissed for lack of subject matter jurisdiction.

**II.    Jane Doe's Constitutional Claims Should Be Dismissed.**

Plaintiff Jane Does has not sufficiently pleaded any cause of action, nor any alleged facts upon which a cause of action may rest. Plaintiff Jane Doe makes pornographic videos. ECF 1 ¶ 21. Doe then publishes that content on various pornographic websites. *Id.* Doe "opposes the restrictions the Act would place on their ability to reach their audience, as well as the government-mandated speech that the Act would force adult websites to place on their websites." *Id.*

Doe bears the burden of establishing the "irreducible constitutional minimum" of standing by demonstrating an injury in fact. *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016). The injury must be "actual or imminent." *Clapper v. Amnesty Intern. USA*, 568 U.S. 398, 408 (2013). "Although imminence is concededly a somewhat elastic concept, it cannot be stretched beyond its purpose, which is to ensure that the alleged injury is not too speculative for Article III purposes—that the injury is *certainly impending*." *Id.* (emphasis in original) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 565 n.2 (1992)).

Doe's "business consists of producing legal content—featuring only consenting adults—*for an adult audience*." ECF No. 5-6 (emphasis added). Doe operates no website, and thus neither incurs additional cost nor bears any burden to verify the age of their content viewers. H.B. 1181 requires no change in Doe's behavior.

H.B. 1181 may cause some porn sites to incur additional costs—albeit minimal—to implement compliance measures. But measures undertaken by the website operators would not inhibit or impede,

but instead ensure, Doe's ability to reach their intended audience—which Doe swears is exclusively adults. The Supreme Court's "First Amendment jurisprudence has acknowledged limitations on the otherwise absolute interest of the speaker in reaching an unlimited audience where the speech is sexually explicit and the audience may include children." *Bethel Sch. Dist. No. 403 v. Fraser*, 478 675, 684 (1986).

Doe's injuries are not actual or imminent, and Doe lacks standing to bring a constitutional claim. Accordingly, her claims should be dismissed.

### III. Foreign Websites' Communications Decency Act Claim Should Be Dismissed.

The Foreign Websites bring their CDA claim pursuant to § 1983. But none of the Foreign Websites is a citizen of the United States or other person within its territory. *See* 42 U.S.C. § 1983. So, they cannot bring a valid § 1983 claim, and their underlying CDA claim must fail.

Further, even if some foreign websites could bring a valid CDA claim, foreign Plaintiff MG Premium Ltd cannot. MG Premium claims immunity under the CDA because its website SpiceVids.com offers porn owned and controlled by third parties. ECF. 1, p. 4. But MG Premium Ltd also asserts that it owns Brazzers.com. *Id.* And Brazzers creates content and posts it "to the websites of other Plaintiffs, including… SpiceVids." *Id.* So, according to their own complaint, MG Premium Ltd owns SpiceVids *and* creates content for the site. Thus, by its own admission, MG Premium is a content provider. *See* ECF 36, p. 74 (finding that MG Premium Ltd is a content creator).

### IV. Plaintiffs' Eighth Amendment Claims Should Be Dismissed.

The touchstone of the constitutional inquiry under the Excessive Fines Clause is the principle of proportionality—the amount of the fine must bear some relationship to the gravity of the offense that it is designed to punish. *U.S. v. Bajakajian*, 524 U.S. 321, 334 (1998) (citing *Austin v. U.S.*, 509 U.S. 602, 622-23 (1993)).

A punitive fine violates the Excessive Fines Clause only if it is grossly disproportional to the gravity of a defendant's offense. *Id.* at 336. "Excessive means surpassing the usual, the proper, or a normal measure of proportion." *Id.* at 335. In short, "fines should not deprive a wrongdoer of his livelihood." *Id.* at 335-36.

"A ripe controversy is a necessary component of subject matter jurisdiction," to prevent federal courts from making "premature or speculative" decisions. *Lower Colo. River Auth. v. Papalote Creek II, L.L.C.*, 858 F.3d 916, 922-23 (5th Cir. 2017) (quoting *Shields v. Norton*, 289 F.3d 832, 835 (5th Cir. 2002)). Challenges under the Excessive Fines Clause are not ripe before a "final forfeiture order or judgment has been entered." *Schanzle v. Haberman*, 831 F. App'x 103, 108 (5th Cir. 2020) (quoting *United States v. Blackman*, 746 F.3d 137, 144 (4th Cir. 2014)); *accord United States v. Covey*, 232 F.3d 641, 646 (8th Cir. 2000); *Cheffer v. Reno*, 55 F.3d 1517, 1523 (11th Cir. 1995).

Plaintiffs' Excessive Fines challenge is premature because no court has imposed a fine on Plaintiffs for violating the law. *See, e.g., United States v. Sum of $70,990,605*, 4 F. Supp. 3d 189, 207-08 (D.D.C. 2014); *In the Matter of the Search of One Address in Washington, D.C., Under Rule 41*, 512 F. Supp. 3d 23, 30 n.12 (D.D.C. 2021). Plaintiffs' prognostication that they *may* face constitutionally excessive fines requires numerous assumptions and relies on too many contingencies. *See Schanzle*, 831 F. App'x at108; *see also In re Marriott Int'l Inc., Customer Data Sec. Beach Litig.*, No. 19-CV-654, 2023 WL 4351333, at *4 (D. Md. July 5, 2023).

The amount of any prospective fine assessed pursuant to H.B. 1181 would be within the sole discretion of the state district court and based on a number of factors unique to each violation and violating pornographic website. *See* Tex. Civ. Prac. & Rem. Code § 129B.006(c)(1-6) ("The amount of a civil penalty under this section shall be based on: (1) the seriousness of the violation, including the nature, circumstances, extent, and gravity of the violation; (2) the history of previous violations; (3) the amount necessary to deter a future violation; (4) the economic effect of a penalty on the entity on

11

whom the penalty will be imposed; (5) the entity's knowledge that the act constituted a violation of this chapter; and (6) any other matter that justice may require.").

Plaintiffs' lawsuit assumes that Plaintiffs will violate the statute and that the state district court will assess a fine against each of them that is *per se* excessive in violation of the Eighth Amendment. Plaintiffs' Eighth Amendment claims are premature and far too speculative to invoke the jurisdiction of the federal judiciary and should therefore be dismissed.

## CONCLUSION

For the foregoing reasons, the Court should grant Defendants' Motion to Dismiss.

Respectfully Submitted,

**KEN PAXTON**
Attorney General

**Brent Webster**
First Assistant Attorney General

**Grant Dorfman**
Deputy First Assistant Attorney General

**Ralph Molina**
Deputy Attorney General for Legal Strategy

**Ryan Walters**
Chief, Special Litigation Division

JOHN RAMSEY
Texas Bar No. 24051227

KELSEY L. WARRREN
Texas Bar No. 24095736

Assistant Attorneys General
General Litigation Division
Office of the Attorney General
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548

(512) 463-2120/Fax (512) 320-0667
john.ramsey@oag.texas.gov
kelsey.warren@oag.texas.gov

**COUNSEL FOR DEFENDANT**

**CERTIFICATE OF SERVICE**

I hereby certify that on October 11, 2023, a true and correct copy of the foregoing document was served via the Court's electronic filing system to all counsel of record.

_____
JOHN RAMSEY
Assistant Attorney General