**UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | |
|---|---|
| FREE SPEECH COALITION, INC., et al., | |
| Plaintiffs, | |
| v. | **CASE NO. 1:23-cv-00917-DAE** |
| KEN PAXTON, In His Official Capacity As Attorney General For The State Of Texas, | |
| Defendant. | |

**<u>PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS</u>**

**TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ........................................................................................................1

BACKGROUND ...........................................................................................................................3

I.      PROCEDURAL HISTORY.................................................................................................3

II.    THE PRELIMINARY INJUNCTION ORDER ................................................................4

LEGAL STANDARD.....................................................................................................................4

ARGUMENT .................................................................................................................................5

I.      TEXAS'S REHASHED ARGUMENTS FAIL TO SHOW THAT FOREIGN
PLAINTIFFS LACK STANDING ....................................................................................5

          A.      Foreign Plaintiffs Can Invoke § 1983 For Speech In The United States.................6

          B.      Foreign Plaintiffs Can Assert Constitutional Claims For Speech In The
               United States .........................................................................................................7

II.    TEXAS SIMILARLY FAILS TO SHOW THAT JANE DOE LACKS
STANDING .....................................................................................................................10

III.   TEXAS FAILS TO SHOW THAT FOREIGN PLAINTIFFS CANNOT INVOKE
SECTION 230...................................................................................................................11

IV.   PLAINTIFFS' EXCESSIVE FINES CLAIM IS RIPE BECAUSE A FINE OF
ANY AMOUNT WOULD BE EXCESSIVE....................................................................12

CONCLUSION.............................................................................................................................14

# TABLE OF AUTHORITIES

Page(s)

## Cases

*Abitron Austria GmbH v. Hetronic Int'l, Inc.*,
   600 U.S. 412 (2023)........................................................................................................6

*Adhikari v. Kellogg Brown & Root, Inc.*,
   845 F.3d 184 (5th Cir. 2017) ..........................................................................................6

*Agency for Int'l Dev. v. All. for Open Soc'y Int'l, Inc.*,
   140 S. Ct. 2082 (2020)..................................................................................................7, 8

*Ashcroft v. ACLU*,
   542 U.S. 656 (2004)......................................................................................................8, 11

*Bethel Sch. Dist. No. 403 v. Fraser*,
   478 U.S. 675 (1986)........................................................................................................10

*Cheffer v. Reno*,
   55 F.3d 1517 (11th Cir. 1995) .......................................................................................12

*Force v. Facebook, Inc.*,
   934 F.3d 53 (2d Cir. 2019).............................................................................................11

*Gonzalez v. Google LLC*,
   2 F.4th 871 (9th Cir. 2021) ............................................................................................11

*Massachusetts v. E.P.A.*,
   549 U.S. 497 (2007)..........................................................................................................5

*McAllen Grace Brethren Church v. Salazar*,
   764 F.3d 465 (5th Cir. 2014) ...........................................................................................5

*Morrison v. Nat'l Australia Bank Ltd.*,
   561 U.S. 247 (2010)..........................................................................................................6

*Packingham v. North Carolina*,
   582 U.S. 98 (2017)............................................................................................................8

*Ramming v. United States*,
   281 F.3d 158 (5th Cir. 2001) .......................................................................................4, 5

*Reno v. ACLU*,
   521 U.S. 844 (1997)......................................................................................................8, 11

*RJR Nabisco, Inc. v. Eur. Cmty.*,
   579 U.S. 325 (2016)..........................................................................................................6

*Schanzle v. Haberman*,
   831 F. App'x 103 (5th Cir. 2020) ..................................................................................12

*Sierra Club v. Khanjee Holding (US) Inc.*,
   655 F.3d 699 (7th Cir. 2011) ...........................................................................................12

*State v. Branstetter*,
   181 Or. App. 57 .................................................................................................................12

*Stripling v. Jordan Prod. Co., LLC*,
   234 F.3d 863 (5th Cir. 2000) ...........................................................................................14

*Timbs v. Indiana*,
   139 S. Ct. 682 (2019)........................................................................................................12

*Twitter, Inc. v. Taamneh*,
   598 U.S. 471 (2023)..........................................................................................................11

*U.S. v. Hicks*,
   980 F.2d 963 (5th Cir. 1992) ...........................................................................................10

