# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

| | | |
|---|---|---|
| FREE SPEECH COALITION, INC, et. al., | § § § | |
| *Plaintiffs*, | § § | |
| v. | § § | Civil Action No. 1:23-cv-00917-DAE |
| KEN PAXTON, in his official capacity as Attorney General for the State of Texas, | § § § § | |
| *Defendant*. | § | |

## DEFENDANT'S REPLY IN SUPPORT OF
## PARTIAL MOTION TO DISMISS

### SUMMARY

Plaintiffs fail to produce a single case where a foreign entity prevailed on a §1983 claim. This failure is fatal to each of the Foreign Websites' §1983 causes of action.

And the Foreign Websites do not have a constitutional right to show pornography to Texas children. Meanwhile, the constitutional rights of adult Texans are independently protected and cannot be asserted—or commandeered—by the Foreign Websites.

Plaintiffs' Response (ECF 53) also declines to clarify Jane Doe's constitutional claims. Plaintiffs suggest that perhaps an amended pleading could present some heretofore unknown theory of constitutional injury to Doe. That seems unlikely. Currently, Plaintiffs' Complaint provides no clues to what that theory might be.

Plaintiffs acknowledge that their Complaint cannot be trusted in its assertion that Plaintiff MG Premium Ltd enjoys Section 230 protection from liability. But they stop short of acknowledging the full insufficiency of their claims. None of the Foreign Websites is entitled to assert an affirmative

Section 230 claim because each lacks the necessary ability to assert the underlying §1983 cause of action.

Finally, Plaintiffs' arguments in support of their Eighth Amendment claim bolster Defendant's Motion. Plaintiffs suggest that a fine levied in any amount would *ipso facto* violate the Eighth Amendment because Texas Civil Practice and Remedies Code Chapter 129B (CPRC 129B) cannot be constitutionally enforced. But a Court would not impose a fine to enforce a statute it deemed unconstitutional. So, Plaintiffs must concede that there is no immediately impending excessive fine for this Court to review.

## ARGUMENT AND AUTHORITIES

### I.   Foreign Websites' §1983 Claims Should Be Dismissed.

#### A.   The Foreign Websites cannot bring a valid §1983 claim.

The Foreign Websites use §1983 to undergird each of their claims. But to bring a valid §1983 claim, a plaintiff must show, *inter alia*, that they (1) are a "citizen of the United States or other person within the jurisdiction thereof," and (2) were deprived of rights secured by the United States Constitution or laws. 42 U.S.C. § 1983.

The Foreign Websites do not claim to meet these elements. Instead, the Foreign Websites defend their right to bring §1983 claims against the State by citing exclusively to cases where foreign plaintiffs did not (1) bring §1983 claims or (2) sue the State. *See* ECF 53, p. 10 (citing *Abitron Austria GmbH v. Hetronic Int'l, Inc., 600 U.S. 412, 422 (2023); Adhikari v. Kellogg Brown & Root, Inc., 845 F.3d 184, 197 (5th Cir. 2017)*; RJR Nabisco, Inc. v. Eur. Cmty., 579 U.S. 325, 337 (2016); *Yegiazaryan v. Smagin*, 599 U.S. 533, 549 (2023); and *WesternGeco LLC v. ION Geophysical Corp.*, 138 S. Ct. 2129, 2138 (2018)).[1]

---

[1] Page numbers in this Reply reference pagination provided through the court filing system, not the pagination on the actual pleadings.

These cases have nothing to say about whether foreign entities can bring a valid §1983 claim to assert constitutional rights against the State. More to the point, they do not help the Foreign Websites meet their burden to show they have pleaded a valid §1983 claim premised on violations of their supposed constitutional rights. That these cases reflect Plaintiffs' best counter to the Supreme Court's clear holding in *AOSI II* is instructive. *See Agency for International Development v. Alliance for Open Society International, Inc.*, 140 S. Ct. 2082 (2020).

      B.   The Foreign Websites do not have First Amendment rights.

Plaintiffs surmise that if foreign purveyors of pornography do not have constitutional rights, then the "upshot would be that online speech is not protected." ECF 53 p. 13. Their alarmism is unwarranted.

