**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| FREE SPEECH COALITION, INC, et. al., § § | |
|     *Plaintiffs*, | § § | |
| v. | § § | Civil Action No. 1:23-cv-00917-DAE |
| KEN PAXTON, in his official capacity as Attorney General for the State of Texas, | § § § § | |
|     *Defendant*. | § | |

### DEFENDANT'S AMENDED PARTIAL MOTION TO DISMISS

Ken Paxton, in his official capacity as Attorney General for the State of Texas, files this Amended Partial Motion to Dismiss.

### INTRODUCTION

For half a century, it has been a criminal offense in Texas—as in many, if not all, States—to distribute obscenity to minors. Tex. Penal Code § 43.24(b) (codifying Acts 1973, 63rd Leg., ch. 399, § 1, eff. Jan. 1, 1974). The Texas Legislature, however, received evidence this past Session that due to the growing ubiquity of such materials on the internet, "approximately one in five youth experience unwanted online exposure to sexually explicit material." Bill Analysis, C.S.H.B. 1181 (2023). Concerned about the impact such exposure has on the developing minds of Texas children and adolescents, the Legislature required commercial purveyors of online pornography to verify the age of individuals visiting their websites before displaying sexual material harmful to minors. *See* Act of June 12, 2023, Ch. 676, § 1. Known as H.B. 1181, the statute also required these websites

13

to warn of the "potential[]" risks associated with viewing such material, including addiction and other mental-health disorders. *Id.*

Nothing in Texas Civil Practice and Remedies Code section 129B prohibits anyone from creating, producing, publishing, or accessing pornography.

## PLAINTIFFS

Plaintiffs in this case are disparate. They are: (1) two foreign-based companies that purvey free and open access to pornography ("Foreign Websites"); and (2) Free Speech Coalition (FSC), presuming the ability to sue on behalf of its members.

## PLAINTIFFS' CLAIMS

All Plaintiffs assert a § 1983 claim alleging that H.B. 1181 violates their First Amendment right to free speech and their Fourteenth Amendment right to due process. Additionally, all Plaintiffs assert a § 1983 claim alleging that H.B. 1181 violates their Eighth Amendment right against Excessive Fines. Finally, FSC and certain Foreign Websites assert a preemptory challenge to Section 129B based on the Communications Decency Act (CDA).

Defendant moves to dismiss all claims asserted by the Foreign Websites.

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) governs motions to dismiss for failure to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6). To avoid dismissal under Rule 12(b)(6), a plaintiff must plead sufficient facts to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

2

*Id*. While courts must accept all factual allegations as true, they "do not accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions." *Plotkin v. IP Axess Inc.*, 407 F.3d 690, 696 (5th Cir. 2005).

Federal Rule of Civil Procedure 12(b)(1) governs motions to dismiss for lack of subject-matter jurisdiction. FED. R. CIV. P. 12(b)(1). When the court lacks the statutory or constitutional power to adjudicate a case, the case is properly dismissed for lack of subject-matter jurisdiction. *Hooks v. Landmark Indus., Inc.*, 797 F.3d 309, 312 (5th Cir. 2015). "The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). "Accordingly, the plaintiff constantly bears the burden of proof that jurisdiction does in fact exist." *Id.* "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." FED. R. CIV. P. 12(h)(3). The Eleventh Amendment bars suits in federal court against a state or one of its agencies, regardless of the relief requested, by anyone other than the federal government or another state. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984). Only when Congress validly abrogates a state's Eleventh Amendment immunity or the state consents to suit can a plaintiff sue the state. *Perez v. Region 20 Educ. Serv. Ctr.*, 307 F.3d 318, 326 (5th Cir. 2002).

**MOTION TO DISMISS**

**I. Foreign Websites' § 1983 Claims Should Be Dismissed for Failure to State a Claim and Lack of Subject Matter Jurisdiction.**

The Foreign Websites use § 1983 to bring claims under the First, Eighth, and Fourteenth Amendments, as well the Supremacy Clause (related to the Communications Decency Act). To bring a valid § 1983 claim, a plaintiff must show, *inter alia*, that they (1) are a "citizen of the United States or other person within the jurisdiction thereof," and (2) were deprived of rights secured by

3

the United States Constitution or laws. 42 U.S.C. § 1983. But the Foreign Websites are not persons within the jurisdiction of the United States. Nor do they have rights secured by the U.S. Constitution.

> A. The Foreign Websites are not persons within the jurisdiction of the United States.