*U.S. v. Playboy Ent. Grp.*,
   529 U.S. 803 (2000)....................................................................................................10, 11

*United States v. Bajakajian*,
   524 U.S. 321 (1998)....................................................................................................12, 13

*United States v. Covey*,
   232 F.3d 641 (8th Cir. 200) .............................................................................................12

*United States v. Suarez*,
   966 F.3d 376 (5th Cir. 2020) ...........................................................................................13

*Virginia v. Am. Booksellers Ass'n, Inc.*,
   484 U.S. 383 (1988).......................................................................................................7, 10

*WesternGeco LLC v. ION Geophysical Corp.*,
   138 S. Ct. 2129 (2018).........................................................................................................6

*Wyatt v. Cole*,
   504 U.S. 158 (1992).............................................................................................................7

*Yegiazaryan v. Smagin*,
   599 U.S. 533 (2023).............................................................................................................6

### Other Authorities

Fed. R. Civ. P. 12(b)(1)...........................................................................................................5, 13

Fed. R. Civ. P. 12(b)(6)...........................................................................................................4, 12

Fed. R. Civ. P. 12(i) ................................................................................................................5, 14

## PRELIMINARY STATEMENT

After its standing arguments failed in connection with a preliminary injunction, Texas rehashes those same arguments, now in its motion to dismiss. Because those standing arguments have not improved, they fail for the same reasons previously explained by this Court. Texas's only new argument is that Plaintiffs' Excessive Fines claim is not ripe because no specific fine has been threatened. That argument, too, is misconceived. *Any* fine is excessive given that it penalizes constitutionally protected activity, does not serve any salutary purpose, and addresses phantom harms. Texas's motion to dismiss should be denied.

*First*, Texas repeats its argument that foreign Plaintiffs cannot bring claims to enforce constitutional and federal rights. Setting aside that the conceded standing of any one Plaintiff necessitates consideration of the merits, Texas remains incorrect in quibbling about this particular subset. Foreign Plaintiffs have standing because their claims spring from speech that is occurring in the United States and is threatened by adverse enforcement and sanction in the United States. As the Supreme Court has instructed, the ability of foreign plaintiffs to invoke federal statutes depends on the location of the relevant conduct. This same principle applies to constitutional rights. Otherwise, government could run roughshod over freedom of speech, without constitutional constraint, just by censoring foreign speakers. Nor is Texas correct to characterize expression over the Internet as somehow occurring *outside* the United States—ostensibly on the theory that it is occurring *nowhere*—contrary to Texas's regulatory premises and concerns about Plaintiffs' expression occurring *in Texas*. Finally, Texas ignores the overbreadth doctrine, which enables Plaintiffs to assert Texans' rights in all events. In sum, foreign Plaintiffs' pre-enforcement challenge is irreproachable, as this Court previously recognized.

*Second*, Texas repeats its argument that Jane Doe lacks standing because the Act merely limits their audience to adults. That is doubly wrong. The Act does not so limit Doe's audience,

because it fails to regulate other means of accessing their content and invites evasion by minors. Nor can it be said that the Act "merely" limits their audience to adults—it profoundly chills that adult audience and, indeed, expressly warns it away. As this Court recognized, the Act's chilling effect injures Doe no less than other Plaintiffs.

*Third*, Texas repeats its argument that Section 230 does not apply to foreign Plaintiffs. Apart from relying on an already-debunked statutory interpretation, Texas argues that one Plaintiff, MG Premium Ltd, is not protected by Section 230 because MG Premium Ltd creates content. While Plaintiffs do not dispute that point, Texas does not even suggest that other Plaintiffs are unprotected.

*Fourth*, Texas argues that Plaintiffs' Excessive Fines claim is not ripe because no specific fine has been threatened. But the threat of imminent enforcement, combined with the Act's constitutional and practical infirmities, makes any fine excessive. As Plaintiffs allege, the Act violates the First and Fourteenth Amendments. As Plaintiffs further allege, the Act fails to prevent minors from viewing adult content and aims at harms that are scientifically unfounded. It follows that any fine is excessive. At minimum, drawing all inferences in Plaintiffs' favor, as this Court must, entails that Plaintiffs plausibly face heavy fines sufficient to violate the Eighth Amendment.