A finding that Foreign Websites do not have the constitutional right to show Texas children pornography does not mean adults in Texas lose their constitutional right to access pornography, or to assert such a right in court. Nor does it mean that the U.S. government could restrict the speech of the Daily Mail because it is based in the United Kingdom. *See* ECF 53, p. 13 citing ECF 36, p. 17. Leaving aside that the Daily Mail has employees and offices in the U.S.[2], this same argument was made by the minority and rejected by the majority in *AOSI II*. *See* 140 S. Ct. at 2098 (J. Breyer, dissenting).

As has always been the case, U.S. residents can still sue the State to assert their right to hear speech from foreign speakers. *See Kleindienst v. Mandel*, 408 U.S. 753 (1972). But the Foreign Websites do not have authority to bring suit on behalf of Texas residents; nor do they receive by proxy the constitutional rights of Texans. *See* ECF 52, pp. 6-8.

---

[2] *Mireskandari v. Daily Mail & Gen. Tr. PLC*, No. CV1202943MMMSSX, 2013 WL 12114762, at *1 (C.D. Cal. Oct. 8, 2013)

*Virginia v. American Booksellers Association*, 484 U.S. 383 (1988), on which Plaintiffs faithfully and mistakenly rely, is not to the contrary. *See* ECF 53, p. 14. In *American Booksellers*, the Supreme Court accepted that plaintiff bookstores could assert the constitutional interests of their customers. *See* 484 U.S. at 642-43. In so doing, the Supreme Court simply acknowledged that the plaintiff bookstores had third-party standing. *See Harris v. Evans*, 20 F.3d 1118 (11th Cir. 1994) (summarizing *American Booksellers* as holding "bookstores have third-party standing to assert First Amendment rights of adult book buyers"). Third-party standing requires a "close relationship between the party asserting the right and the person who possesses the right." *Kowalski v. Tesmer*, 543 U.S. 125, 125 (2004). The Foreign Websites—and Plaintiffs generally—have neither alleged nor shown that they share a "close relationship" with Texas visitors to their pornographic websites.[3] Indeed, they do not even know whether those visitors are adults.

## II.   Jane Doe's Constitutional Claims Should Be Dismissed.

Plaintiffs' Response fails to highlight where in the Original Complaint Jane Doe has pleaded a valid constitutional claim. Moreover, Plaintiffs' assertion that *Bethel Sch. Dist. No. 403 v. Fraser*, 478 675 (1986), has no relevance here is highly suspect. ECF 53, p. 10. Plaintiffs cannot seriously argue that the Supreme Court's holding that "First Amendment jurisprudence has acknowledged limitations on the otherwise absolute interest in the speaker in reaching an unlimited audience where the speech is sexually explicit and the audience may include children" is irrelevant to Jane Doe's First Amendment claim premised on the supposed limitations CPRC 129B places on Doe's interest in reaching an unlimited audience where Doe's speech is sexually explicit and Doe's audience may include children. *See Fraser*, 478 at 684.

---

[3] Notably, the Plaintiff websites do not even claim to bring suit on behalf of their viewers. And no Plaintiff claims third-party standing.

Finally, Plaintiffs' reliance on *United States v. Playboy Entertainment Group*, 529 U.S. 803 (2000), and *Sable Communications of California v. FCC, 492 U.S. 115 (1989),* as examples of how Doe may have a theoretical constitutional injury stemming from regulation of explicit broadcasts proves the opposite point. Those cases were brought by media companies, not performers on the regulated platforms who—like Doe—would be unable to articulate a valid constitutional claim.

## III.   Foreign Websites' Communications Decency Act Claim Should Be Dismissed.

Plaintiffs acknowledge that they accidently pleaded enough facts to show that MG Premium Ltd does not have a valid Section 230 claim. ECF 53, p. 15. This admission clarifies that Section 230 should not provide a magic bullet which a website can assert to preempt litigation. It also highlights the need for discovery to ferret out a valid Section 230 defense from a sham one.