The Foreign Websites are incorporated in foreign nations, where they have their principal places of business. Amended Complaint, ¶¶ 7-8. The Foreign Websites plead no facts to suggest they have operations, offices, or employees within the United States. In fact, their pleadings are to the contrary. *Id.* The Foreign Websites must affirmatively plead each element of their claims. *See* 407 F.3d ta 696. Because the Foreign Websites have not sufficiently pleaded that they are parties protected by § 1983, the Court should dismiss each of their § 1983 claims.

> B. The Foreign Websites Do Not Have Constitutional Rights

In *Agency for Int'l Dev. v. All. for Open Soc'y Int'l, Inc. (AOSI II)*, the Supreme Court held "it is long settled as a matter of American constitutional law that foreign citizens outside U.S. territory do not possess rights under the U.S. Constitution." 140 S. Ct. 2082, 2086 (2020) (citing *Boumediene v. Bush*, 553 U.S. 723, 770–771 (2008)). The Supreme Court was adamant, restating its position at least 8 more times in an otherwise brief opinion.

> "But the Court has not allowed foreign citizens outside the United States…to assert rights under the U. S. Constitution." *Id.* "As foreign organizations operating abroad, plaintiffs' foreign affiliates possess no rights under the First Amendment." *Id.* at 2087. "In short, plaintiffs' foreign affiliates are foreign organizations, and foreign organizations operating abroad have no First Amendment rights." *Id.* at 2088. "[Domestic] plaintiffs cannot export their own First Amendment rights to shield foreign organizations from Congress's funding conditions." *Id.* at 2089. "Moreover, plaintiffs' proposed line-drawing among foreign organizations would blur a clear rule of American

4

law: Foreign organizations operating abroad do not possess rights under the U. S. Constitution." *Id.* "[T]he Court did not purport to override the longstanding constitutional law principle that foreign organizations operating abroad do not possess constitutional rights." *Id.* "[B]ecause foreign organizations operating abroad do not possess constitutional rights, those foreign organizations do not have a First Amendment right…." *Id.* "In sum, plaintiffs' foreign affiliates are foreign organizations, and foreign organizations operating abroad possess no rights under the U. S. Constitution." *Id.*

At issue in *AOSI II* was a law—known as the Policy Requirement—that prohibited the disbursement of government funds to aid organizations that did not adopt a policy explicitly opposing prostitution and sex trafficking. 140 S. Ct. 2082. In 2013, the Supreme Court struck down the Policy Requirement as it applied to domestic aid agencies. *Agency for Int'l Dev. v. Alliance for Open Society Int'l, Inc.*, 570 U.S. 205 (2013) ("AOSI I"). Seven years later, in *AOSI II*, the Supreme Court upheld the constitutionality of the Policy Requirement as it applied to the domestic agencies' foreign affiliates.

This Honorable Court's previous Ruling on Plaintiffs' Motion for Preliminary Injunction ("the Ruling") found *AOSI II* distinguishable from this "litigation in two critical ways." ECF 36, p. 14. First, the Ruling asserts that "Plaintiffs do not seek to challenge rule or policy making with extraterritorial effect, as the foreign Plaintiffs did in *AOSI [II]*." *Id.* But the plaintiffs in *AOSI II* were not "foreign plaintiffs." And they were not concerned with an "extraterritorial effect." *AOSI II*, 140 S.Ct. at 2085. They were United States aid agencies asserting their own constitutional claims. *Id.*

The *AOSI II* plaintiffs and their foreign affiliates shared the same name, trademarks and logos, funding sources, operating structure, and mission. *Id.* at 2094 (J. Breyer, dissenting). The plaintiffs

5

argued that a violation of their foreign affiliates' constitutional rights therefore amounted to a violation of the plaintiffs' constitutional rights. *Id.* The Supreme Court rejected this argument, reiterating that "plaintiffs' foreign affiliates are foreign organizations, and foreign organizations operating abroad have no First Amendment rights." *Id.* at 2088.

Second, the Ruling distinguishes this case from *AOSI II* because "[t]he foreign NGOs had no domestic operations and did not plan to convey their relevant speech into the United States." ECF 36, p. 14. The Ruling provides no citation for this factual distinction, and none can be found. *See AOSI II* at 2094. This second distinction likewise relies on the false premise that the plaintiffs in *AOSI II* were foreign organizations without operations in the United States. *Id.* Furthermore, the Ruling's implicit assertion that the Foreign Websites have "domestic operations" because they host a website is untenable. Were this true, the foreign organizations in *AOSI II* could avail themselves of constitutional protections by posting the required policy statement on their website, thereby "convey[ing] their relevant speech into the United States." [1]

Ultimately, the Ruling sidesteps *AOSI II* by assuming that the Foreign Websites operate within the U.S. But the Foreign Websites do not allege that they operate in the U.S. And, according to their own sworn statements, they do not.