*Fifth*, to the extent this Court finds the Complaint factually deficient, this Court should at most dismiss with leave to amend. At best, Texas points to technical defects—from facts about foreign Plaintiffs' operations in the United States to facts about the nature of Doe's injuries—that could be easily cured (assuming *arguendo* any exists) by an amended pleading.

*Finally*, while the Fifth Circuit reviews in parallel this Court's preliminary injunction, Plaintiffs respectfully suggest that this Court rule on Texas's motion and permit this case to proceed expeditiously to final judgment, so that appellate review can then proceed with the benefit of a complete, developed factual record.

**BACKGROUND**

**I.     PROCEDURAL HISTORY**

On August 4, 2023, Plaintiffs—the primary trade association for the adult industry, an array of providers of third-party content, and certain content creators—sued Angela Colmenero, the interim Attorney General for Texas, to enjoin enforcement of HB 1181 (the "Act") for imposing unconstitutional age-verification and health-warning requirements on adult websites.[1]   Dkt. # 1 (Complaint at ¶¶ 1-7).   The Complaint alleges violations of the First, Fourteenth, and Eighth Amendments, as well as violations of Section 230 of the Communications Decency Act, while seeking injunctive and declaratory relief.   Complaint at ¶¶ 78-98.   Simultaneous with the Complaint, Plaintiffs moved for a preliminary injunction, backed by experts attesting to scientific and technological premises and fact declarations discussing Plaintiffs' websites.   Dkt. # 5.   To decide Plaintiffs' motion before the Act took effect on September 1, 2023, this Court set an expedited schedule, such that briefing concluded on August 21, 2023.   Dkt. # 20, 23, 27, 31.

After holding a preliminary-injunction hearing on August 23, 2023, this Court on August 31 issued an 81-page decision preliminarily enjoining enforcement of the Act.   Dkt. # 36 (Order). Texas appealed and moved for a stay pending appeal, which Plaintiffs opposed and this Court denied.   Dkt. # 38-43, 45.   Texas then sought a stay from the Fifth Circuit on September 7, 2023. Exh. A (App. Dkt. # 12).

On September 19, 2023, the Fifth Circuit administratively stayed the preliminary injunction, carried forward Texas's motion for stay pending appeal, and expedited the case to the next available oral argument panel.   *Id.* (App. Dkt. # 66).   On September 20, 2023, the Fifth Circuit scheduled oral argument for October 4, 2023, preceded by the parties' filing of opening and reply

---

[1]   Attorney General Ken Paxton has since been restored to office.   *See* Dkt. #50 (notice of substitution).

briefs.  *Id.* (App. Dkt. # 69).  In the interim, this Court granted Texas's motion to extend its time

to respond to Plaintiffs' Complaint to October 11, 2023.  Dkt. # 51.  On October 4, 2023, the Fifth

Circuit heard oral argument and took the case under submission.  Exh. A (App. Dkt. # 117).  On

October 11, Texas filed the instant motion to dismiss, seeking dismissal for failure to state a claim

and for lack of subject-matter jurisdiction.  Dkt. # 52.

## II.      THE PRELIMINARY INJUNCTION ORDER

In granting a preliminary injunction, this Court rejected Texas's arguments that foreign

Plaintiffs and Jane Doe lack standing.  Addressing Doe, this Court explained that they have

standing because they "seek to continue performances in adult videos with wide audiences,"

whereas the Act "sets restrictions on when and how adult videos can be posted" and "risks

deterring adults from visiting the websites."  Order at 9-10.  Addressing foreign Plaintiffs, this

Court explained that "the foreign Plaintiffs here seek to exercise their First Amendment rights only

as applied to their conduct inside the United States and as a preemptive defense to civil

prosecution."  *Id.* at 14.  "As regulated by H.B. 1181, their speech and conduct occurs in Texas."

*Id.* at 15.  As to Section 230, this Court explained that the "[c]ases that do discuss Section 230,

dealing with conduct that occurs domestically, have extended the law's protection to foreign

publishers."  *Id.* at 71.  And this Court also noted that "[b]eyond their own First Amendment

injuries, Plaintiffs have standing for their overbreadth challenge."  *Id.* at 12.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), "[m]otions to dismiss for failure to state

a claim are appropriate when a defendant attacks the complaint because it fails to state a legally

cognizable claim."  *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001).  "A complaint

should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff

can prove no set of facts in support of his claim which would entitle him to relief."  *Id* (cleaned

up).  Thus, "the plaintiff's complaint is to be construed in a light most favorable to the plaintiff,

and the allegations contained therein are to be taken as true." *Id* (cleaned up).  "[T]he district court

must examine the complaint to determine whether the allegations provide relief on any possible

theory." *Id* at 162.