Plaintiffs cite two cases to bolster their unsupported contention that Foreign Websites can assert a valid Section 230 claim. ECF 53, p. 15 (citing *Gonzalez v. Google LLC*, 2 F.4th 871, 888 (9th Cir. 2021) and *Force v. Facebook, Inc.*, 934 F.3d 53, 74 (2d Cir. 2019)). But again, their cited cases undercut their argument. Neither case involves a plaintiff website suing the State. *Id.* And more to the point—Facebook and Google are U.S. companies.

## IV.   Plaintiffs' Eighth Amendment Claims Should Be Dismissed.

As an initial matter, Plaintiffs' argument that a "fine of 'any size' would be excessive," does not quote the finding of a court, but instead a court's recitation and rejection of a plaintiff's argument to that effect. ECF 53, p. 16; *Sierra Club v. Khanjee Holding (US) Inc., 655 F.3d 699, 705 (7th Cir. 2011).* Indeed, *Khanjee* makes clear that an Eighth Amendment challenge to a fine—regardless of the amount—is only ripe if the fine is immediately impending. *Id.* ("As Khanjee admits later in its reply, its argument is that 'a fine of any size against Khanjee is excessive.' Khanjee could have, but did not, make that argument to the district court, in response to Sierra Club's motion for civil penalties. At that time, the imposition of the penalty was 'immediately impending,' and Khanjee's claim was ripe").

Moreover, Plaintiffs' contention that a fine levied pursuant to CPRC 129B is *ipso facto* excessive because the statute is unconstitutional further shows that their Eighth Amendment claim is not ripe. To understand why, one need look no further than Plaintiffs' unusual citation to the concurring opinion from *State v. Bransetetter* issued by the Oregon Court of Appeals. 181 Or. App. 57, 66 & at n.5 (2002) (Armstrong, J., concurring). As that concurrence argues, "The theme of [Branstetter's] excessive fines argument is, quite properly, that, because of his acquittal, *any* fine would be excessive. If he is correct, there is no need for an extensive excessive fines analysis. If he is incorrect, an excessive fines analysis is irrelevant." *Id.* By analogy, the same is true here. A court will only assess a fine pursuant to CPRC 129B if it determines the statute is constitutional. Only then would a constitutional analysis of that specific fine be appropriate.

Thankfully, all parties agree that *Cheffer v. Reno*, 55 F.3d. 1517, 1523 (11th Cir. 1995), properly guides this honorable Court. See ECF 53, p. 16. In affirming the dismissal of the plaintiffs' Eighth Amendment claims, the Eleventh Circuit held:

> Because the [statute] sets only the maximum penalties, leaving the courts with broad discretion to determine…the amount of fines or civil penalties to be assessed in each case…, we cannot determine from the face of the Act what penalties will actually be imposed. We can only speculate as to whether the future applications urged by appellants will come to pass. Moreover, without the facts of a particular violation, we cannot decide whether a specific fine will be excessive…as to violate the Eighth Amendment. Thus, such inquiry is better postponed until the issues are presented in the more concrete circumstances of a challenge to the Act as applied. *Id.* at 1524.

### CONCLUSION

For the foregoing reasons, the Court should grant Defendant's Partial Motion to Dismiss.

Respectfully Submitted,

**KEN PAXTON**
Attorney General

**BRENT WEBSTER**
First Assistant Attorney General

**GRANT DORFMAN**
Deputy First Assistant Attorney General

**RALPH MOLINA**
Deputy Attorney General for Legal Strategy

**RYAN WALTERS**
Chief, Special Litigation Division

**JOHN RAMSEY**
Texas Bar No. 24051227

**KELSEY L. WARRREN**
Texas Bar No. 24095736

Assistant Attorneys General
General Litigation Division
Office of the Attorney General
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
(512) 463-2120/Fax (512) 320-0667
john.ramsey@oag.texas.gov
kelsey.warren@oag.texas.gov

**COUNSEL FOR DEFENDANT**

### CERTIFICATE OF SERVICE

I hereby certify that on November 1, 2023, a true and correct copy of the foregoing document was served via the Court's electronic filing system to all counsel of record.

JOHN RAMSEY
Assistant Attorney General