> "The [foreign websites] do not have offices in the United States and are not registered to do business in [any] U.S. State." *Doe v. WebGroup Czech Republic, et al.*; Case No. 2:21-cv-02428-VAP-SK, U.S. (C.D. California 2020), ECF No. 134-1 (Dec. of Robert Seifert in support of Def. Mot. to Dismiss), [**Exhibit A** to this Motion] ¶ 3. They employ "no U.S. employees, own no U.S. property, rent no U.S. property, and pay no U.S. state or federal taxes." *Id.* The foreign websites "do not hold any U.S. bank accounts, have no U.S. mailing address or phone numbers, and do not have any designated agents residing in,

---

[1] Notably, the foreign organizations had websites accessible to U.S. residents and, in at least some instances, shared website addresses with their U.S.-based affiliates. *See Br. For Resp.*, *AOSI II*, 2020 WL 1154731 at *8 (U.S. Feb. 26, 2020).

domiciled in, or doing business from…the United States." *Id.* at ¶ 4. They do not have servers in the United States. *Id.* at ¶¶ 20-22. They "do not solicit videos from any particular country." *Id.* at ¶¶ 13, 19. Nor do they "aim [their pornographic websites] at any particular country. *Id.* at ¶¶ 12, 18. "[R]ather [their pornographic websites] are available to the entire world of internet users." [2] *Id.*

In sum—and in their own words issued under penalty of perjury—the Foreign Websites "*have no U.S.-based operations.*" *Id.* at ¶ 3. "[F]oreign organizations operating abroad possess no rights under the U. S. Constitution" *AOSI II* at 2089. So, the Foreign Websites have no constitutional rights, and their constitutional claims should therefore be dismissed.

    C.  The Foreign Websites cannot show a valid waiver of immunity.

The Foreign Websites anchor their right to sue Defendant on the *Ex Parte Young* doctrine and the exception it provides to Defendant's immunity to suit under § 1983. ECF No. 36, p. 18. Without a § 1983 claim, the Foreign Websites have no valid claim against which to assert the limited waiver of immunity provided by *Ex Parte Young*. Accordingly, their claims should be dismissed for lack of subject matter jurisdiction.

    II.    **Foreign Websites' Communications Decency Act Claim Should Be Dismissed.**

The Foreign Websites bring their CDA claim pursuant to § 1983. But none of the Foreign Websites is a citizen of the United States or other person within its territory. *See* 42 U.S.C. § 1983. So, they cannot bring a valid § 1983 claim, and their underlying CDA claim must fail.

---

[2] In *Doe v. Webgroup Czech Republic*, a victim of child sex trafficking sued several pornographic websites for broadcasting her victimization. *Doe v. WebGroup Czech Republic, as*, No. 221CV02428VAPSKX, 2022 WL 982248 (C.D. Cal. Jan. 13, 2022). Two of the defendants in *Doe* are Plaintiffs NKL Associates and WebGroup Czech Republic, a.s. By arguing that they had no operations in the U.S., the defendants—again, Plaintiffs here—successfully argued the district court lacked personal jurisdiction. Notably, the declarant quoted above, Robert Seifert, also provided a declaration in this case on behalf of the same two parties, plus Plaintiffs Sonesta Media, s.r.o. and Sonesta Technologies, s.r.o. ECF 5-2.

## CONCLUSION

For the foregoing reasons, the Court should grant Defendants' Amended Motion to Dismiss.

Date: October 1, 2025

**KEN PAXTON**
Attorney General of Texas

**BRENT WEBSTER**
First Assistant Attorney General

**RALPH MOLINA**
Deputy First Assistant Attorney General

**RYAN D. WALTERS**
Deputy Attorney General for Legal Strategy

OFFICE OF THE ATTORNEY GENERAL OF TEXAS
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
(512) 463-2100

Respectfully submitted.

/s/ *Keith Ingram*
**KEITH INGRAM**
Special Counsel
Texas State Bar No. 00787746

**RYAN G. KERCHER**
Chief, Special Litigation Division
Texas State Bar No. 24060998

**ZACHARY BERG**
Special Counsel
Tex. State Bar No. 24107706

Keith.ingram@oag.texas.gov
Ryan.kercher@oag.texas.gov
Zachary.berg@oag.texas.gov
**COUNSEL FOR DEFENDANT**

**CERTIFICATE OF SERVICE**

I hereby certify that on October 1, 2025, a true and correct copy of the foregoing document was served via the Court's electronic filing system to all counsel of record.

/s/ *Keith Ingram*
**KEITH INGRAM**