Similarly, if a motion made under Rule 12(b)(1) for lack of subject-matter jurisdiction is

based on the pleadings, "all well-pleaded facts are taken as true and all reasonable inferences must

be made in the plaintiff's favor."  *Haverkamp v. Linthicum*, 6 F.4th 662, 668–69 (5th Cir. 2021).

However,  "[l]ack of subject matter jurisdiction may be found in any one of three instances: (1)

the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record;

or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed

facts."  *Ramming*, 281 F.3d at 161.  Accordingly, this Court may defer motions for which further

factual development would be appropriate.  *See* Federal Rule of Civil Procedure 12(i) ("any

defense listed in Rule 12(b)(1)–(7) . . . must be heard and decided before trial unless the court

orders a deferral until trial").

## ARGUMENT

I.    **TEXAS'S REHASHED ARGUMENTS FAIL TO SHOW THAT FOREIGN
      PLAINTIFFS LACK STANDING**

As an initial matter, the standing inquiry ends once it is established that at least one plaintiff

has standing.  *See Massachusetts v. E.P.A.*, 549 U.S. 497, 517–26 (2007); *McAllen Grace Brethren

Church v. Salazar*, 764 F.3d 465, 471 (5th Cir. 2014).  Because some plaintiffs indisputably have

standing—including Paper Street Media, LLC, a Florida-based operator of adult websites—

Texas's renewed challenge on this ground remains misdirected.  *See* Complaint at ¶ 19.  That aside,

Texas's arguments fail on their own terms, regardless of whether they are deemed as challenges to the merits or to jurisdiction.[2]

### A.      Foreign Plaintiffs Can Invoke § 1983 For Speech In The United States

Texas argues (Mot. at 3-4) that foreign Plaintiffs cannot rely on § 1983 because they are not "within the jurisdiction" of the United States.  That is incorrect.  As this Court stated, "[i]t would make little sense to allow Plaintiffs to exercise First Amendment rights as a defense in litigation but deny them the ability to raise a pre-enforcement challenge to imminent civil liability on the same grounds."  Order at 15.  This Court's reasoning is backed by precedent.  Assuming § 1983 applies only domestically, this case involves a domestic application.  Plaintiffs' speech and Texas's regulation alike are grounded in Texas.  As both the Supreme Court and the Fifth Circuit have made clear, whether a federal statute applies to a foreign plaintiff depends on where the conduct relevant to the statute's "focus" is occurring.  *Abitron Austria GmbH v. Hetronic Int'l, Inc.*, 600 U.S. 412, 422 (2023); *Adhikari v. Kellogg Brown & Root, Inc.*, 845 F.3d 184, 197 (5th Cir. 2017).  This is so "regardless of whether the statute in question regulates conduct, affords relief, or merely confers jurisdiction."  *RJR Nabisco, Inc. v. Eur. Cmty.*, 579 U.S. 325, 337 (2016) (foreign plaintiffs can invoke RICO's cause of action for domestic injuries); *see also Morrison v. Nat'l Australia Bank Ltd.*, 561 U.S. 247, 266 (2010) (foreign plaintiffs can invoke section 10(b) of the Securities Exchange Act for sales on American stock exchanges); *Yegiazaryan v. Smagin*, 599 U.S. 533, 549 (2023) (foreign plaintiff alleged a domestic injury under RICO); *WesternGeco LLC v. ION Geophysical Corp.*, 138 S. Ct. 2129, 2138 (2018) ("[t]he conduct in this case that is relevant to [the Patent Act's] focus clearly occurred in the United States").

---

[2]  Throughout its brief, Texas is less than clear about which of its arguments go to the merits and which to jurisdiction.  Either way, its arguments fail and should be rejected.

This Court need not decide which conduct is the focus of § 1983.  Since "[t]he purpose of § 1983 is to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights," its focus is on *either* the state's unlawful actions *or* the plaintiff's protected conduct.  *Wyatt v. Cole*, 504 U.S. 158, 161 (1992).  Here, *both* occur in Texas.  There is no question, therefore, that § 1983 authorizes Plaintiffs' claims.  Moreover, the overbreadth doctrine separately authorizes Plaintiffs to invoke § 1983, because it empowers Plaintiffs to protect the First Amendment rights of adults physically in Texas.  *See Virginia v. Am. Booksellers Ass'n, Inc.*, 484 U.S. 383, 383 (1988) (permitting an overbreadth challenge pursuant to § 1983).  For multiple reasons, therefore, Texas is unable to show that foreign Plaintiffs lack a cause of action to enforce constitutional and federal rights.

### B.       Foreign Plaintiffs Can Assert Constitutional Claims For Speech In The United States

Texas similarly argues (Mot. at 4-8) that foreign Plaintiffs have no constitutional or federal rights because they are not based in the United States.  That is similarly incorrect.  As this Court stated, "Plaintiffs in the instant case do operate in the United States for all purposes relevant to this litigation."  Order at 15.  In arguing otherwise, Texas reasserts its errant interpretation of *Agency for International Development v. Alliance for Open Society International, Inc.*, 140 S. Ct. 2082 (2020) (*AOSI II*).  Texas notes (Mot. at 5-6) that the plaintiffs in *AOSI II* were domestic entities that invoked the rights of their foreign affiliates to be free of compelled speech.  This observation is true but irrelevant, for it has no bearing on *AOSI II*'s holding that foreign entities "operating abroad" lack constitutional rights.  140 S. Ct. at 2087.

Texas relatedly suggests (Mot. at 6-8) that foreign Plaintiffs *are* operating abroad in the relevant sense, because operating a website that carries speech into Texas triggers no constitutional protections.  Yet Texas cites no law for this proposition.  Instead, Texas argues that a contrary

result would have permitted the foreign affiliates in *AOSI II* to "avail themselves of constitutional protections by posting the required policy statement on their website." Mot. at 6. But that is a non sequitur. The law in *AOSI II* did not compel speech within the United States. *See* 140 S. Ct. at 2085. Rather, it damaged the foreign entities' work "combat[ing] HIV/AIDS abroad" by requiring them to take a stance against prostitution. *Id.* Here, the Act restricts and compels foreign Plaintiffs' speech *in Texas*. For that reason, Plaintiffs' speech is just like that of foreign defendants that the Ninth Circuit held protected in *Thunder Studios v. Kazal*, because "the recipients of their speech and speech-related conduct" were in the United States. 13 F.4th 736, 743 (9th Cir. 2021) (distinguishing *AOSI II*); *see also* Order at 17 (citing *Thunder Studios*).

While Texas attempts to distinguish *Thunder Studios*, it mischaracterizes the facts and proposes a distinction that would eviscerate protections for online expression. Texas notes that some speech in *Thunder Studios* was "literally on the streets of California" (Mot. at 7), such as a hired van bearing a message on its side. *See* 13 F.4th at 745. But Texas omits that the foreign defendants also created "a website to publish these emails [about plaintiffs] online." *Id.* at 741. "[W]hen published on the 'vast democratic forums of the Internet,' [such speech] fall[s] squarely within the protection of the First Amendment." *Id.* at 745 (quoting *Packingham v. North Carolina*, 582 U.S. 98, 104 (2017)). Texas then retreats to the suggestion (Mot. at 7-8) that, because cyberspace is not physically confined, speech over the Internet does not occur *anywhere*, which is why it supposedly is not in the United States. But the upshot would be that online speech is not protected—contrary to *Reno v. ACLU*, 521 U.S. 844 (1997), *Ashcroft v. ACLU*, 542 U.S. 656 (2004), and the Supreme Court's more recent admonition to "exercise extreme caution before suggesting that the First Amendment provides scant protection for access to vast networks in that medium." *Packingham v. North Carolina*, 582 U.S. 98, 105 (2017) (striking a law preventing sex offenders from accessing social media). Notably, Texas offers no comfort relative to this Court's

concern that its position would "drastically expand the government's ability to restrict ideas" by largely immunizing regulation of online speech from constitutional challenge. Order at 17. "States could ban, for example, the Guardian or the Daily Mail based on their viewpoint, because those newspapers are based in the United Kingdom." *Id.* That is Texas's perverse conception, but it is not the law.

Texas also reasserts its argument (Mot. at 8 & n.3) that two of the foreign Plaintiffs lack standing, based on a declaration submitted in a different case to show lack of personal jurisdiction in California.[3] That, too, is incorrect. No detour into the merits of a hypothesized personal-jurisdiction defense in a different case can alter the correct result in this one. Personal jurisdiction is a claim-specific affirmative defense; it is neither at issue before this Court nor capable of affecting this Court's subject-matter jurisdiction. What matters to a pre-enforcement challenge is "the threat of enforcement . . . lead[ing] to First Amendment chill." Order at 16 n.2. Indeed, Texas cannot deny its own avowed intent to enforce the Act against foreign Plaintiffs. As Texas has repeatedly confirmed, it intends to "subject[] them to real or imminent liability here[.]" *Id.* at 15. That requisite compliance with the Act would likely *create* personal jurisdiction in Texas, as this Court noted, only underscores the threat to foreign Plaintiffs. *See id.* at 16 n.2. Accordingly, "for all purposes relevant to this litigation," foreign Plaintiffs' speech occurs in Texas. *Id* at 15.

Finally, recognizing that Plaintiffs have standing to challenge the Act on behalf of Texas adults, Texas argues (Mot. at 6-7) that the right of Texas adults to receive speech is "not implicated" and "do[es] not create a constitutional claim for the Foreign websites." But that is obviously wrong, given black-letter law specifically authorizing overbreadth challenges in the First Amendment context, combined with the facts alleged in the Complaint and already found by

---

[3] The declaration refers to Plaintiffs NKL Associates, s.r.o. and WebGroup Czech Republic, a.s.

this Court.  Complaint at ¶¶ 34-43, 79; Order at 37-43, 79.  And it is specious for Texas to assert

that adults face no injury because "no one in Texas has lost their access to any content."  Mot. at

6.  Burdens and chills, no less than bans, inflict First Amendment injuries.  *See, e.g.*, *U.S. v.*

*Playboy Ent. Grp.*, 529 U.S. 803, 812 (2000).  Moreover, "'where a speaker exists, the protection

afforded is to the communication, to its source and to its recipients both.'"  Order at 17 (quoting

*Va. State Bd. of Pharmacy*, 425 U.S. 748, 756 (1976)).  That is why the overbreadth doctrine

empowers Plaintiffs to protect the rights of recipients of their speech, including the rights of Texas

adults here.  *See Virginia*, 484 U.S. at 383; *U.S. v. Hicks*, 980 F.2d 963, 969 (5th Cir. 1992) ("[T]he

rationale of the overbreadth doctrine is to protect the expressive rights of third parties who are not

before the court.").  For all these reasons, there is no basis to dismiss foreign Plaintiffs' claims.

## II.    TEXAS SIMILARLY FAILS TO SHOW THAT JANE DOE LACKS STANDING

Texas repeats its argument (Mot. at 9-10) that because the Act "requires no change in Doe's

behavior" and ensures her speech will reach only adults, the Act inflicts no injury.  But that

argument ignores the Act's flaws and chilling effects.  Complaint at ¶¶ 34-45, 57-58, 61-53.  The

Act fails to achieve the claimed match between adult content and an adult audience, because it

fails to regulate search engines and social media sites, fails to prevent minors from evading it

through ready means at their disposal, and goes out of its way to deter adults with compelled health

warnings.  *Id.*  By designedly chilling Doe's adult audience, the Act inflicts a core First

Amendment injury, as this Court previously found.  Order at 10.  The language that Texas

continues to cite from *Fraser* is irrelevant.  Mot. at 10 (citing *Bethel Sch. Dist. No. 403 v. Fraser*,

478 U.S. 675, 684 (1986)).  *Fraser* upheld disciplinary procedures for students who give sexually

explicit speeches to their peers.  478 U.S. at 677-78, 680.  Whereas *Fraser* said nothing about the

minimum injury necessary for standing, *Reno, Ashcroft, United States v. Playboy Entertainment*

*Group*, and *Sable Communications of California v. FCC* all confirm that regulation of expression

across electronic and online media poses cognizable First Amendment injury when it burdens adult access under auspices of protecting minors.  521 U.S. at 874; 542 U.S. at 665; 529 U.S. at 811-14; 492 U.S. 115, 126 (1989).  Considering this on-point precedent, Texas comes nowhere near justifying dismissal of Doe's claim.

### III.   TEXAS FAILS TO SHOW THAT FOREIGN PLAINTIFFS CANNOT INVOKE SECTION 230

Texas reasserts that, because foreign Plaintiffs cannot (by its account) rely on § 1983, they have no cause of action to assert a Section 230 claim.  Mot. at 10.  But Texas's foundational premise is false, for reasons already noted (*see supra* at 5-7).  As this Court explained, "foreign website Plaintiffs may claim the protection of Section 230 when failing to do so would subject them to imminent liability for speech that occurs in the United States."  Order at 72.  This Court is correct, according to the same analysis of statutory focus that allows foreign Plaintiffs to invoke § 1983.  *See supra* at 5-7.   Foreign Plaintiffs can invoke Section 230 because its focus is on providing immunity in American courts.  *See, e.g.*, *Gonzalez v. Google LLC*, 2 F.4th 871, 888 (9th Cir. 2021)) ("the conduct relevant to § 230's focus is entirely within the United States"), *rev'd sub nom on other grounds, Twitter, Inc. v. Taamneh*, 598 U.S. 471 (2023); *Force v. Facebook, Inc.*, 934 F.3d 53, 74 (2d Cir. 2019) ("The regulated conduct—the litigation of civil claims in federal courts—occurs entirely domestically in its application").  The only other argument Texas makes is that MG Premium Ltd is not entitled to Section 230 immunity.  Mot. at 10.  But Plaintiffs agree that MG Premium Ltd is not entitled to Section 230 immunity for the reason this Court previously found.  Order at 73.  Because only Plaintiffs that do not produce the adult content on their websites seek Section 230's protections, no further relief is necessary or warranted in this regard.

## IV.    PLAINTIFFS' EXCESSIVE FINES CLAIM IS RIPE BECAUSE A FINE OF ANY AMOUNT WOULD BE EXCESSIVE

Texas cannot dispute that the Excessive Fines Clause, as incorporated against the States through the Fourteenth Amendment, applies to civil penalties. *Timbs v. Indiana*, 139 S. Ct. 682, 686, 689-91 (2019).  Accordingly, it does not dispute that Plaintiffs state a claim under Rule 12(b)(6).  Instead, Texas argues (Mot. at 11) that challenges under the Excessive Fines Clause are not ripe until it is clear that a specific or minimum amount will be assessed.   As an initial matter, Texas overstates the rule.  The unpublished language cited by Texas (Mot. at 11), that "challenges under the Excessive Fines Clause are not ripe before a 'final forfeiture order or judgment has been entered,'" *Schanzle v. Haberman*, 831 F. App'x 103, 108 (5th Cir. 2020), traces to an Eighth Circuit case explaining when it is premature to *appeal* an Excessive Fines claim that *is* ripe before the district court. *See United States v. Covey*, 232 F.3d 641, 646 (8th Cir. 2000).  The extreme rule suggested by Texas is thus inapposite, particularly in a pre-enforcement challenge.  As the most reasoned decision cited by Texas shows, courts addressing a pre-enforcement challenge must assess the "immediately impending" fine. *Cheffer v. Reno*, 55 F.3d 1517, 1523 (11th Cir. 1995).

Here, a fine of "any size" would be excessive. *See Sierra Club v. Khanjee Holding (US) Inc.*, 655 F.3d 699, 705 (7th Cir. 2011).   Because the offense created by the Act is unconstitutionally imposed, in violation of the First and Fourteenth Amendments (*see* Complaint at ¶¶ 3-5), any fine is necessarily excessive. *Cf. State v. Branstetter*, 181 Or. App. 57, 66 & at n.5 (2002) (Armstrong, J., concurring) ("because of his acquittal, any fine would be excessive").  Indeed, if a statute would "infringe on appellants' First Amendment right to free speech" and "threaten any of their lawful expressive activities," courts should be particularly hesitant to dismiss an Excessive Fines claim. *Cheffer*, 55 F.3d at 1524.

Furthermore, drawing all inferences in Plaintiffs' favor, Plaintiffs face fines sufficient to violate the Eight Amendment unless Texas agrees to seek only nominal penalties. *See Haverkamp*, 6 F.4th at 668–69 (inferences must favor the plaintiff on a 12(b)(1) motion based on the pleadings). As Texas acknowledges, a fine "violates the Excessive Fines Clause if it is grossly disproportional to the gravity of a defendant's offense." *United States v. Bajakajian*, 524 U.S. 321, 334–35 (1998). Here, the gravity of the offense is *de minimis*. "After *Bajakajian*, the factors this court considers" include "the essence of the defendant's crime and its relationship to other criminal activity" and "the nature of the harm resulting from the defendant's conduct." *United States v. Suarez*, 966 F.3d 376, 385 (5th Cir. 2020) (cleaned up). The offense here is not related to any illegal activity. Indeed, mere failure to espouse Texas's propaganda—while providing adult content to an adult audience—triggers daily fines measured in tens of thousands of dollars. Given that Texas is penalizing expression that is otherwise perfectly legal (and irreproachable under settled law), it should be dispositive that the purported harm is negligible at most. The Act does not meaningfully prevent minors from seeing adult content, including the content on Plaintiffs' own websites as conveyed by search engines, while expressly tilting at supposed harms lacking any empirical or scientific basis. Complaint at ¶¶ 34-38, 45, 57-58, 61-63. In these circumstances, it is not credible that enforcement of the Act prevents real-world harms. As such, a fine assessed under the Act "bears no articulable correlation to any injury suffered by the Government" or by minors. *Bajakajian*, 524 U.S. at 340. Consequently, unless Texas agrees to seek only nominal penalties to match the *de minimis* gravity of the purported offense, any plausible fine under the Act is constitutionally excessive. Hence, for multiple reasons, there is no basis for dismissal at this stage.

## **CONCLUSION**

Plaintiffs respectfully submit that Texas's motion to dismiss should be denied and that this case should proceed expeditiously to final judgment.  Assuming *arguendo* that this Court credits Texas's arguments, leave to amend should be freely granted.  *Stripling v. Jordan Prod. Co., LLC*, 234 F.3d 863, 873 (5th Cir. 2000).  Plaintiffs could potentially revise their allegations to address Texas's concerns—for instance, by alleging further facts about foreign Plaintiffs' speech. However, while such amendments are the most that might follow from Texas's instant arguments, they should be unnecessary for the reasons previously found by this Court and noted herein. Indeed, should this Court consider further factual development useful to its assessment, it may postpone consideration of the motion until the close of discovery.  *See* Fed. R. Civ. Proc. 12(i).

DATED: October 25, 2023

QUINN EMANUEL URQUHART &
SULLIVAN, LLP

By          /s/     *Scott L. Cole*

Scott L. Cole (Bar No. 00790481)
scottcole@quinnemanuel.com
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
300 West 6th Street
Suite 2010
Austin, TX 78701
Telephone: (737) 667 6100
Fax: (737) 667 6110

Michael T. Zeller (*pro hac vice*)
Thomas Nolan (*pro hac vice*)
Arian Koochesfahani (*pro hac vice*)
michaelzeller@quinnemanuel.com
thomasnolan@quinnemanuel.com
ariankoochesfahani@quinnemanuel.com
QUINN EMANUEL URQUHART
& SULLIVAN, LLP
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017-2543
Telephone: (213) 443-3000
Fax: (213) 443-3100

Derek L. Shaffer (*pro hac vice*)
derekshaffer@quinnemanuel.com
QUINN EMANUEL URQUHART
& SULLIVAN, LLP
1300 I Street NW, Suite 900
Washington, DC 20005
Telephone: (202) 538-8000
Fax:  (202) 538-8100

Jeffrey Keith Sandman (*pro hac vice*)
jeff.sandman@webbdaniel.law
WEBB DANIEL FRIEDLANDER LLP
5208 Magazine St Ste 364
New Orleans, LA 70115
Phone: (978) 886-0639

## CERTIFICATE OF SERVICE

I hereby certify that, on October 25, 2023, all counsel of record who have appeared were served with a copy of the foregoing, and all documents filed concurrently and attached hereto, via the Court's CM/ECF system.

Dated:  October 25, 2023          */s/ Arian Koochesfahani*
                                   Arian Koochesfahani

15